## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **DAVIS PETROLEUM CORPORATION,** | § | **CASE NO. _____** |
| | § | |
| **DAVIS OFFSHORE, L.P. and** | § | **CASE NO. _____** |
| | § | |
| **DAVIS PETROLEUM PIPELINE LLC,** | § | **CASE NO. _____** |
| | § | |
| **DEBTORS.** | § | **JOINTLY ADMINISTERED** |
| | § | **UNDER CASE NO. _____** |

## DISCLOSURE STATEMENT WITH RESPECT TO PREPACKAGED JOINT PLAN OF REORGANIZATION OF DAVIS PETROLEUM CORPORATION, <u>DAVIS OFFSHORE, L.P., AND DAVIS PETROLEUM PIPELINE LLC</u>

On **March 7, 2006** (the "Petition Date"), Davis Petroleum Corporation ("Davis Petroleum"), Davis Offshore, L.P. ("Davis Offshore") and Davis Petroleum Pipeline, LLC ("Davis Pipeline") (collectively, the "Debtors") intend to file petitions for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Corpus Christi Division, subject to receiving in advance requisite acceptances of the Debtors' proposed Chapter 11 plan (the "Plan"). If petitions are filed, the Debtors will seek immediate confirmation of the Plan on **March 9, 2006**. A copy of the Plan that the Debtors intend to file is attached to this Disclosure Statement as <u>Exhibit A</u>.

The Debtors are distributing this Disclosure Statement in connection with their solicitation of votes on the Plan. All holders of Impaired Interests in the Debtors are urged to read the Disclosure Statement and Plan in full. The board of directors of Davis Petroleum and the management of Davis Offshore and Davis Pipeline believe that the plan is in the best interests of holders of Impaired Interests in the Debtors. Accordingly, the holders of equity interests in the Debtors are urged to vote in favor of the Plan.

The statements in this Disclosure Statement are made as of the date hereof. Neither the Disclosure Statement's distribution nor the Plan's consummation will, under any circumstance, create any implication that the information herein is correct at any time after the date hereof. All summaries herein are qualified by reference to the Plan as a whole. In any contested matter or adversary proceeding, this Disclosure Statement shall not constitute an admission of any fact or liability but shall be deemed a statement made in settlement negotiations. Unless otherwise indicated, the Debtors' management has provided the factual information in this Disclosure Statement. The Debtors believe that the information herein is accurate but are unable to warrant that it is without any inaccuracy or omission.

1

This Disclosure Statement has been prepared in accordance with Section 1125 of the Bankruptcy Code and Rule 3016(c) of the Federal Rules of Bankruptcy Procedure and not necessarily in accordance with federal or state securities laws or other laws governing disclosure outside the context of Chapter 11. This Disclosure Statement has been neither approved nor disapproved by the Securities and Exchange Commission (the "SEC"), nor has the SEC passed upon the accuracy or adequacy of the statements contained herein.

In making a decision in connection with the Plan, holders of Impaired Interests must rely on their own examination of the Debtors and the terms of the Plan, including the merits and risks involved. They should not construe the contents of this Disclosure Statement as providing any legal, business, financial, or tax advice and members of each class should consult its own advisors with respect to those matters.

## SECURITIES LAW MATTERS

The Debtors are relying on section 1145(a)(1) of the Bankruptcy Code to exempt the exchange, issuance and distribution of the new equity interests in the Reorganized Debtors from the registration requirements of the Securities Act and state securities and "blue sky" laws insofar as (i) the securities will be issued by a debtor, an affiliate of the debtor, or a successor to a debtor under a plan approved by a bankruptcy court; (ii) the recipients of securities hold a claim against, an interest in, or a claim for an administrative expense in the case concerning the debtor or such affiliate; and (iii) the securities are issued entirely in exchange for the recipient's claim against or interest in the debtor, or are issued "principally" in such exchange and "partly" in exchange for cash or property.

The Debtors also believe that the issuance and distribution of the new equity interests in the Reorganized Debtors will be exempt from the registration requirements of the Securities Act of 1933, as amended (the "Securities Act"), and any state or local laws requiring registration, by reason of one or more exemptions therefrom, including section 4(2) of the Securities Act as a transaction not involving any public offering. Persons who receive Interests in the Reorganized Debtors under the Plan are urged to consult their own legal advisor with respect to restrictions applicable under the Securities Act and any appropriate rules and the circumstances under which securities may be sold in reliance upon any such rules.

