### 8. Assignment of Litigation Claims

The Debtors will assign any causes of action or claims whether asserted or unasserted, to the Liquidating Trustee, including but not limited to, claims and causes of action against officers and directors including, but not limited to, the causes of action asserted, or that could be asserted as arising from the same transactions or occurrences, against any Defendant named in the civil action styled and numbered: *Patricia Davis Raynes et al. v. Marvin Davis, et al.*, Civil Action No. 05-06740-ABC-CT, pending in the United States District Court for the Central District of California, as set forth in the Plan to the Liquidating Trustee, and including but not limited to any causes of action arising under Chapter 5 of the Bankruptcy Code.

### 9. Exemption from Certain Transfer Taxes

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers or mortgages by or from a Debtor to a Reorganized Debtor or any other Person or entity pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### 10. Effectuating Documents; Further Transactions

The chairman of the Board of Directors, president, chief financial officer, or any other appropriate officer of the Debtors, as the case may be, shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The secretary or assistant secretary of the appropriate Debtor shall be authorized to certify or attest to any of the foregoing actions.

### D. Provisions Governing Distributions

### 1. Liquidating Trust

On the Effective Date, a Liquidating Trust shall be established. The Liquidating Trust shall be funded with that portion of the Purchase Price that is not paid to satisfy Allowed Claims on the Effective Date. All policies of insurance belonging to the Debtors and covering the Indemnity Claims or any other insurable claim shall also be contributed to the Liquidating Trust. The Liquidating Trust shall liquidate and pay all Allowed Claims and Interests. The Liquidating Trust shall reserve and retain $10 million of the Purchase Price to secure the Debtors' obligations to the Purchaser under the CSA. To the extent the D & O policies or any other applicable insurance policies are insufficient to pay the Indemnification Claims or other insurable claims, the residual claims will be paid from the funds held in reserve for such claims by the Liquidating Trustee upon allowance.

The Liquidating Trustee shall make distributions from the trust assets to all creditors in accordance with the Plan and the Liquidating Trust Agreement attached hereto as Exhibit 8.

2. **Delivery of Distributions; Undeliverable or Unclaimed Distributions**

   a. **Delivery of Distributions in General**

The Liquidating Trustee shall make distributions to each holder of an Allowed Claim at the address reflected in the books and records of the Debtors.

   b. **Undeliverable and Unclaimed Distributions**

   i) **Holding of Undeliverable and Unclaimed Distributions**

If any holder's distribution is returned as undeliverable, no further distributions to that holder shall be made unless and until the Liquidating Trustee receives notice of the holder's then-current address, at which time all outstanding distributions shall be made to the holder. Undeliverable distributions made through the Liquidating Trustee shall be returned to the Liquidating Trustee until such distributions are claimed. The Liquidating Trustee shall establish a segregated account to serve as the unclaimed distribution reserve, and all undeliverable and unclaimed distributions shall be deposited therein, for the benefit of all similarly situated Persons until such time as a distribution becomes deliverable or is claimed.

   ii) **Failure to Claim Undeliverable Distributions**

Any undeliverable or unclaimed distribution under the Plan that does not become deliverable on or before the second anniversary of the Effective Date shall be deemed to have been forfeited and waived, and the Person otherwise entitled thereto shall be forever barred and enjoined from asserting its Claim therefore against, or seeking to recover its distribution from, the Debtors, the Estates, the Liquidating Trust, or their property. After the second anniversary of the Effective Date, the Liquidating Trustee shall withdraw any amounts remaining in the unclaimed distribution reserve for distribution in accordance with the Plan.

3. **Calculation of Distribution Amounts of New Common Stock**

No fractional interests in any Reorganized Debtor shall be issued or distributed under the Plan or by the Reorganized Debtors. Each Person entitled to receive Interests in Davis Petroleum, Davis Offshore and Davis Pipeline will receive the total number of whole numbers of shares, partnership units, or membership units to which such Person is entitled.

