# Exhibit B

## SUMMARY OF PROPOSED TERMS
## FOR THE ACQUISITION OF EQUITY IN THE DAVIS OPERATING COMPANIES

This Summary of Proposed Terms ("Term Sheet") is intended as a summary only and does not reference all of the terms, conditions, representations, warranties, covenants and other provisions, which will be contained in the definitive documentation for the transactions contemplated hereby. It also does not include descriptions of all of the terms, conditions, other structural elements or regulatory approvals that may be necessary or will be provided for in the definitive documentation relating to the proposed transaction. The ultimate legal structure will be determined with the advice of legal and tax counsel and the agreement of the parties hereto, and the terms contained in this Term Sheet will be modified to reflect any such revised structure and other legal and tax considerations.

Terms used herein and not otherwise defined shall have the respective meanings set forth in the draft Contribution and Sale Agreement dated as of February 13, 2006 (the "Draft CSA").

### GENERAL

**Plan:** The Board of Directors or other governing bodies of the Operating Companies will approve the reorganization of the Operating Companies pursuant to a prepackaged bankruptcy plan that is satisfactory in form and substance to the Buyers (the "Plan"), and such Board and/or governing body approvals will be the only approvals required in connection with the filing of the Plan. Among other things, the Plan shall provide for:

a. the satisfaction and discharge of all Claims (as defined in section 101 of the Bankruptcy Code) against the Operating Companies in exchange for (i) payment of the allowed amount of such Claims from the proceeds of the Transaction (as defined below) or (ii) such other treatment that is acceptable to the Buyer and agreed to by the Operating Companies and a holder of an allowed Claim;

b. the cancellation and annulment of all existing equity interests in the Operating Companies in exchange for the distribution to each holder of an allowed equity interest of its pro rata share of the Transaction proceeds remaining after payment of all allowed Claims. Proceeds of the Transaction will be paid into, and Claims and distributions to equity holders paid out of, a liquidating trust established pursuant to the Plan;

c. the issuance of new equity interests in the reorganized Operating Companies (collectively, "New Davis") to the Buyers;

d.  the assumption by the Operating Companies and assignment to New Davis of all executory contracts not expressly rejected (as may be designated by the Buyers);

e.  the payment to Buyers of a transaction fee equal to 1.5% of the Purchase Price (as defined below);

f.  the segregation and retention of not less than $10 million of the Purchase Price to secure the Operating Companies' obligation to indemnify the Buyers for any breach of a representation or warranty contained in the Final CSA (as defined below).

g.  express findings that, except to the extent expressly assumed pursuant to the Plan, New Davis, the Buyers, their affiliates and their representatives shall not be liable as a successor or otherwise for any claim or cause of action arising prior to the effective date of the Plan;

h.  an affirmative injunction against any person from pursuing in any way a claim or cause of action that arose prior to the effective date of the Plan against New Davis, the Buyers, their affiliates and their representatives;

i.  the commitment by the Buyers to provide funding of up to $40 million to New Davis which is expected, together with projected cash flows and new secured financings, to be sufficient to fund New Davis' currently projected capital expenditures through fiscal 2006 (as more particularly described on Schedule A); and

j.  usual and customary conditions to effectiveness, including but not limited to (i) payment to the Buyers of the Reimbursement Obligation (as defined below) prior to the filing of any petition for bankruptcy relief by the Operating Companies and (ii) the entry by the Bankruptcy Court, on or before March 15, 2006, of an order (the "Confirmation Order") confirming the Plan and approving the Transaction in a form that is acceptable and expressly approved by the Buyers.

**Transaction:**   Pursuant to the Plan, Buyers will acquire all of the issued and outstanding equity interests of New Davis on substantially the terms set forth in the Draft CSA, with such changes as are set forth herein, necessary to reflect the Plan, or agreed by the parties (the "Transaction"). Prior to the filing of the Plan, the Contribution and Sale Agreement (the "Final CSA") will be executed. There shall be usual and customary conditions to the Buyers' obligation to close the Transaction, including but not limited to the Buyers'

