UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| DAVIS PETROLEUM CORP., | § § | CASE NO. _____ |
| DAVIS OFFSHORE, L.P. and | § § | CASE NO. _____ |
| DAVIS PETROLEUM PIPELINE LLC, | § § | CASE NO. _____ |
| DEBTORS | § § | JOINTLY ADMINISTERED UNDER CASE NO. _____ |

## JOINT PLAN OF REORGANIZATION OF
## DAVIS PETROLEUM CORP., DAVIS OFFSHORE, L.P., AND
## <u>DAVIS PETROLEUM PIPELINE LLC</u>

**RHETT G. CAMPBELL**
State Bar No. 03714500
**DIANA W. WOODMAN**
State Bar No. 21942300
**MITCHELL E. AYER**
State Bar No. 01465500
**MATTHEW R. REED**
State Bar No. 24046693
**THOMPSON & KNIGHT LLP**
333 Clay Street, Suite 3300
Houston, Texas 77002
713.654.8111

Attorneys for Davis Petroleum Corp.,
Davis Offshore, L.P., and
Davis Petroleum Pipeline LLC

Dated: March 7, 2006

1

502183 000001 HOUSTON 442064.1

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................5

ARTICLE I - DEFINITIONS, RULES OF INTERPRETATION, AND COMPUTATION OF TIME..................................................................................................................5
- A. Scope of Definitions; Rules of Construction .......................................................5
- B. Definitions............................................................................................................5
- C. Rules of Interpretation .......................................................................................10
- D. Computation of Time.........................................................................................11

ARTICLE II – CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS .........................................................................................................11
- A. Introduction........................................................................................................11
- B. Classification and Treatment of Claims and Interests .......................................11
- C. Full Satisfaction .................................................................................................13
- D. Alternative Treatment .......................................................................................13

ARTICLE III – MEANS FOR IMPLEMENTATION OF THE PLAN ..............................13
- A. Continued Corporate Existence .........................................................................13
- B. Certificates of Incorporation, Partnership Agreements, and By-laws ..............14
- C. Authority............................................................................................................14
- D. Vesting of Assets ...............................................................................................14
- E. Continuing Buyer Claims ..................................................................................14
- F. Restructuring Transactions ................................................................................15
- G. Cancellation of Instruments and Agreements ...................................................15
- H. Liquidating Trust ...............................................................................................15
- I. Liquidating Trustee and Advisory Committee ..................................................16
- J. Establishment and Selection of the Advisory Committee .................................16
- K. Compensation of Advisory Committee .............................................................17

| | | |
|---|---|---|
| L. | Certain Actions of the Advisory Committee | 17 |
| M. | Resignation of the Liquidating Trustee | 17 |
| N. | Removal of Liquidating Trustee | 17 |
| O. | Appointment of a Successor Liquidating Trustee | 17 |
| P. | Vesting of Rights in Successor Liquidating Trustee | 18 |
| Q. | Compensation | 18 |
| R. | Directors and Officers | 18 |
| S. | Mutual Releases | 19 |
| T. | Other Releases and Certain Retained Causes of Action | 20 |
| U. | Exemption from Certain Transfer Taxes | 20 |
| V. | Effectuating Documents; Further Transactions | 20 |

**ARTICLE IV – PROVISIONS GOVERNING DISTRIBUTIONS ............ 20**

| | | |
|---|---|---|
| A. | Delivery of Distributions; Undeliverable or Unclaimed Distributions | 20 |
| B. | Withholding and Reporting Requirements | 21 |
| C. | Setoffs | 22 |

**ARTICLE V – TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............ 22**

| | | |
|---|---|---|
| A. | Assumed Contracts and Leases | 22 |
| B. | Payments Related to Assumption of Contracts and Leases | 22 |
| C. | Compensation, Benefit, and Pension Programs | 22 |
| D. | Indemnification Obligations | 22 |
| E. | Treatment of Change of Control Provisions | 23 |
| F. | Purchase Agreement | 23 |