## FORWARD-LOOKING STATEMENTS

The information presented in this Disclosure Statement includes forward-looking statements in addition to historical information. These statements involve known and unknown risks and relate to future events, the Debtors' future financial performance or the Debtors' projected business results. In some cases, you can identify forward-looking statements by terminology such as "may," "will," "should," "expects," "plans," "anticipates," "believes," "estimates," "predicts," "targets," "potential" or "continue" or the negative of these terms or other comparable terminology. Forward-looking statements are only predictions. Actual events or results may differ materially from any forward-looking statement as a result of various factors, including those contained in the section entitled "Risk Factors" and other sections of this Disclosure Statement, including the documents incorporated by reference herein. Although the Debtors believe that the expectations reflected in the forward-looking statements are reasonable,

2

the Debtors cannot guarantee future results, events, levels of activity, performance or achievements.  Debtors expressly disclaim a duty to update any of the forward-looking statements.

502183 000030 HOUSTON 442070.2

# TABLE OF CONTENTS

**Page**

| | | |
|---|---|---|
| I. | INTRODUCTION | 4 |
| | A. | Notice to Holders of Claims and Interests | 5 |
| | B. | Voting Procedures, Ballots and Voting Deadline | 6 |
| | C. | Confirmation Hearing and Deadline for Objections | 6 |
| II. | PLAN SUMMARY | 7 |
| III. | HISTORY OF THE DEBTORS | 9 |
| | A. | Overview of Business Operations | 9 |
| | B. | Corporate and Capital Structure | 9 |
| | C. | Events Leading to the Chapter 11 Filings and the Current Plan | 11 |
| | D. | Description of Assets and their Value | 13 |
| | E. | Anticipated Future of the Debtors | 13 |
| | F. | Source of Information | 13 |
| | G. | Pending Litigation | 13 |
| | H. | Liquidation Analysis | 13 |
| | I. | Future Management of the Debtors | 13 |
| | J. | Other Financial Information | 15 |
| | K. | Insurance Policies | 15 |
| IV. | TIMING OF THE CHAPTER 11 CASES | 15 |
| | A. | Overall Structure of the Plan | 16 |
| | B. | Classification and Treatment of Claims and Interests | 17 |
| | C. | Means for Implementation of the Plan | 19 |
| | | 1. Continued Corporate Existence | 19 |
| | | 2. Certificates of Incorporation and By-laws | 19 |
| | | 3. Restructuring Transactions | 19 |
| | | 4. New Equity Interests | 20 |
| | | 5. Directors and Officers | 20 |
| | | 6. Revesting of Assets | 21 |
| | | 7. Preservation of Certain Rights of Action; Release of other Causes of Action | 21 |
| | | 8. Assignment of Litigation Claims | 22 |
| | | 9. Exemption from Certain Transfer Taxes | 22 |
| | | 10. Effectuating Documents; Further Transactions | 22 |
| | D. | Provisions Governing Distributions | 22 |

|  |  | 1. | Liquidating Trust ........................................................................... 22 |
|  |  | 2. | Delivery of Distributions; Undeliverable or Unclaimed Distributions.......... 23 |
|  | a. |  | Delivery of Distributions in General...................................................... 23 |
|  | b. |  | Undeliverable and Unclaimed Distributions............................................ 23 |
|  |  | 3. | Calculation of Distribution Amounts of New Common Stock...................... 23 |
|  |  | 4. | Withholding and Reporting Requirements ...................................... 23 |
|  |  | 5. | Setoffs ........................................................................................ 24 |
|  | E. |  | Treatment of Executory Contracts and Unexpired Leases ..................... 24 |
|  |  | 1. | Assumed Contracts and Leases ...................................................... 24 |
|  |  | 2. | Payments Related to Assumption of Contracts and Leases........................... 24 |
|  |  | 3. | Compensation, Benefit, and Pension Programs............................................ 24 |
|  |  | 4. | Indemnification Obligations .......................................................... 25 |
|  |  | 5. | Treatment of Change of Control Provisions..................................... 25 |
|  |  | 6. | Term Sheet..................................................................................... 25 |
|  | F. |  | Conditions Precedent to the Plan's Confirmation and Consummation ................. 25 |
|  |  | 1. | Conditions to Confirmation .......................................................... 25 |
|  |  | 2. | Conditions to Effective Date ........................................................ 25 |
|  |  | 3. | Waiver of Conditions..................................................................... 26 |
|  | G. |  | Modification; Withdrawal.................................................................... 26 |
|  | H. |  | Retention of Jurisdiction ................................................................... 26 |
|  | I. |  | Effects of Confirmation ...................................................................... 27 |
|  |  | 1. | Binding Effect............................................................................... 27 |
|  |  | 2. | Discharge Of The Debtors ............................................................. 27 |
|  |  | 3. | Injunction..................................................................................... 27 |
|  |  | 4. | Exculpation And Limitation Of Liability ....................................... 28 |
|  |  | 5. | Allocation of Plan Distributions Between Principal and Interest................. 28 |
|  |  | 6. | Payment of Statutory Fees ............................................................. 29 |
|  |  | 7. | Severability of Plan Provision ....................................................... 29 |
|  |  | 8. | Successors and Assigns ................................................................. 29 |
|  |  | 9. | Term of Injunctions or Stays ......................................................... 29 |
|  | J. |  | Governing Law ................................................................................. 29 |
| V. |  |  | CERTAIN RISK FACTORS TO BE CONSIDERED ................................. 29 |
|  | A. |  | Failure to Confirm the Plan.................................................................. 30 |
|  | B. |  | Potential Adverse Effects of Chapter 11................................................ 30 |
|  | C. |  | Inherent Uncertainty of Financial Projections ....................................... 30 |
|  | D. |  | Environmental Matters........................................................................ 31 |
|  | E. |  | Dependence on Key Personnel ............................................................. 31 |
|  | F. |  | Absence of Public Market; Restriction on Transferability ...................... 31 |
|  | G. |  | Dividends ......................................................................................... 32 |
| VI. |  |  | CONFIRMATION OF THE PLAN........................................................... 32 |