4. **Withholding and Reporting Requirements**

In connection with the Plan and all distributions thereunder, the Liquidating Trustee shall, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions shall be subject to those requirements. The Liquidating Trustee shall be authorized to take all actions necessary or appropriate to comply with those withholding and reporting requirements. Notwithstanding any other provision of the Plan, (i) each holder of an Allowed Claim that is to receive a distribution of cash shall have sole and exclusive responsibility for the satisfaction and

payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such distribution, and (ii) no distribution shall be made to or on behalf of such holder pursuant to the Plan unless and until such holder has made arrangements satisfactory to the Liquidating Trustee for the payment and satisfaction of such tax obligations or has, to he Liquidating Trustee's satisfaction, established an exemption therefrom. Any distribution of a pro rata share of cash to be made pursuant to the Plan shall, pending the implementation of such arrangements, be treated as undeliverable pursuant to Article V(C)(ii) thereof.

### 5. Setoffs

The Liquidating Trustee may, but shall not be required to, set off against any Claim, and the payments or other distributions to be made in respect of that Claim, claims of any nature whatsoever that the Debtors, the Liquidating Trustee may have against the Claim's holder; but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtors or Liquidating Trustee of any claim that the Debtors, Reorganized Debtors or Liquidating Trustee may have.

### E. Treatment of Executory Contracts and Unexpired Leases

#### 1. Assumed Contracts and Leases

A list of material contracts identified under the CSA is attached hereto as Exhibit 9. A list of all benefit plans is attached as Exhibit 10. There are no defaults under existing royalty agreements. Debtors will assume all royalty agreements.

Except as otherwise provided in the Plan, or in any contract, instrument, release, or other agreement or document entered into in connection with the Plan, as of the Effective Date, each Debtor shall be deemed to have assumed each executory contract and unexpired lease to which it is a party, provided however, that the prepetition Employment Contracts with Debtors' employees shall be rejected, terminated and replaced with postpetition employment contracts. The Debtors shall reject those executory contracts listed on Exhibit 14. The Confirmation Order shall constitute an order of the Bankruptcy Court under Section 365 of the Bankruptcy Code approving the contract and lease assumptions as of the Effective Date.

#### 2. Payments Related to Assumption of Contracts and Leases

Except as otherwise provided in the Plan, any monetary amounts by which any executory contract and unexpired lease to be assumed under the Plan is in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by Cure. Cure payments will be made out of the Purchase Price, at closing, or from the Liquidating Trust.

#### 3. Compensation, Benefit, and Pension Programs

All employee compensation, benefit, indemnification and pension programs of the Debtors, including programs subject to sections 1114 and 1129(a)(13) of the Bankruptcy Code, entered into before or after the Petition Date and not since terminated, shall be deemed to be, and shall be rejected.

24

### 4. Indemnification Obligations

Except as otherwise specifically provided herein, any obligations or rights of any Debtor to indemnify its present and former directors, officers, employees, agents or representatives under its certificate of incorporation, by-laws, employee-indemnification policy, or under state law or any agreement with respect to any claim, demand, suit, cause of action, or proceeding, shall be terminated. The Debtors expect to satisfy all claims associated with such Indemnity Claims pursuant to the Liquidating Trust. The prepetition insurance policies of the Debtors shall be transferred to the Liquidating Trust for the purpose of satisfying Indemnity Claims to the fullest extent possible under the terms of the D&O policies, and any other claims covered by insurance.

### 5. Treatment of Change of Control Provisions

The entry of the Confirmation Order, consummation of the Plan, and/or any other acts taken to implement the Plan shall not constitute a "change in control" under any provision of any contract, agreement or other document which provides for the occurrence of any event, the granting of any right, or any other change in the then-existing relationship between the parties upon a change in control.

### 6. Term Sheet

The provisions of the Term Sheet and Contribution and Sale Agreement are deemed incorporated hereby as if fully set forth herein.

### F. Conditions Precedent to the Plan's Confirmation and Consummation

#### 1. Conditions to Confirmation

The Plan's Confirmation is subject to the satisfaction or due waiver of each of the following conditions precedent:

(i) The proposed Confirmation Order shall be in form and substance reasonably satisfactory to the Debtors and Davis Acquisition Corporation.

(ii) There shall be no material breach of the Term Sheet.