|  |  |
|---|---|
|  | satisfaction that the Confirmation Order is a final and non-appealable order. The Final CSA shall terminate and the Buyers shall have no further obligations of any kind if all conditions to closing are not satisfied on or before March 30, 2006. |
| **Purchase Price:** | The Purchase Price shall be equal to $150 million, subject to the closing adjustments as described herein |
|  | The Purchase Price shall be (i) adjusted upward dollar for dollar to the extent that the current assets of New Davis at Closing are greater than zero (assuming that New Davis emerges from chapter 11 with no current liabilities) and (ii) adjusted downward dollar for dollar to the extent the Operating Companies have not made or accrued (such that they constitute a Claim against the Operating Companies) any of the projected capital expenditures contained in the budgets given to Evercore on February 25 and 27, 2006, attached as Schedule A. |
| **Expenses/Break-Up Fee:** | If for any reason the Confirmation Order has not been entered on or prior to March 15, 2006 and/or the Transaction has not closed on or before March 30, 2006, then the Company shall (i) promptly reimburse Buyers and Buyers' Affiliates for their reasonable out-of-pocket third-party fees and expenses incurred in connection with Buyers' and Buyers' Affiliates consideration of and participation in the Transaction and (ii) pay to Buyers a break-up fee equal to 2.5% of the Purchase Price. In addition, in the event Sellers or their affiliates enter into an Alternative Transaction within 12 months of the earlier to occur of the failure of the entry of the Confirmation Order by March 15 or failure to close by March 30, then Sellers shall pay to Buyers an additional break-up fee of 2.5% of the Purchase Price; provided that no break-up fee shall be payable in either circumstance in the event that Buyers determine, as a consequence of its due diligence review, not to proceed with the Transaction |
| **Exclusivity:** | From the date hereof and prior to termination of Buyers' obligations under the Final CSA, the Operating Companies will not, and they will cause their the directors, officers, stockholders, employees, representatives (including, without limitation, financial advisors, attorneys and accountants) and agents not to, directly or indirectly encourage, solicit, initiate or enter into any discussions, negotiations, arrangements, understandings or agreements |

|  |  |
|---|---|
|  | (whether written or oral) with, or provide any information to, any corporation, partnership, limited liability company, association, person or any other entity or group with respect to any transaction similar in purpose or effect to, that could be preclusive or that could have the effect of limiting the scope of, the Transaction (an "Alternative Transaction"); (ii) they will immediately cease and cause to be terminated any existing activities, discussions or negotiations with any parties conducted heretofore by any person with respect to any Alternative Transaction; and (iii) they will notify the Buyers immediately in writing if any inquiries or proposals (including the identity of the party making such inquiry or proposal and the terms thereof) are received by, any such information is requested from, or any such negotiations or discussions are sought to be initiated or continued with them with respect to any Alternative Transaction. |
|  | As filed with the bankruptcy court, the Plan will contemplate only the Transaction and will not contemplate any Alternative Transaction (or any process by which Alternative Transactions will be solicited or pursued). |
| **Due Diligence:** | The willingness of the Buyers to enter into a final Contribution and Sale Agreement on the terms set out herein will be subject to continued due diligence review, including but not limited to a review of the Operating Companies' existing oil and gas reserves and future prospects, financial statements, environmental liabilities, accounting records, legal due diligence and continued business due diligence. Without limiting the foregoing, Buyers shall be assured as to the retention of key employees and management, that any DIP or similar financing be acceptable to Buyers, and that Sellers have not gone "non-consent" with respect to any Oil and Gas Lease or lost any other material benefit or right with respect to any Oil and Gas Property. |
| **Confidentiality:** | Prior to solicitation of consents for the Plan, neither the existence or contents of this Term Sheet may be disclosed to any person other than the Operating Companies representatives, who shall be directed by the Operating Companies as to the strictly confidential nature hereof. This proposal will expire at Buyers' option if the Operating Companies or any of their Affiliates or representatives discloses the existence or contents of this Term Sheet to |

|  |  |
|---|---|
| | any third party in violation of this Term Sheet without Buyers' prior written consent. |
| Public Relations: | The Operating Companies shall coordinate with Buyers with respect to all media releases or other communications with the public and shall not disclose or describe the Transaction or the Plan in any manner not previously approved by Buyers. |
| Expense Reimbursement: | As soon as practicable and prior to any chapter 11 filing, the Operating Companies shall pay to the Buyers $1.5 million in satisfaction of their existing obligation to reimburse the Buyers for expenses related to the preparation and negotiation of the Draft CSA, together with related due diligence and other investigation expenses (the "Reimbursement Obligation"). |
| Nature of Proposal: | The Proposal set forth in this Term Sheet is subject to the satisfaction of the various conditions set forth above and execution of a mutually acceptable Final CSA. |

For the Buyers:

DAVIS PETROLEUM INVESTMENT LLC
By: EVERCORE CAPITAL PARTNERS II, LP, its managing member

By: Evercore Partners II L.L.C., its general partner

By: William O. Hiltz
Authorized Signatory

RMCP PIV DPC, L.P.
By: RMCP DPC LLC, its general partner
By: Red Mountain Capital Partners LLC, its managing member
By: Red Mountain Capital Management, Inc., its managing member

By: _____
Name: Willem Mesdag
Title: President


SANKATY DAVIS, LLC
By: _____
Name: Stuart Davis
Title: Vice President

**For the Operating Companies:**

Davis Petroleum Corp.
By: _____
Name: Gregg Davis
Title: President

Davis Offshore L.P.
By: _____
Name: Gregg Davis
Title: President

Davis Petroleum Pipeline LLC
By: _____
Name: Gregg Davis
Title: President