**ARTICLE VI – ACCEPTANCE OR REJECTION OF THE PLAN ............ 23**

| | | |
|---|---|---|
| A. | Classes Entitled To Vote | 23 |
| B. | Acceptance by Impaired Classes | 23 |

|   |   |   |
|---|---|---|
| | C. Cramdown | 23 |
| ARTICLE VII – CONDITIONS PRECEDENT TO THE PLAN'S CONFIRMATION AND EFFECTIVE DATE | | 24 |
| | A. Conditions to Confirmation | 24 |
| | B. Conditions to Effective Date | 24 |
| | C. Waiver of Conditions | 25 |
| ARTICLE VIII – MODIFICATION; WITHDRAWAL | | 25 |
| ARTICLE IX – RETENTION OF JURISDICTION | | 25 |
| ARTICLE X – EFFECTS OF CONFIRMATION | | 26 |
| | A. Binding Effect | 26 |
| | B. Discharge Of The Debtors | 26 |
| | C. Injunction | 27 |
| | D. Exculpation And Limitation Of Liability | 27 |
| ARTICLE XI – MISCELLANEOUS PROVISIONS | | 28 |
| | A. Allocation of Plan Distributions Between Principal and Interest | 28 |
| | B. Payment of Statutory Fees | 28 |
| | C. Severability of Plan Provisions | 28 |
| | D. Successors and Assigns | 28 |
| | E. Term of Injunctions or Stays | 29 |
| | F. Notices to Debtors | 29 |
| | G. Governing Law | 29 |

## INTRODUCTION

Davis Petroleum Corp. ("Davis Petroleum"), Davis Offshore L.P. ("Davis Offshore") and Davis Petroleum Pipeline LLC ("Davis Pipeline") (collectively "Debtors") hereby propose this prepackaged joint reorganization plan ("Plan"). The Debtors' Disclosure Statement, distributed with this Plan, contains a discussion of the Debtors' history, businesses, properties and a summary of the Plan and certain related matters relating to the Plan's confirmation. The Debtors urge all holders of Impaired Claims and Interests to review the Disclosure Statement and Plan in full. **This Plan proposes to pay all creditors of the Debtors 100% on their allowed claims from the plan proceeds, unless they agree to different treatment. Holders of allowed interests in the Debtors are impaired and will not receive distributions until creditors are paid in full.**

## ARTICLE I

## DEFINITIONS, RULES OF INTERPRETATION, AND COMPUTATION OF TIME

**A.     Scope of Definitions; Rules of Construction**

Except as expressly provided or unless the context otherwise requires, capitalized terms not otherwise defined in this Plan shall have the meanings ascribed to them in this Article I, except to the extent they are defined terms in the Term Sheet attached to the Disclosure Statement as Exhibit B, or the Draft Contribution and Sale Agreement dated February 13, 2006 attached to the Disclosure Statement as Exhibit C, and both incorporated herein. Any term used in the Plan that is not defined herein or in the Term Sheet or the Draft Contribution and Sale Agreement dated February 13, 2006, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to it therein. Where the context requires, any definition applies to the plural as well as the singular number.

**B.     Definitions**

1.1     "Administrative Claim" means a Claim for payment of an administrative expense of a kind specified in section 503(b) or 1114(e)(2) of the Bankruptcy Code and entitled to priority under section 507(a)(1) of the Bankruptcy Code, including (a) actual, necessary costs and expenses of preserving the Debtors' Estates and operating their businesses, including wages, salaries, or commissions for services rendered, and (b) all fees and charges assessed against the Estates under chapter 123 of title 28, United States Code.

1.2     "Allowance Date" means the later of (i) the Effective Date or (ii) the date a claim becomes an Allowed Claim.