|  | A. | Voting Requirements ........................................................................... | 32 |
|  | B. | Feasibility of the Plan ...................................................................... | 33 |
|  | C. | Best Interests Test ............................................................................ | 33 |
|  | D. | Confirmation Without Acceptance of All Impaired Classes -- "Cramdown" | 34 |
| VII. | | ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN | 35 |
| VIII. | | FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN.................. | 36 |
|  | A. | General................................................................................................ | 36 |
|  |  | 1. Statutory Overview...................................................................... | 36 |
|  |  | 2. Tax Consequences to Davis.......................................................... | 37 |
| IX. | | OTHER MATTERS.............................................................................. | 38 |
| X. | | RECOMMENDATION AND CONCLUSION........................................... | 38 |

502183 000030 HOUSTON 442070.2

**Exhibits:**

| | |
|---|---|
| Exhibit A | Joint Plan dated March 2, 2006 of Davis Petroleum Corporation, Davis Offshore, LP, and Davis Petroleum Pipeline LLC |
| Exhibit B | Term Sheet dated March 2, 2006 between Davis Petroleum Acquisition Corporation and Davis Petroleum Corporation, Davis Offshore LP, and Davis Petroleum Pipeline LLC and Davis Petroleum Acquisition Corporation |
| Exhibit C | Contribution and Sale Agreement dated February 13, 2006 by and among, Davis Petroleum Acquisition Corporation and Davis Petroleum Corporation, Davis Offshore LP, and Davis Petroleum Pipeline LLC and related Shareholder Trusts ("CSA") |
| Exhibit 1 | Schedule 5.3(a) to the CSA – Capitalization |
| Exhibit 2 | Asset Summary |
| Exhibit 2A | Summary of Netherland Sewell & Associates reserve report dated July 1, 2005 (proved only) |
| Exhibit 3 | Schedule 5.11 to the CSA – Litigation |
| Exhibit 4 | Liquidation Analysis |
| Exhibit 5 | Employment Agreement  dated February 6, 2006 between Davis Petroleum Acquisition and Gregg Davis |
| Exhibit 6 | Davis Petroleum Corporation, Davis Petroleum Pipeline LLC and Davis Offshore, LP Consolidated Financial Statements ( unaudited ) for the period ending November 30, 2005 |
| Exhibit 7 | Schedule 5.10 to the CSA – Policies of Insurance |
| Exhibit 8 | Liquidating Trust Agreement |
| Exhibit 9 | Schedule 5.9(a) to the CSA – Material Agreements |
| Exhibit 10 | Schedule 5.16(a) to the CSA – Various Benefit Plans |
| Exhibit 11 | Evercore Deal Analysis |
| Exhibit 12 | Schedule 2.2(c) to the Original Evercore Deal |
| Exhibit 13 | Budget |
| Exhibit 14 | Executory Contract Rejection List [ to be provided at confirmation]. |

502183 000030 HOUSTON 442070.2

## I.    INTRODUCTION

Davis Petroleum, Davis Offshore and Davis Pipeline hereby transmit this disclosure statement (the "Disclosure Statement") in accordance with section 1125 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532, as amended (the "Bankruptcy Code"), for use in the solicitation of votes to accept their prepackaged joint plan of reorganization dated **March 2, 2006** (the "Plan").  A copy of the Plan is attached to this Disclosure Statement as Exhibit A.