#### 2. Conditions to Effective Date

Effectiveness of the Plan is subject to the satisfaction or due waiver of each of the following conditions precedent:

(i) The Bankruptcy Court shall have entered the Confirmation Order, in form and substance reasonably satisfactory to the Debtors, and Davis Acquisition Corporation, confirming the Plan, as the same may have been modified.

(ii) The Confirmation Order shall be a Final Order.

### 3. Waiver of Conditions

The conditions set forth above can be waived, in whole or in part, by the Debtors and Davis Acquisition Corporation, at any time without an order of the Bankruptcy Court, provided, however, that in no event may any provision of the Term Sheet or CSA be waived or modified without the written consent of the parties thereto. Unless waived, the failure to satisfy any condition to the Effective Date will preclude the Effective Date's occurrence, regardless of the circumstances giving rise thereto (including any action or inaction by a Debtor or Reorganized Debtor). The waiver of any condition to Confirmation or to the Effective Date shall not constitute or be deemed a waiver of any other condition.

### G. Modification; Withdrawal

The Debtors reserve the right to modify the Plan either before or after Confirmation to the fullest extent permitted under section 1127 of the Bankruptcy Code and Fed. R. Bankr. P. 3019. The Debtors may withdraw the Plan at any time before the Effective Date.

### H. Retention of Jurisdiction

Under sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the Plan's Confirmation and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of or related to the Chapter 11 Cases and the Plan, to the fullest extent permitted by law, including jurisdiction to:

1. Enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

2. Hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan and all contracts, instruments, and other agreements executed in connection with the Plan;

3. Hear and determine any request to modify the Plan or to cure any defect or omission or reconcile any inconsistency in the Plan or any order of the Bankruptcy Court;

4. Issue and enforce injunctions or other orders, or take any other action that may be necessary or appropriate to restrain any interference with the implementation, consummation, or enforcement of the Plan or the Confirmation Order;

5. Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

6. Hear and determine any matters arising in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order or any contract,

26

instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

      7.    Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

      8.    To construe and enforce the Term Sheet and CSA;

      9.    To consider and rule upon objections to claim and

      10.    Enter a final decree closing the Chapter 11 Cases.

### I. Effects of Confirmation

#### 1. Binding Effect

The Plan shall be binding upon and inure to the benefit of the Debtors, all present and former holders of Claims and Interests, and their respective successors and assigns, and all other parties-in-interest in these Chapter 11 Cases.

#### 2. Discharge Of The Debtors

All consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims of any nature whatsoever against, or Interests in, the Debtors or any of their assets or properties, and, except as otherwise provided herein or in the Confirmation Order, and regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims or Interests, upon the Effective Date, the Debtors, and each of them, shall be deemed discharged and released under section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims and Interests, including, but not limited to, demands and liabilities that arose before the Confirmation Date, any liability (including withdrawal liability) to the extent such Claims relate to services performed by employees of a Debtor prior to the Petition Date and that arises from a termination of employment or a termination of any employee or retiree benefit program regardless of whether such termination occurred prior to or after the Confirmation Date, and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not the holder of a Claim based upon such debt accepted the Plan. The Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtors, subject to the Effective Date occurring.

#### 3. Injunction

Except as otherwise provided in the Plan, from and after the Confirmation Date, all Persons who have held, hold, or may hold Claims against or Interests in the Debtors are permanently enjoined from taking any of the following actions against the Debtors, the Reorganized Debtors, Buyers, the Estate(s), the Liquidating Trustee, or any of their property on account of any such Claims or Interests: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any

manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtors; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; provided, however, that nothing contained herein shall preclude such persons from exercising their rights pursuant to and consistent with the terms of this Plan.

### 4. Exculpation And Limitation Of Liability

Neither the Debtors, Parties nor the Buyer Parties shall have or incur any liability to any holder of a Claim or an Interest, the Bank, or any other party in interest, including the Debtor Parties or any of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for their willful misconduct or gross negligence, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

Notwithstanding any other provision of this Plan, no holder of a Claim or Interest, no other party in interest, none of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, and no successors or assigns of the foregoing, shall have any right of action against the Debtors, the Estate(s), the Reorganized Debtors, Buyer Parties, the Liquidating Trustee or any of their respective present or former members, officers, directors, employees, advisors, attorneys, or agents, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the pursuit of confirmation of the Plan, consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for their willful misconduct or gross negligence.