1.3     "Allowed" with respect to (a) any Claim other than an Administrative Claim, (i) that has been allowed by a Final Order, (ii) that is listed in a Debtor's Schedules as liquidated, non-contingent undisputed in an amount greater than zero, as the same may from time to time be amended in accordance with the Bankruptcy Code, Bankruptcy Rules or order of the Bankruptcy

Court, (iii) the subject of a timely filed proof of claim as to which either no objection to its allowance has been filed (either by way of objection or amendment to the Schedules) within the periods of limitation fixed by the Bankruptcy Code or by any order of the Bankruptcy Court, or (iv) that is expressly allowed in a liquidated amount in the Plan; and (b) any Administrative Claim, means an Administrative Claim as to which a timely request for payment has been made in accordance with this Plan (if such written request is required) that has been allowed by a Final Order;; and (c) any Interest, means an Interest that, as of the Voting Deadline, appears of record in the equity register maintained by or on behalf of a Debtor.

      1.4    "Bank " means Bank of America, N.A., successor by merger to Fleet National Bank, As Administrative Agent and as the sole bank under the Senior Credit Facility, and the prepetition lender to the Debtors.

      1.5    "Bank Claims" means the Claims arising from or related to claims in the aggregate amount of at least $28,950,000.00 together with accrued and unpaid interest, fees, costs and all other charges payable pursuant to the Senior Credit Facility.

      1.6    "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as codified in title 11 of the United States Code, as now in effect or hereafter amended.

      1.7    "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of Texas, Corpus Christi Division.

      1.8    "Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, and the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Cases or proceedings therein.

      1.9    "Business Day" means any day, excluding Saturdays, Sundays or "legal holidays" (as defined in Fed. R. Bankr. P. 9006(a)), on which commercial banks are open for business in New York, New York.

      1.10    "Buyer, collectively, Davis Petroleum Acquisition Corp. and one or more subsidiaries of Davis Petroleum Acquisition Corp. that will purchase the New Interests of the Reorganized Debtors pursuant to this Plan.

      1.11    "Buyer Claims" means Causes of Action of Buyer under the Purchase Agreement, including any breach of representation or warranty contained therein, post-closing adjustment to the Purchase Price or reimbursement obligation for any amounts that may be paid by Buyer on account of any Administrative Expense or other Claim that, if not paid by Buyer, would have been entitled under this Plan to payment from the Liquidating Trust.

      1.12    "Buyer Party" means Buyer, each of its direct and indirect subsidiaries and affiliates, and each of their respective present and former shareholders, members, partners, directors, managers, officers, employees, agents, attorneys, advisors, and accountants.

      1.13    "Cash" means legal tender of the United States.

1.14    "Causes of Action" means all rights, claims, causes of action, defenses, debts, demands, damages, obligations, and liabilities of any kind or nature under contract, at law or in equity, known or unknown, contingent or matured, liquidated or unliquidated, and all rights and remedies with respect thereto.

1.15    "Chapter 11 Case(s)" means the Chapter 11 cases of the Debtors.

1.16    "Claim" means a claim, as defined in section 101(5) of the Bankruptcy Code, against a Debtor.

1.17    "Class" means one of the classes of Claims or Interests listed in the Plan.

1.18    "Collateral" means any property or interest in property of a Debtor's Estate that is subject to a Lien to secure the payment or performance of a Claim.

1.19    "Confirmation" means the entry by the Bankruptcy Court of the Confirmation Order.

1.20    "Confirmation Date" means the date of entry by the clerk of the Bankruptcy Court of the Confirmation Order.

1.21    "Confirmation Hearing" means the hearing to consider confirmation of the Plan under section 1128 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

1.22    "Confirmation Order" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

1.23    "Cure" means the payment of Cash by a Debtor, or the distribution of other property (as the parties may agree or the Bankruptcy Court may order), as necessary to cure defaults under an executory contract or unexpired lease of the Debtor that permits such Debtor to assume that contract or lease under section 365(a) of the Bankruptcy Code.

1.24    "Debtor" means each of Davis Petroleum, Davis Offshore and Davis Petroleum, as debtors and debtors-in-possession under sections 1107 and 1108 of the Bankruptcy Code, and "Debtors" means all of them collectively.