The Plan provides for the payment in full of the allowed claims of all classes of creditors. For secured creditors, the Plan provides for payment of their allowed claims on the Effective Date, which is expected to be the closing date of the purchase of equity by Davis Acquisition. For unsecured creditors, the Plan provides for the payment in full in cash upon allowance of their claims.  For Interest Holders in the Debtors, the Plan provides for a pro rata distribution of remaining proceeds from cash available for distribution after payment of Allowed Claims of creditors.

The Plan provides for the creation of a Liquidating Trust to hold the proceeds of the sale of Davis Petroleum, Davis Offshore, and Davis Pipeline and to make distributions in accordance with the Plan.

**The holders of Interests of Debtors will want to read this Disclosure Statement carefully because their Interests are impaired.  The Plan provides for the sale of 100% of the Equity Interests of Davis Petroleum, Davis Offshore and Davis Pipeline to Davis Petroleum Acquisition Corp. or one or more of its subsidiaries ("Davis Acquisition" or "Purchaser"), a company formed by Evercore Capital Partners II, L.P. ("Evercore") for a purchase price of $150 million, subject to adjustment as described in the CSA  ("Purchase Price").  From the Purchase Price, the Debtors will pay all Claims in full in cash on the Effective Date to the extent the Claims are Allowed Claims or on the date a Claim becomes an Allowed Claim; after payment of Allowed Claims from closing, the remainder of the Purchase Price shall be paid to the Liquidating Trust for the purpose of paying Allowed Claims and, ultimately, to Interest Holders;  $10 million of the Purchase Price will be reserved to satisfy indemnity claims due from Debtors to the Purchaser, in accordance with the Term Sheet and the CSA; and after payment of all Allowed Claims by the Liquidating Trust, the remainder will then be distributed pro rata to Debtors' Interest Holders.**

Exhibit 11 is a summary of amounts that Debtors estimate will be paid to creditors and that may be available for distribution to Interest Holders.  Exhibit 11 shows the amounts that Debtors estimate will be payable from the purchase price versus the Debtors' understanding of the amounts that Evercore estimates may be payable.  The Debtor estimates that $181,598,064 will be available for the payment of Allowed Claims, from which $160,119,937 will be paid. There would remain approximately $21.5 million for distribution to Interest Holders, after deduction of  the $10 million holdback contemplated in the Term Sheet and CSA.  The unused portion of the $10 million holdback would ultimately be available to distribute to Interest Holders.  These are estimates and there can be no assurance that these estimates will turn out to be accurate.

The Plan also provides for the recapitalization of the Reorganized Debtors after the Effective Date by the contribution of up to $40 million of new capital by Purchaser. The Term Sheet, CSA, and Plan contemplate that the Reorganized Debtors would have no debt after the Effective Date, but would have assets worth between $80-90 million (liquidation value – see Exhibit 4), plus up to $40 million new capital. The Debtors are advised that Davis Acquisition intends to contribute up to $40 million capital into the Reorganized Debtors on a go-forward basis and to continue in business as an active exploration and production company.

This Disclosure Statement, among other things, (i) contains certain information regarding the Debtors' prepetition history, (ii) describes the Plan, the effects of confirmation of the Plan, and distributions under the Plan, and (iii) discusses the confirmation process and voting procedures that holders of Interest Holder Claims must follow for their votes to be counted. Because the Interest Holder Claims are the only claims being compromised under the Plan, only members of each of those classes are entitled to vote on the Plan.

**All Allowed Claims will be either paid in full on the Effective Date or when a Claim becomes an Allowed Claim. All creditors therefore are deemed to accept the Plan, and their votes will not be solicited.**

### A.     Notice to Holders of Claims and Interests

This Disclosure Statement is being transmitted to certain holders of Interests for the purpose of soliciting votes on the Plan and for informational purposes. The primary purpose of this Disclosure Statement is to provide adequate information to enable members of the impaired classes to make a reasonably informed decision with respect to the Plan prior to exercising their right to vote to accept or to reject the Plan. Subject to receiving requisite acceptances of the Plan, the Debtors will file Chapter 11 petitions on March 7, 2006. On March 9, 2006, the Debtors will request Bankruptcy Court approval of this Disclosure Statement as containing information of a kind and in sufficient detail adequate to enable the holders of such Claims to make an informed judgment about the Plan. The Debtors simultaneously will request the Bankruptcy Court to confirm the Plan.