As of the Confirmation Date, the Debtors shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code. Each of the Debtor Parties and the Buyer Parties have participated in good faith and in compliance with section 1125(e) of the Bankruptcy Code in the offer and issuance of the New Interests under the Plan, and therefore are not, and on account of such offer, issuance and solicitation will not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of the New Interests under the Plan.

### 5. Allocation of Plan Distributions Between Principal and Interest

To the extent that any Allowed Claim entitled to a distribution under the Plan is composed of indebtedness and accrued but unpaid interest thereon, such distribution shall, to the extent permitted by applicable law, be allocated for United States federal income tax purposes to the principal amount of the Claim first and then, to the extent the consideration exceeds the

28

principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest.

### 6.     Payment of Statutory Fees

All fees payable under Section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on or before the Effective Date. All such fees that arise after the Effective Date but before the closing of the Chapter 11 Cases shall be paid from funds otherwise available for distribution hereunder.

### 7.     Severability of Plan Provision

If, before Confirmation, the Bankruptcy Court holds that any provision of the Plan is invalid, void or unenforceable, the Debtors, at their option, may amend or modify the Plan to correct the defect, by amending or deleting the offending provision or otherwise, or may withdraw the Plan. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been amended or modified in accordance with the foregoing, is valid and enforceable.

### 8.     Successors and Assigns

The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of that Person.

### 9.     Term of Injunctions or Stays

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases, either by virtue of sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, shall remain in full force and effect until the Liquidating Trustee has made all distributions contemplated by the Plan and the Bankruptcy Court has entered an order closing the Chapter 11 Cases.

## J.     Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of (i) the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan and (ii) the laws of the state of incorporation of each Debtor shall govern corporate governance matters with respect to such Debtor, in either case without giving effect to the principles of conflicts of law thereof.

## V.     CERTAIN RISK FACTORS TO BE CONSIDERED

Parties in interest should read and carefully consider the following factors, as well as the other information set forth in this Disclosure Statement (and the documents delivered together herewith and/or incorporated by reference herein), including those items discussed in the Projections attached hereto, before deciding whether to vote to accept or to reject the Plan.

29

### A. Failure to Confirm the Plan

If the Plan is not confirmed and consummated, there can be no assurance that the Chapter 11 Cases will continue rather than be converted to Chapter 7 liquidations. The most likely alternative to confirmation of the Plan is a sale process under § 363 of the Code by which some or all of the existing equity of the Debtors would be sold to the highest bidder. Debtors have no reason to believe that such a process would yield a return to creditors and Interest Holders higher than the Plan and, in fact, Debtors believe there is a high likelihood that the outcome would be dramatically less. This belief is based on the liquidation analysis contained in Exhibit 4 and is supported by the consideration of important negative characteristics of the Debtors' offshore properties. The offshore properties are non-operated and non-producing; they require very substantial capital contributions in order to bring them to fruition; the reserves are short-lived; and the properties are located in the Gulf of Mexico, a locale prone to substantial adverse weather events. It is possible that absent confirmation of the Plan, the result may be a cessation of all business operations, followed by a piecemeal liquidation of estate assets. If that were to occur, holders of Allowed Claims would receive a fraction of the face amount of their Claims and holders of Unsecured Claims might see no recovery at all. *See* "Alternatives to Confirmation and Consummation of the Plan." See also Exhibit 4, Liquidation Analysis.

### B. Potential Adverse Effects of Chapter 11

While the Debtors will seek to make their stay in Chapter 11 as brief as possible so as to minimize any potential disruption to their business operations and dealer and customer goodwill, it is possible that despite the belief and intent of the Debtors, the commencement of the Chapter 11 Cases could materially adversely affect relationships among the Debtors and their customers, joint interest owners, investors, employees, and suppliers. Indeed, the Debtors believe that the fact that they were unable to pursue an out-of-court restructuring may have an adverse effect on their business and enterprise value.