1.25    "Debtor Party" means each of the Debtors, each of their direct and indirect subsidiaries and affiliates, the Liquidating Trustee, the Liquidating Trust, and each of their respective present and former shareholders, members, partners, directors, managers, officers, employees, agents, attorneys, advisors, and accountants.

1.26    "Disclosure Statement" means the written disclosure statement that relates to the Plan, as amended, supplemented or modified from time to time and that is prepared and distributed in accordance with section 1125 of the Bankruptcy Code and Fed. R. Bankr. P. 3018.

1.27 "Distribution Date" means the later of the Effective Date or the Allowance Date.

1.28 "Effective Date" means the first Business Day on which (i) all conditions to the Plan's confirmation in Article VIII Section B of the Plan have been satisfied or waived and (ii) either (a) the Confirmation Order is a Final Order or (b) any date after the entry of the Confirmation Order provided that no stay is then in effect, as agreed between Debtors and Buyers.

1.29 "Estate" means the estate of any Debtor in the Chapter 11 Cases, and "Estates" means, collectively, the estates of all of the Debtors in the Chapter 11 Cases, in each case as created under section 541 of the Bankruptcy Code.

1.30 "Final Order" means (a) an order or judgment of the Bankruptcy Court as to which the time to appeal, petition for *certiorari*, or other proceedings for reargument or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for reargument or rehearing shall then be pending or, (b) in the event that an appeal, petition for *certiorari*, or motion for reargument or rehearing has been sought, such order of the Bankruptcy Court shall have been unaffirmed by the highest court to which such order was appealed or from which reargument or rehearing was sought, or *certiorari* has been denied, and the time to take any further appeal, petition for *certiorari* or other proceedings for reargument or rehearing shall have expired; *provided, however,* that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure may be filed with respect to such order.

1.31 "General Unsecured Claim" means a Claim that is not an Administrative Claim, Bank Claim, Other Priority Claim, Other Secured Claim, or Priority Tax Claim.

1.32 "Impaired" refers to any Claim that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.33 "Indemnity Claims" means the unsecured, contingent and unliquidated indemnification claims of officers and directors of Davis Petroleum.

1.34 "Indemnity Period" means the first of occur of (i) eighteen months from the closing date under the Contribution and Sale Agreement or (ii) thirty days after delivery to buyers of audited combined financial statements of Davis Petroleum, Davis Offshore and Davis Pipeline for the year ended December 31, 2006.

1.35 "Intercompany Claim" means any Claim by a Debtor against another Debtor.

1.36 "Interest" means the legal, equitable, contractual and other rights of any Person with respect to any shares or partnership interests in any of the Debtors or any other right thereto, including, but not limited to, common stock, preferred stock, stock options and warrants.

1.37    "Lien" has the meaning ascribed to such term in section 101(37) of the Bankruptcy Code.

1.38    "Liquidating Trust" means that certain liquidating trust established by this Plan for the purpose of receiving payment of the Purchase Price and making distributions to holders of Allowed Claims and Allowed Interests in accordance with this Plan.

1.39    "New Interests" means, collectively, the partnership interests of Reorganized Davis Offshore, the membership interests of Reorganized Davis Pipeline,and the shares of Reorganized Davis Petroleum, in each case as such are to be authorized and issued to Buyer under Article IV Section C of the Plan.

1.40    "Other Priority Claim" means a Claim entitled to priority under Section 507(a) of the Bankruptcy Code other than a Priority Tax Claim or an Administrative Claim.

1.41    "Other Secured Claims" means all Secured Claims against the Debtors other than the Bank Claims.

1.42    "Person" means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, or other entity.

1.43    "Petition Date" means the date on which the Debtors filed their petitions for relief commencing the Chapter 11 Cases.

1.44    "Priority Tax Claim" means a Claim that is entitled to priority under section 507(a)(8) of the Bankruptcy Code.