**WHEN AND IF CONFIRMED BY THE COURT, THE PLAN WILL BIND ALL HOLDERS OF CREDITOR CLAIMS AGAINST AND INTERESTS IN THE DEBTORS, WHETHER OR NOT THEY ARE ENTITLED TO VOTE OR DID VOTE ON THE PLAN AND WHETHER OR NOT THEY RECEIVE OR RETAIN ANY DISTRIBU-TIONS OR PROPERTY UNDER THE PLAN. THUS, YOU ARE ENCOURAGED TO READ THIS DISCLOSURE STATEMENT CAREFULLY. IN PARTICULAR, INTEREST HOLDERS IN THE DEBTORS' WHO ARE ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THIS DISCLOSURE STATEMENT, THE PLAN, AND THE EXHIBITS TO THE PLAN AND DISCLOSURE STATEMENT CAREFULLY AND IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR TO REJECT THE PLAN.**

THIS DISCLOSURE STATEMENT IS THE ONLY DOCUMENT TO BE USED IN CONNECTION WITH THE SOLICITATION OF VOTES ON THE PLAN. NO SOLICITATION OF VOTES MAY BE MADE UNTIL DISTRIBUTION OF THIS

502183 000030 HOUSTON 442070.2

DISCLOSURE STATEMENT, AND NO PERSON HAS BEEN AUTHORIZED TO
DISTRIBUTE ANY INFORMATION CONCERNING THE DEBTORS OTHER THAN THE
INFORMATION CONTAINED HEREIN.

### B.    Voting Procedures, Ballots and Voting Deadline

Accompanying this Disclosure Statement and forming a part of the solicitation package
(the "Solicitation Package") are copies of (i) the Plan (Exhibit A to this Disclosure Statement);
and (ii) for holders of Interests who are entitled to vote on the Plan, one or more Ballots. If you
did not receive a Ballot in your package and believe that you are entitled to vote on the Plan,
please contact the Debtors' counsel at the addresses and telephone numbers set forth on the cover
of this Disclosure Statement and below, or alternatively, contact Debtors' counsel through
Matthew R. Reed, Thompson & Knight, LLP, ( Tel. ) 713.653.8695.

After carefully reviewing the Plan, this Disclosure Statement, and the instructions on the
enclosed Ballot, holders of Impaired Interests should indicate their acceptance or rejection of the
Plan by checking the appropriate box on the Ballot. Moreover, they must complete and sign
their Ballots and return them so that they are RECEIVED by the Voting Deadline (as defined
below).

IF YOU ARE A HOLDER OF AN INTEREST IN THE DEBTOR FOR YOUR VOTE
TO BE COUNTED, YOU MUST PROPERLY COMPLETE AND DELIVER YOUR BALLOT
SO THAT YOUR VOTE IS **RECEIVED** BY THE VOTING AGENT NO LATER THAN **2:00
P.M. CENTRAL STANDARD TIME ON MARCH 7, 2006 (THE "VOTING
DEADLINE")**. IN ORDER TO PROMPTLY TRANSMIT YOUR BALLOT, YOU MUST
**SEND  IT VIA FAX, EMAIL, OR OVERNIGHT DELIVERY** TO THE FOLLOWING:

> Rhett G. Campbell
> Thompson & Knight LLP
> 333 Clay Street, Suite 3300
> Houston, Texas 77002
> Fax: 832.397.8260
> Email: rcampbell@tklaw.com

You may obtain additional copies of the Plan, Disclosure Statement, or other material in
this Solicitation Package from the Debtors' attorneys as indicated above.

### C.    Confirmation Hearing and Deadline for Objections

As noted above, the Debtors will ask the Bankruptcy Court to consider the adequacy of
this Disclosure Statement and confirmation of the Plan (the "Confirmation Hearing") on **March
9, 2006 at 3 p.m. CST and thereafter, if required, on March 10, 2006 at 8:30 a.m. CST
Central Standard Time before the United States Bankruptcy Court for the Southern
District of Texas, Corpus Christi Division, 1133 N. Shoreline Blvd. 2nd Floor, Corpus
Christi, Texas 78401.** At the Confirmation Hearing, the Debtors will request confirmation of
the Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy
Code, if necessary. See "Confirmation of the Plan Without Acceptance of All Impaired Classes