### C. Inherent Uncertainty of Financial Projections

The financial assumptions set forth herein are based on numerous assumptions including the timing, confirmation, and consummation of the Plan in accordance with its terms, the anticipated future performance of the Reorganized Debtors, general business and economic conditions, and other matters, many of which are beyond the control of the Reorganized Debtors and some or all of which may not materialize. In addition, unanticipated events and circumstances occurring subsequent to the date of this Disclosure Statement may affect the actual financial results of the Debtors' operations.

Variations from assumptions in the Disclosure Statement may be material and may adversely affect the ability of the Reorganized Debtors to make payments with respect to post-Effective Date indebtedness and to achieve the Projections. Because the actual results achieved throughout the periods covered by the Projections can be expected to vary from the projected results, the Projections should not be relied upon as a guaranty, representation, or other assurance that the actual results will occur.

Except with respect to the Projections and except as otherwise specifically and expressly stated herein, this Disclosure Statement does not reflect any events that may occur subsequent to the date hereof and that may have a material impact on the information contained in this Disclosure Statement. Neither the Debtors nor the Reorganized Debtors intend to update the Projections for the purposes hereof; thus, the Projections will not reflect the impact of any subsequent events not already accounted for in the assumptions underlying the Projections.

### D.    Environmental Matters

The past and present business operations of the Debtors and the past and present ownership and operation of real property by the Reorganized Debtors are subject to extensive and changing federal, state and local environmental laws and regulations pertaining to the discharge of certain materials into the environment, the handling and disposal of wastes (including solid and hazardous wastes) or otherwise relating to health, safety and protection of the environment. As such, the nature of the Debtors' operations and previous operations by others at real property currently or formerly owned or operated by the Debtors expose the Debtors to the risk of claims under such environmental laws and regulations, and there can be no assurance that material costs or liabilities will not be incurred in connection with such claims. Based on their experience to date, the Debtors do not expect such claims, or the costs of compliance with environmental laws and regulations, to have a material impact on their capital expenditures, earnings or competitive position. No assurance can be given, however, that the discovery of presently unknown environmental conditions, changes in environmental laws and regulations or their interpretation, or other unanticipated events will not give rise to expenditures or liabilities that may have such an effect.

### E.    Dependence on Key Personnel

The success of the Reorganized Debtors' business is materially dependent upon the continued services of their key officers and employees. The loss of key personnel due to death, disability or termination of employment could have a material adverse effect on the results of operations or financial conditions, or both, of the Reorganized Debtors.

### F.    Absence of Public Market; Restriction on Transferability

The shares of Reorganized Debtors are securities for which there is no market. Accordingly, there can be no assurance as to the development or liquidity of any market for the shares of the stock. If a trading market does not develop or is not maintained, holders of the shares may experience difficulty in reselling such securities or may be unable to sell them at all. If a market for the shares of the stock develops, any such market may be discontinued at any time.

The shares of Reorganized Debtors stock are being offered in reliance upon an exemption from registration under the Securities Act and applicable state securities laws. Therefore, the shares may be transferred or resold only in a transaction registered under or exempt from the Securities Act and applicable state securities laws. The liquidity of, and trading market for, the shares of such stock also may be adversely affected by general declines in the market or by declines in the market for similar securities. Such declines may adversely affect such liquidity

31

and trading markets independent of the financial performance of, and prospect for, the Reorganized Debtors.

### G. Dividends

The Reorganized Debtors do not anticipate that any dividends will be paid in the near term.

## VI. CONFIRMATION OF THE PLAN

The Bankruptcy Court may confirm the Plan only if it determines that the Plan complies with the technical requirements of Chapter 11, including, among other things, that (a) the Plan properly classifies Claims and Interests (b) the Plan complies with applicable provisions of the Bankruptcy Code, (c) the Debtors have complied with applicable provisions of the Bankruptcy Code, (d) the Debtors have proposed the Plan in good faith and not by any means forbidden by law, (e) disclosure of "adequate information" as required by section 1125 of the Bankruptcy Code has been made, (f) the Plan has been accepted by the requisite votes of creditors (except to the extent that "cramdown" is available under section 1129(b) of the Bankruptcy Code), (g) the Plan is in the "best interests" of all holders of Claims or Interests in each Impaired Class, (h) all fees and expenses payable under 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation Hearing, have been paid or the Plan provides for the payment of such fees on the Effective Date, and (i) the Plan provides for the continuation after the Effective Date of all retiree benefits, as defined in section 1114 of the Bankruptcy Code, at the level established at any time before Confirmation in accordance with sections 1114(e)(1)(B) or 1114(g) of the Bankruptcy Code, for the duration of the period that the Debtors have obligated themselves to provide such benefits.