1.45    "Priority Non-Tax Claim" means any Claim accorded priority in right of payment under Section 507(a)(3), (4), (5), (6), or (7) of the Bankruptcy Code.

1.46    "Pro rata" means, at any time, the proportion that the face amount of a Claim in a particular Class bears to the aggregate face amount of all Claims or Interest in that Class or Interest.

1.47    "Purchase Agreement" means, upon its execution, a definitive agreement under which Buyer agreed to acquire the New Interests that is based upon and consistent with the Term Sheet attached as Exhibit B to the Disclosure Statement and, prior to execution of such a definitive agreement, means the Term Sheet.

1.48.   "Purchase Price" means the purchase price under the Purchase Agreement.

1.49    "Reorganized Davis Petroleum" means Davis Petroleum from and after the Effective Date.

1.50   "Reorganized Davis Offshore" means Davis Offshore from and after the Effective Date.

1.51   "Reorganized Davis Pipeline" means Davis Pipeline from and after the Effective Date.

1.52   "Reorganized Debtor" and "Reorganized Debtors" means, individually, any Debtor and, collectively, all Debtors, in each case from and after the Effective Date.

1.53   "Sankaty Bridge Debt" means any and all debt outstanding under the Series B-1 Notes in the aggregate principal amount of $20,202,020.20, together with accrued and unpaid interest, issued pursuant to the Sankaty Notes Agreement.

1.54   "Sankaty Claims" means the claims attributable to the Sankaty Bridge Debt and the Sankaty Notes Agreement.

1.55   "Sankaty Notes Agreement" means Amended and Restated Senior Subordinated Secured Note Purchase Agreement, dated as of June 13, 2005, among Davis Petroleum, Davis Offshore, and Davis Pipeline, the guarantors party thereto, and Sankaty High Yield Partners II, L.P., Sankaty High Yield Partners III, L.P., Sankaty Credit Opportunities, L.P., Sankaty Credit Opportunities II, L.P., and Prospect Credit Harbor Partners, L.P.

1.56   "Secured Claim" means a Claim that is secured by a Lien on property in which an Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

1.57   "Senior Credit Facility" means that Credit Agreement, dated as of November 17, 2003, among Davis Petroleum, Davis Offshore, and Davis Pipeline, as borrowers, and Bank, as administrative agent, as amended by that certain First Amendment to Credit Agreement dated June 13, 2005 ( and as may be amended or supplemented from time to time thereafter)and sole lender thereunder.

C.   **Rules of Interpretation**

   (i)   General

In this Plan (a) any reference to a contract, instrument, release, or other agreement or document as being in a particular form or on particular terms and conditions means the agreement or document substantially in that form or on those terms and conditions, (b) any reference to an existing document or exhibit means that document or exhibit as it may have been or may be amended, modified, or supplemented, (c) unless otherwise specified, all references to Sections, Articles, Schedules, and Exhibits are references to Sections, Articles, Schedules, and Exhibits of or to the Plan, (d) the words "herein" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan, (e) captions and headings to Articles and Sections

are for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan, and (f) the rules of construction in section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

(ii)   "Including"

As used in this Plan, "including" means "including without limitation."

(iii)   "On"

with reference to any distribution under this Plan, "on" a date means on or as soon as reasonably practicable after that date.

(iv)   "Contra Proferentum" Rule Not Applicable

This Plan is the product of extensive discussions and negotiations between and among, *inter alia*, the Debtors, the Interest Holders, the Bank and the Buyer Parties. Each of the foregoing was represented by counsel who either participated in the formulation and documentation of, or was afforded the opportunity to review and provide comments on, the Plan, the Disclosure Statement, and the documents ancillary thereto. Accordingly, the general rule of contract construction known as "contra proferentum" shall not apply to the interpretation of any provision of this Plan, the Disclosure Statement, or any agreement or document generated in connection herewith.

**D.   Computation of Time**

In computing any period of time prescribed or allowed by the Plan, the provisions of Fed. R. Bankr. P. 9006(a) shall apply.