### A. Voting Requirements

Under the Bankruptcy Code, only Classes of Claims and Interests that are "impaired" (as that term is defined in section 1124 of the Bankruptcy Code) under the Plan are entitled to vote to accept or reject the Plan. A Class is impaired if the Plan modifies the legal, equitable or contractual rights of holders of Claims or Interests in the Class (other than by curing defaults and reinstating debt). Under section 1126(f) of the Bankruptcy Code, Classes of Claims and Interests that are unimpaired are conclusively presumed to have accepted the Plan and are not entitled to vote on the Plan. Under section 1126(g) of the Bankruptcy Code, Classes of Claims and Interests whose holders will not receive or retain any property under the Plan are deemed to have rejected the Plan and are not entitled to vote on the Plan.

An Impaired Class of Interests will have accepted a plan if such plan has been accepted by holders of such interests, other than any entity designated under section 1126(e), that hold at least two-thirds in amount of the allowed interests of such class held by holders of such interests, other than any entity designated under section 1126(e), that have accepted or rejected such plan.

An Impaired Class of Interests will have accepted the Plan if (a) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Interests actually voting in such Class have voted to accept the Plan and

(b) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.

The only classes that are Impaired under the Plan are Classes 9.10 and 11 which are comprised of Interest Holders in the Debtors. Accordingly, holders of such Interests are entitled to vote on the Plan. All other classes are Unimpaired, are deemed to have accepted the Plan, and their votes therefore will not be solicited.

### B.     Feasibility of the Plan

In connection with confirmation of the Plan, section 1129(a)(11) of the Bankruptcy Code requires that the Bankruptcy Court find that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtors. This is the so-called "feasibility" test. The Reorganized Debtors will be recapitalized with substantial additional capital contributed by the owners of Davis Acquisition Corporation. The Reorganized Debtors will have no outstanding debt other than trade debt incurred in the ordinary course of business. As such, confirmation of the Plan is very unlikely to be followed by further liquidation. This conclusion is supported by the projections attached hereto that were prepared by the Debtors. Accordingly, the Debtors believe that the Plan complies with the standard of section 1129(a)(11) of the Bankruptcy Code.

### C.     Best Interests Test

Even if the Plan is accepted by each class of holders of Claims and Interests, the Bankruptcy Code requires a Bankruptcy Court to find that the Plan is in the "best interests" of all holders of Claims or Interests that are impaired by the Plan and that have not accepted the Plan. The "best interests" test, as set forth in section 1129(a)(7) of the Bankruptcy Code, requires a bankruptcy court to find either that (i) all members of an impaired class of claims or interests have accepted the plan or (ii) the plan will provide a member who has not accepted the plan with a recovery of property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the debtor were liquidated under Chapter 7 of the Bankruptcy Code on such date.

To calculate the probable distribution to members of each impaired class of holders of claims or interests if a debtor were liquidated under Chapter 7, a Bankruptcy Court must first determine the aggregate dollar amount that would be generated from the debtor's assets if its Chapter 11 case were converted to a Chapter 7 case under the Bankruptcy Code. This "liquidation value" would consist primarily of the proceeds from a forced sale of the debtor's assets by a Chapter 7 trustee.

The amount of liquidation value available to unsecured creditors would be reduced by the claims of secured creditors to the extent of the value of their collateral and by the costs and expenses of liquidation, as well as by other administrative expenses and costs of both the Chapter 7 case and the Chapter 11 case. Costs of a liquidation under Chapter 7 of the Bankruptcy Code would include the compensation of a Chapter 7 trustee, as well as of counsel and other professionals retained by the trustee, asset disposition expenses, all unpaid expenses