## ARTICLE II

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

**A.   Introduction**

The Plan places all Claims and Interests into the Classes listed below. A Claim or Interest is placed in a particular Class only to the extent that it falls within the description of that Class, and is classified in other Classes to the extent that any portion thereof falls within the description of other Classes.

**B.   Classification and Treatment of Claims and Interests**

Class 1.   Administrative Claims. These claims are not impaired. Administrative Claims are Claims for payment of an administrative expense of a kind specified in section 503(b) or 1114(e)(2) of the Bankruptcy Code and entitled to priority under section 507(a)(1) of the Bankruptcy Code, including (a) actual, necessary costs and expenses of preserving the Debtors' Estates and operating their businesses, including wages, salaries, or commissions for services

rendered, and (b) all fees and charges assessed against the Estates under chapter 123 of title 28, United States Code. Each holder of an Administrative Claim shall be paid in full on the Effective Date to the extent such claim is an Allowed Claim, or such date thereafter as a Final Order is entered allowing such claim. Payment shall be made from the Liquidating Trust. Alternatively, each holder of an Administrative Claim shall receive Cash equal to the unpaid portion of its Administrative Claim on the date on which its Administrative Claim becomes payable under applicable law or any agreement relating thereto. Administrative Claims are estimated to be in the approximate amount of $700,000 as of the Confirmation Date.

Class 2   Bank Group Claims as to all Debtors. These claims are unimpaired. The Bank Claims are Allowed Claims. On the Effective Date, each holder of an Allowed Bank Claim shall receive, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Bank Group Claim, payment in full of its Allowed Claims. These Claims shall be paid at closing from the Purchase Price on the Effective Date. These claims are unimpaired and not entitled to vote.

Class 3   Sankaty Claims as to all Debtors. These claims are unimpaired. The Sankaty Claims are Allowed Claims. On the Effective Date, each holder of a Sankaty Claim shall receive, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Sankaty Claim, payment in full of its Allowed Claims. These claims shall be paid at closing from the Purchase Price. These claims are unimpaired and not entitled to vote.

Class 4   Other Secured Claims as to all Debtors. These claims are unimpaired. Class 4 shall include all secured claims other than Class 2 and Class 3 Claims. Each holder of a Class 4 Claim shall be paid in full in cash on the Effective Date to the extent it is an Allowed Claim or on the date when such Claim becomes an Allowed Claim. These claims shall be paid from the Liquidating Trust. Class 4 is deemed to have accepted the Plan and therefore is not entitled to vote.

Class 5.   Priority Tax Claims. These claims are unimpaired. Priority Tax Claims are Claims entitled to priority under section 507(a)(8) of the Bankruptcy Code. Each holder of a Priority Tax Claim shall receive Cash equal to the unpaid portion of its Priority Tax Claim on the date on which its Priority Tax Claim becomes an Allowed Claim and is payable under applicable law or any agreement relating thereto. These claims shall be paid from the Liquidating Trust.

Class 6   Priority Claims as to all Debtors. These claims are unimpaired. Class 6 shall include all Priority Claims not included in Class 1, 2, 3, 4 or 5. Each holder of a Class 6 Claim shall be paid in full in cash on the Effective Date to the extent it is an Allowed Claim or on the date such claim becomes an Allowed Claim. These claims shall be paid from the Liquidating Trust. This Class is deemed to have accepted the Plan and therefore is not entitled to vote.

Class 7   General Unsecured Claims as to all Debtors. These claims are unimpaired. Class 7 shall include all General Unsecured Claims against the Debtors. Each holder of a Class 7 Claim shall receive, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Class 7 Claim, payment in full on the Effective Date to the extent it is an Allowed Claim or on the date such claim becomes an Allowed Claim. Class 7 Claims shall be paid from the Purchase Price at closing or from the Liquidating Trust. Insurance policies covering Class 7

Claims will be transferred to the Liquidating Trust for the benefit of the indemnified or otherwise covered unsecured creditors. Unsecured creditors covered by such policies shall recover first against the policies and then from assets of the Liquidating Trust. To the extent the Liquidating Trust pays Allowed Claims to creditors who would otherwise be covered by such policies, the Liquidating Trust shall be subrogated to the rights of such creditors to such insurance. This Class is deemed to have accepted the Plan and therefore is not entitled to vote.

<u>Class 8</u>   Intercompany Claims. Intercompany Claims are not Impaired. These Claims are deemed to have accepted and therefore not entitled to vote on the Plan. On the Effective Date, all Intercompany Claims shall be assumed by and become the obligations of the respective Reorganized Debtors.

<u>Class 9</u>   Interests in Davis Petroleum. These stock Interests are impaired. Holders of Davis Petroleum Interests shall receive their pro rata distribution of the Purchase Price after all claims in Classes 1-8 are paid in full.

<u>Class 10</u>   Interests in Davis Offshore. These partnership Interests are impaired. Holders of Davis Offshore Interests shall receive their pro rata distribution of the Purchase Price after all claims in Classes 1-8 are paid in full.

<u>Class 11</u>   Interests in Davis Pipeline. These member Interests are impaired. Holders of Davis Pipeline Interests shall receive their pro rata distribution of the Purchase Price after all claims in Classes 1-8 are paid in full.

**C.    Full Satisfaction**

The Debtors shall pay from the Purchase Price at closing or the Liquidating Trustee shall pay, and each holder of a Claim shall receive, the distributions provided for in the foregoing provisions of this Article in full satisfaction and discharge of all Claims against the Debtors and the assets of the estates.

**D.    Alternative Treatment**

Notwithstanding any provision herein to the contrary, any holder of an Allowed Claim may receive, instead of the distribution or treatment to which it is entitled hereunder, any other distribution or treatment to which it and the Liquidating Trustee may agree in writing.

## ARTICLE III

### MEANS FOR IMPLEMENTATION OF THE PLAN

**A.    Continued Corporate Existence**

The Reorganized Debtors shall continue to exist as separate legal entities, in accordance with the applicable law in the respective jurisdictions in which they are chartered, under their respective certificates and by-laws in effect before the Effective Date, except as their certificates

and by-laws are amended by this Plan. On the Effective Date the outstanding equity, membership interests and partnership interests of the Debtors shall be cancelled and the New Interests in each of the Reorganized Debtors shall be issued to Buyer in exchange for the payment of the Purchase Price.

**B.     Certificates of Incorporation, Partnership Agreements, and By-laws**

The certificates of incorporation, partnership agreements, and by-laws of each Reorganized Debtor shall be amended as necessary to satisfy the provisions of the Plan and the Bankruptcy Code, and shall include, among other things, under section 1123(a)(6) of the Bankruptcy Code, a provision prohibiting the issuance of non-voting equity securities.

**C.     Authority**

Until the Effective Date, the Bankruptcy Court shall retain custody and jurisdiction of the Debtors, their assets and operations. On and after the Effective Date, the Reorganized Debtors, their assets and operations shall be released from the custody and jurisdiction of the Bankruptcy Court except for those matters as to which the Bankruptcy Court specifically retains jurisdiction under the Plan or the Confirmation Order; *provided, however*, that the Debtors, the Liquidating Trust and all Cash and other property to be distributed pursuant to the Plan will remain subject to the jurisdiction and custody of the Bankruptcy Court until all distributions have been made and a final decree has been entered closing the Chapter 11 Cases.

**D.     Vesting of Assets**

On the Effective Date, title to all property of the Debtors' Estates shall vest in the respective Reorganized Debtors free and clear of all Liens, causes of action, Claims, encumbrances, and interests against, in, or on such property.

**E.     Continuing Buyer Claims**

On and after the Effective Date, in order to assure payment to Buyer for any and all Buyer Claims, the Liquidating Trustee shall (i) be deemed to have granted valid, binding, perfected, enforceable, first-priority liens and security interests in all property of the Liquidating Trust and (ii) be required, at all times prior to thirty ( 30) days following the expiration of the Indemnity Period established under the Contribution and Sale Agreement, to maintain a reserve fund in the Liquidating trust of not less than $10 million.

**F.     Restructuring Transactions**

The interests in the Reorganized Debtors shall be purchased for the amount of $150 million, subject to adjustment, as provided in the CSA ( the "Purchase Price"). Bank Claims and Sankatay Claims shall, and Allowed Claims may, be paid from the Purchase Price at Closing. That portion of the Purchase Price not used to pay Allowed Claims at Closing will be paid into the Liquidating Trust for the benefit of the creditors of the Debtors and, after all Allowed Claims are paid in full or adequately reserved, for the benefit of Equity Interests. All prepetition claims, including administrative claims (both of the Debtors and the Liquidating Trust), tax and priority

claims, and unsecured claims shall be paid pursuant to the terms of the Plan from the Purchase Price. After payment in full of all Allowed Claims, and at the conclusion of the holdback period for the $10 million holdback required by the Term Sheet and CSA, the Interest Holders of the Debtors shall receive their pro rata share of the remaining proceeds.

The Purchase Price for the new shares to be issued in the Reorganized Debtors will be allocated between Davis Petroleum Corporation (40%), Davis Offshore (59%) and Davis Pipeline (1%).

On the Effective Date, unless otherwise provided by the Confirmation Order, the following shall occur, shall be deemed to have occurred simultaneously, and shall constitute substantial consummation of the Plan: (a) new corporate documents shall be authorized, approved and effective in all respects without further action under applicable law, regulation, order, or rule, including, without express or implied limitation, any action by the stockholders, directors, partners or members of a Debtor or a Reorganized Debtor; except that the new organizational documents of each Debtor shall be filed as may be appropriate with the applicable Secretary of State as soon as practicable on or after the Effective Date; (b) the Debtors' property deemed transferred to the Reorganized Debtors shall automatically vest in the Reorganized Debtors without further action on the part of the Debtor or any other Person; (c) the New Interests shall be authorized and issued to Davis Acquisition in exchange for payment of the Purchase Price as provided for in the Purchase Agreement; (d) the Liquidating Trust shall be formed pursuant to the Liquidating Trust Agreement; (e) the Debtors shall transfer to the Liquidating Trust that portion of the Purchase Price that is not used to pay Allowed Claims out of Closing, insurance policies of the Debtors providing coverage for their officers and directors, insurance policies of the Debtors covering claims that are required to be paid by the Plan, and such Causes of Action that are retained hereunder pursuant to Article III.T of this Plan; and (f) all payments, deliveries, and other distributions to be made pursuant to the Plan on or as soon as practicable after the Effective Date shall be made or duly provided for by the Liquidating Trust.

### G.     Cancellation of Instruments and Agreements

Upon the occurrence of the Effective Date, except as otherwise provided herein or in the Confirmation Order, instruments, indentures, notes, warrants, options, share certificates, or other documents (other than any insurance policy of a Debtor) evidencing, giving rise to, or governing any Claim or Interest shall be deemed canceled and annulled without further act or action under any applicable agreement, law, regulation, order, or rule, and the obligations of each Debtor and Reorganized Debtor under such agreements, instruments, indentures, notes, warrants, options, share certificates, or other documents shall be discharged.

### H.     Liquidating Trust

The Liquidating Trust Agreement, which is incorporated herein for all purposes, shall provide that the trustee of the Liquidating Trust shall be appointed and expressly authorized to, among other things, (i) liquidate claims against the estates, object to claims where required or appropriate and distribute the assets of the Liquidation Trust to holders of Allowed Claims and Allowed Interests as provided for herein; (ii) seek allowance or disallowance of Claims or Interests under Section 502 of the Bankruptcy Code where required or appropriate; (iii) ensure