# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

|  |  |  |
|---|---|---|
| THE NANCY SUE DAVIS TRUST, | § | |
| | § | |
| **Movant,** | § | |
| | § | |
| VS. | § | **CIVIL ACTION NO. 2:09-mc-9** |
| | § | |
| GREGG DAVIS, *et al.*, | § | |
| | § | **ORAL ARGUMENT REQUESTED** |
| **Respondents.** | § | |
| | § | |

**RESPONDENT EVERCORE CAPITAL PARTNERS II'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE ORIGINAL COMPLAINT AND WITHDRAW THE REFERENCE OR, IN THE ALTERNATIVE, IF THE COURT WITHDRAWS THE REFERENCE OVER OBJECTION, EVERCORE'S CROSS-MOTION TO ENJOIN THE NANCY DAVIS TRUST FROM ENGAGING IN LITIGATION IN VIOLATION OF THE RELEASE AND INJUNCTION PROVISIONS OF THE PLAN AND CONFIRMATION ORDER IN**
***IN RE: DAVIS PETROLEUM CORPORATION***

**[RELATED TO DOCKET NO. 1]**

NYI-4156625

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ................................................................................. i

SELECTED EXHIBITS AND RECORD REFERENCES ................................ iii

I. PRELIMINARY STATEMENT ............................................................... 1

II. EVERCORE'S OPPOSITION TO MOVANT'S REQUEST TO WITHDRAW
THE REFERENCE ................................................................................ 3

    A. Procedural Background Relevant To Movant's Request To Withdraw The
Reference ....................................................................................... 3

    B. ARGUMENT:  Movant's Leave Motion Is A Contested Matter Squarely
Within The Bankruptcy Court's Core Jurisdiction And Movant's Request
To Withdraw The Reference Should Be Denied ...................................... 7

        1. The Request To Withdraw The Reference Should Be Denied Since
Movant Circumvented The Local Rules By Filing The Leave
Motion In This Court ............................................................. 8

        2. The Request To Withdraw The Reference Should Be Denied
Because No "Good Grounds" Exist To Strip The Bankruptcy Court
Of Its Retained Jurisdiction To Decide Matters Directly
Implicating The Confirmation Order ......................................... 9

III. EVERCORE'S OPPOSITION TO THE LEAVE MOTION'S REQUEST FOR
LEAVE TO FILE NEW ACTION AND CROSS-MOTION TO ENJOIN
PROCEEDINGS IN VIOLATION OF THE CONFIRMATION ORDER [TO BE
CONSIDERED ONLY IF THE COURT WITHDRAWS THE REFERENCE IN
*IN RE: DAVIS* OVER EVERCORE'S OBJECTION] .................................. 14

    A. Procedural Background Relevant To The Merits Of The Leave Motion
And Evercore's Cross-Motion ............................................................ 14

        1. The Debtors' Retention Of Professionals To Contemplate A
Chapter 11 Filing In The Wake Of The Collapse Of An Out-Of-
Court Deal Complicated By The Raynes  Litigation .............................. 15

        2. The Negotiation Of The Prepackaged Plan, Including Express
Provisions For A Mutual Release, Assignment Of Officer And
Director Claims To The Liquidating Trust, An Injunction Against
Future Proceedings, And Retention Of Jurisdiction In The
Bankruptcy Court ................................................................. 18

            (a) The Plan's Mutual Release Of Claims Among The Buyer
And Seller Parties ...................................................... 20

            (b) The Assignment of Director and Officer Claims to the
Liquidating Trust ....................................................... 22

# TABLE OF CONTENTS
(continued)

Page

(c) The Plan's Injunction Provision Enjoins Claims Against the Buyers ........................................................................... 23

(d) The Plan Provided for the Bankruptcy Court to Retain Jurisdiction Over Matters Relating to Plan and Confirmation Order, Expressly Including The Release, Exculpation and Injunction Provisions ........................................ 24

3. The Confirmation Order ........................................................................ 24

4. The Revocation Action's Procedural History ......................................... 26

5. The Settlement Of The Raynes Litigation And Release Of Officer And Director Claims, Specifically Including Claims Against Gregg Davis ...................................................................................................... 29

B. ARGUMENT:  In The Event The Court Withdraws The Reference Over Evercore's Objection, Movant's Leave Motion Should Be Denied And Evercore's Cross-Motion Should Be Granted To Enforce The Provisions Of The Plan And Confirmation Order ................................................................ 31

1. The Nancy Davis Trust Lacks Standing To Bring Derivative Claims That Belong To The Liquidating Trust......................................... 33

2. The Nancy Davis Trust's Purported Claims Were Released By The Debtor Parties, Including The Nancy Davis Trust, Under The Plan ....... 35

3. The D&O/Raynes Settlement Released All Estate Claims Against Gregg Davis ......................................................................................... 39

4. The Movant's Claims Are Barred By The Collateral Estoppel And Res Judicata Effect Of The Confirmation Order And Revocation Action................................................................................................... 41

C. Evercore's Cross-Motion To Enforce Injunction Should Be Granted................. 45

IV. CONCLUSION........................................................................................... 47

**Selected Exhibits and Record References**

| Exhibit # | Document | Docket No. |
|---|---|---|
| 1. | Chronology of Key Events through the Collapse of the Original Evercore Deal | |
| 2. | Liquidating Trustee's Expedited Motion for Approval of Settlement of Claims Filed by Barbara Davis, Gregg Davis, and Paul Messinger, filed May 23, 2007 | Bankr. Dkt No. 498 |
| 3. | Settlement Agreement, filed May 23, 2007 | Bankr. Dkt No. 498 Ex. 1 |
| 4. | Certificate of Service of the Liquidating Trustee's Expedited Motion for Approval of Settlement of Claims Filed by Barbara Davis, Gregg Davis, and Paul Messinger | Bankr. Dkt No. 500 |
| 5. | Limited Service List, dated May 24, 2007 | Bankr. Dkt No. 500 Ex. 1 |
| 6. | Certificate of Service of Order Setting Expedited Telephonic Hearing on Liquidating Trustee's Expedited Motion for Approval of Settlement of Claims Filed by Barbara Davis, Gregg Davis, and Paul Messinger, filed May 25, 2007 | Bankr. Dkt No. 505 |
| 7. | Order setting Expedited Telephonic Hearing on Liquidating Trustee's Expedited Motion for Approval of Settlement of Claims Filed by Barbara Davis, Gregg Davis, and Paul Messinger, dated May 25, 2007 | Bankr. Dkt No. 505 Ex. 1 |
| 8. | Limited Service List, dated May 5, 2007 | Bankr. Dkt No. 505 Ex. 2 |
| 9. | Order Granting Liquidating Trustee's Expedited Motion for Approval of Settlement of Claims Filed by Barbara Davis, Gregg Davis, and Paul Messinger, dated June 1, 2007 | Bankr. Dkt No. 513 |
| 10. | Proffer of Testimony of Albert S. Conly, Liquidating Trustee, in Support of His Expedited Motion for Approval of Settlement of Claims Filed by Barbara Davis, Gregg Davis, and Paul Messinger, forwarded May 31, 2007 | |
| 11. | Nancy Sue Davis Trust's Motion to Withdraw the Reference of Motion of Red Mountain Capital Partners LLC, RMCP PIV PPC, L.P., and Willem Mesdag for Reimbursement of Expenses in Connection with Third Party Subpoenas Issued by Plaintiff, filed August 28, 2008 | Civil Action 06-02062 – Adv. Dkt No. 225<br>Civil Action 2:09-cv-22 – Dkt No. 1 |
| 12. | Report and Recommendation on Motion to Withdraw the Reference of Motion for Reimbursement of Expenses, dated January 29, 2009 | Civil Action 06-02062 – Adv. Dkt No. 238<br>Civil Action 2:09-cv-22 – Dkt No. 2 |

- iii -

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Respondent Evercore Capital Partners II ("Evercore") files this Opposition To Plaintiff's Motion For Leave To File Original Complaint And Withdraw The Reference Or, In The Alternative, If The Court Withdraws The Reference Over Objection, Evercore's Cross-Motion To Enjoin The Nancy Davis Trust From Engaging In Litigation In Violation Of The Release And Injunction Provisions Of The Plan And Confirmation Order In *In Re: Davis Petroleum Corporation*, and in support thereof, respectfully submits as follows:

## I.   PRELIMINARY STATEMENT

Respondent Evercore, in response to The Nancy Davis Trust's Motion for Leave to File Original Complaint ("Leave Motion"), submits that the threshold matter for this Court's consideration is whether the Leave Motion's request to withdraw the reference, made directly to this Court in contravention of Bankruptcy Local Rule 5011, should be denied and whether this Court should instead refer the Motion for Leave to the Bankruptcy Court on the grounds that the issues at the heart of this proceeding brought by movant the Nancy Sue Davis Trust ("Movant" or "Nancy Davis Trust") concern the scope, interpretation and enforcement of the release, exculpation, and injunction provisions in the Plan and Confirmation Order in *In re: Davis Petroleum Corporation,* Bankr. Case No. 06-20152 ("*In re: Davis*") [Bankr. Dkt 18, R126 ("Plan") & Bankr. Dkt 51, R127 ("Conf. Order")], and as such are matters within the Bankruptcy Court's core jurisdiction and no "good grounds" exist to withdraw the reference as required by 28 U.S.C. § 157(d).

In the event the Court withdraws the reference over Evercore's objection and declines to refer the matter back to the Bankruptcy Court, Evercore submits that the Leave Motion should be denied and Evercore's cross-motion should be granted for several separate and independent

- 1 -

reasons, each of which confirms that permitting Movant to proceed against the Buyers (as defined in the Plan) would violate the injunction provisions of the Plan and Confirmation Order: (i) the new action which the Nancy Davis Trust seeks to bring is barred because the Nancy Davis Trust has no standing to assert claims which belong to the Debtors' estates, and which in any event were released by the Debtors as against the Buyers by express provisions of the Plan and Confirmation Order entered by the Bankruptcy Court in *In re: Davis* [Bankr. Dkt. 18 & 51; R126 (Plan); R127 (Conf. Order)], and as against Gregg Davis, by a settlement and release approved by the Bankruptcy Court by order entered on June 1, 2007 [Bankr. Dkt 513; appended hereto as Ex. 9]; (ii) the claims which the Nancy Davis Trust seeks to bring against Evercore and the other Buyers are expressly barred by the mutual release and injunction provisions of the Plan and Confirmation Order in which part of the consideration was an unconditional release of the Buyers from any claims any Interest Holder[1] may have had in exchange for the funding of the Plan; and (iii) the new action is barred by the finality of the Confirmation Order, which was subject to collateral attack only by the separate revocation action brought by the Nancy Davis Trust under 11 U.S.C. § 1144, *The Nancy Sue Davis Trust v. Davis Petroleum Corp., et al.,* Bankr. Adv. No. 06-02062, *on appeal* Civil Action No. 2:08-cv- 136 (the "Revocation Action"), in which the Bankruptcy Court has already issued a final judgment finding her claims to be both without merit  and barred by the Confirmation Order.

Each of these matters will be addressed in these papers, but the threshold issue of whether this Court should deny Movant's request to withdraw the reference will be addressed first in order to avoid burdening the Court with all of the relevant procedural background which is

---

[1] At the time of the bankruptcy filing, the equity interests in the Debtors were closely held by various trusts set up for the benefit of the family of the late Marvin Davis, with 56% of the equity interest held in a trust for the benefit of his widow, Barbara, and 8.8% held in each of five trusts established for their five children:  Patricia Davis Raynes, John Davis, Dana Davis, Nancy Davis, and Gregg Davis (the "Interest Holders").  *See* R125, Bankr. Dkt 17 ("Discl. Stmt" or "DS")  at 10.

necessary only if this Court, over Evercore's objection, entertains Movant's motion on the merits.[2]

## II.     EVERCORE'S OPPOSITION TO MOVANT'S REQUEST TO WITHDRAW THE REFERENCE

### A.     Procedural Background Relevant To Movant's Request To Withdraw The Reference

The full procedural and factual background relevant to the Leave Motion is extensive and has been fully set forth in the Bankruptcy Court before the Honorable Richard Schmidt, both in various proceedings during the consolidated prepackaged chapter 11 cases of Davis Petroleum Corp., Davis Offshore, L.P., and Davis Petroleum Pipeline, LLC (collectively, "Davis Petroleum" or the "Debtors"),[3] *In re: Davis Petroleum Corporation et al.,* Bankr. Case No. 06-20152, and in the Revocation Action brought by the Nancy Davis Trust.[4] The most relevant pieces of that extensive record will be addressed more fully below as pertinent to the merits of the Leave Motion, in the event the Court decides to withdraw the reference. As relevant here, Movant is seeking through the Leave Motion to have this Court interpret the Plan and Confirmation Order entered in the chapter 11 cases presided over by the Honorable Richard Schmidt in *In re: Davis.* These are matters within the core jurisdiction of the Bankruptcy Court, expressly retained under the Plan and Confirmation Order. Moreover, Movant is seeking to

---

[2] Evercore also joins in the oppositions separately filed on behalf of the Liquidating Trustee, Albert Conly (the "Trustee"), as a party in interest under chapter 11, and respondents Gregg Davis, Willem Mesdag, Red Mountain Capital Partners LLC, and Sankaty. *See* Opposition of Albert S. Conly, Liquidating Trustee, to Plaintiff's Motion for Leave to File Original Complaint ("Trustee Opp.") at 2 [D.Ct. Case 2:09-mc-00009, Dkt 10].

[3] Davis Petroleum emerged from chapter 11 on March 31, 2006, when the sale pursuant to the Plan closed and the Plan became effective (the "Effective Date"). On and after the Effective Date forward, Davis Petroleum became the Reorganized Debtors, under new management and ownership.

[4] Citations to proceedings before the Bankruptcy Court will be provided by reference to the Bankruptcy Docket, Case No. 06-20152 ("Bankr. Dkt ___"), and citations to the Nancy Davis Revocation Action will be provided to the Bankruptcy Court's Adversary Proceeding Docket, Adv. No. 06-02062 ("Adv. Dkt ___") and, where available, to the docket entries or Record on Appeal in the Nancy Davis Revocation Action, Civil Action No. 2:08-cv-136 ("Appeal Dkt ___" or "Appeal R__"). Key documents from the Bankruptcy Court's docket which are not already part of the record on the Appeal docket are annexed hereto as Exs 2-12.

relitigate claims that were previously adjudicated by the Bankruptcy Court in the Revocation

Action, and to usurp claims that were retained by the estate under the Plan and then settled in

May 2007 by the Trustee in a proceeding before the Bankruptcy Court on notice to all Interest

Holders.  Under these circumstances, the Leave Motion is absolutely a "core proceeding" which

must be brought and heard in the Bankruptcy Court.

      ***The Bankruptcy Court's Retention Of Jurisdiction***  Article IX of the Plan set forth the

Bankruptcy Court's retention of "exclusive jurisdiction over all matters arising out of or related

to the chapter 11 cases and the Plan to the fullest extent permitted by law," specifically including

jurisdiction to:

> B.  Hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan and all contracts, instruments, and other agreements executed in connection with the Plan;
>
> C.  Hear and determine any request to modify the Plan or to cure any defect or omission or reconcile any inconsistency in the Plan or any order of the Bankruptcy Court;
>
> D.  Issue and enforce injunctions or other orders, or take any other action that may be necessary or appropriate to restrain any interference with the implementation, consummation, or enforcement of the Plan or the Confirmation Order;
>
>       \*   \*   \*
>
> F.  Hear and determine any matters arising in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order;
>
> G.  Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Cases;
>
>       \*   \*   \*
>
> I.  To construe and enforce the Term Sheet.

R126 (Plan) at 25-26, Article IX. (emphasis added).  As such, the Plan expressly provided for the

Bankruptcy Court to retain exclusive jurisdiction over all core and related matters involving the

Plan or Confirmation Order, explicitly including any interpretation or enforcement of the release,

exculpation, and injunction provisions.  The Confirmation Order expressly incorporated these provisions, ordering that "The Court shall retain exclusive jurisdiction over all matters provided for in Article IX of the Plan or any agreement, order or stipulation entered in connection with these Chapter 11 Cases, and with respect to the enforcement and interpretation of the provisions of the Plan and this Order."  R127 (Conf. Order) ¶ 18.

The Bankruptcy Court has presided over many contested matters and proceedings in *In re: Davis* in the almost three years since the Confirmation Order was entered.  The proceedings presided over by the Bankruptcy Court most pertinent here relate to (i) the Revocation Action and (ii) the settlement of certain officer and director claims, including those of Gregg Davis, in May 2007.

***The Revocation Action***   As the Court is aware, the Revocation Action was commenced in September 2006 by the Nancy Davis Trust asserting a single cause of action for revocation of the Confirmation Order under 11 U.S.C. § 1144.   In the course of that proceeding, the Bankruptcy Court presided over two hearings on dispositive motions, two additional hearings involving discovery-related issues, and became intimately familiar with the claims the Nancy Davis Trust is seeking to assert here.  More specifically, in March 2007, the Bankruptcy Court converted motions for judgment on the pleadings filed by the defendants into summary judgment motions under Rule 56 and directed the parties to submit supplemental papers after conducting discovery focused on the allegations of fraud.  After another hearing to address the scope of discovery, the parties engaged in extensive document discovery, conducted over a dozen depositions, and in late 2007 submitted voluminous briefing, providing the Bankruptcy Court with a full evidentiary record addressing the Nancy Davis Trust's allegations of fraud.  The Bankruptcy Court heard several hours of oral argument in January 2008, and on April 10, 2008,

- 5 -

issued a 57-page decision granting summary judgment after finding that "The record makes clear that this case does not involve any actual fraud, much less fraud in the procurement of the Confirmation Order. . . .  <u>Absent any evidence of fraud, Plaintiff's allegations constitute an attempt by a dissatisfied Interest Holder to reopen a final judgment in hopes of some possible additional recovery or unwarranted settlement.</u>  Such a claim finds no basis in the bankruptcy code or policy."  R120 (Dec.) at 37, 56-57 (the "<u>Summary Judgment Decision</u>") (emphasis added).  The Nancy Davis Trust appealed from the Summary Judgment Decision to this Court. On January 22, 2009, the Court heard oral argument, and allowed the parties to provide post-hearing submissions on January 30, 2009.  This appeal is currently under submission.

***The D&O/Raynes Settlement***   Movant's claims here and in the Revocation Action, premised on assertions that Gregg Davis breached his fiduciary duties as an officer in the course of seeking an equity investor for Davis Petroleum, are strikingly similar to those previously raised by Movant's own sister back in September 2005 (more than six months before the Plan was confirmed) in *Raynes et al., v. Davis, et al.*, Civil Action No. 05-06740-CV (C.D. Cal.)(the "<u>*Raynes* litigation</u>").   Under the Plan, all claims against officers and directors, including the derivative claims asserted in the *Raynes* litigation, were assigned by the Debtors to the Liquidating Trust.  R126 (Plan) at 20, Article III.T; R125 (DS) at 21.

In May 2007, the Trustee entered into a settlement of all officer and director indemnity claims arising, *inter alia*, from the defense of the *Raynes* litigation (the "<u>D&O/Raynes Settlement</u>"), and as part of the settlement, expressly released any and all claims that the estate might have against various officers and directors, including Gregg Davis and Barbara Davis, and expressly including claims based on the kinds of matters set forth in the *Raynes* litigation.  Bankr. Dkt 498 at Ex. 1, D&O/Raynes Settlement at 6 [appended hereto as Ex. 3].  The Bankruptcy

- 6 -

Court presided over a hearing to approve the D&O/Raynes Settlement, on notice to all parties; no party objected, and the D&O/Raynes Settlement became the subject of a final order in May 2007. Bankr. Dkt 498, 500 & Ex.1, 505 & Exs 1-2, 513 [appended hereto as Exs. 2, 4-9]. Pursuant to the D&O/Raynes Settlement, the Trustee in the exercise of his duties to maximize the value of the estate concluded, with the support of the Interest Holders, that it was in the best interests of the estate to enter into the D&O/Raynes Settlement, which forever released all claims that could have been brought against Gregg Davis on behalf of the Trust in exchange for the Gregg Davis' withdrawal of his proof of claim and the settlement of related indemnity claims. Bankr. Dkt 498, Motion at 7-8; Exhibit 1 at 6 [appended hereto as Exs. 2, 3].

**B.    ARGUMENT:  Movant's Leave Motion Is A Contested Matter Squarely Within The Bankruptcy Court's Core Jurisdiction And Movant's Request To Withdraw The Reference Should Be Denied**

The Nancy Davis Trust's Leave Motion asks this Court to interpret the Plan and Confirmation Order in *In re: Davis Petroleum* to determine whether Movant's new proposed Original Complaint (the "<u>Proposed Complaint</u>") is barred by the release, exculpation, and injunction provisions approved and ordered by the Bankruptcy Court in the Confirmation Order. *E.g.,* Leave Motion at 2, 9-10. Almost as an after-thought, Movant requests that this Court withdraw the reference in order to "clarify" the Confirmation Order and permit the Proposed Complaint to proceed in District Court. Movant's request to withdraw the reference, made directly to this Court in contravention of Bankruptcy Local Rule 5011, should be denied on the grounds that the issues at the heart of this proceeding concerning the scope, interpretation and enforcement of the release, exculpation, and injunction provisions in the Plan and Confirmation Order are matters within the Bankruptcy Court's core jurisdiction and no "good grounds" exists to withdraw the reference as required by 28 U.S.C. § 157(d). In fact, the "Retention of Jurisdiction" provisions in the Plan which were incorporated into the Confirmation Order

retained exclusive jurisdiction in the Bankruptcy Court over questions concerning the Plan and Confirmation Order, and specifically the release, exculpation and injunction provisions contained therein.  Accordingly, this Court should deny the Leave Motion's request to withdraw the reference and refer the Leave Motion back to the Bankruptcy Court as a matter within its core and retained jurisdiction.

> **1.     The Request To Withdraw The Reference Should Be Denied Since Movant Circumvented The Local Rules By Filing The Leave Motion In This Court**

As the Movant acknowledges, the District Court has entered a "General Order of Reference" which automatically refers "to the bankruptcy judges of this district" all "cases and proceedings arising under Title 11 or arising in or related to a case under Title 11."  General Order 2005-6 (March 10, 2005).  The Leave Motion, which seeks a judicial determination of whether the Proposed Complaint is violative of the injunction provisions of the Confirmation Order issued by the Bankruptcy Court in *In re: Davis*, is squarely within the matters referred to the Bankruptcy Court and was required to be brought before the Bankruptcy Court in the first instance under the General Order of Reference.

Movant correctly notes that 28 U.S.C. § 157(d) provides district courts with discretionary authority to withdraw the general reference in particular matters, but only "for cause shown."  28 U.S.C. § 157(d) ("The district court may withdraw, in whole or in part, any case or proceeding referred under this section…for cause shown.").  This District by local rule provides that a request for withdrawal of the reference is to be made to the Bankruptcy Court to issue a recommendation to the District Court as to whether the reference should be withdrawn. *See* Bankruptcy Local Rule 5011 ("A motion to withdraw a case…to the district court must be filed with the [bankruptcy court] clerk.  Unless the district court orders otherwise, the matter will first be presented to the bankruptcy judge for recommendation.").  Given the Nancy Davis Trust's

familiarity with this local rule from prior filings,[5] it appears that the Movant intentionally sought to circumvent the Bankruptcy Court, and this Court should refer the Leave Motion back to the Bankruptcy Court on this grounds alone.  As this Court has previously found, the filing of an application directly to the District Court "without first seeking permission from the Bankruptcy Court" in contravention of Bankruptcy Local Rule 5011 is "[i]n essence" an attempt to "unilaterally withdraw the reference without express court approval, which it is not permitted to do."  *Smith v. Schmidt*, C.A. No. 07-126, 2007 WL 1711725, at *2 (S.D. Tex. June 6, 2007) (Jack, J.).

> **2.     The Request To Withdraw The Reference Should Be Denied Because No "Good Grounds" Exist To Strip The Bankruptcy Court Of Its Retained Jurisdiction To Decide Matters Directly Implicating The Confirmation Order**

In the event the Court decides to overlook Movant's failure to first file its request to withdraw the reference in the Bankruptcy Court, this Court should find that withdrawal is not warranted, as it did in *Smith v. Schmidt*, on the grounds that "[t]he Bankruptcy Court is more familiar with the nuances and detailed factual background of this case" and "[i]f [the movant] wishes to pursue the relief sought in its Application, it must do so in the Bankruptcy Court, not before this Court."  *Id.*  The burden to show that "good cause" exists to warrant withdrawal of the reference falls upon the movant, who must demonstrate that the request is not just a veiled attempt at forum shopping or otherwise obstructing the economic and efficient adjudication of a matter.  *Nu Van Technology, Inc. v. Cottrell, Inc. (In re Nu Van Technology, Inc.)*, No. 01-49589-DML-11, 03-4219, 2003 WL 23785355, at *2 (N.D. Tex. Oct. 14, 2003).  As this Court

---

[5] The Nancy Davis Trust is well aware of this rule and the procedure for seeking withdrawal of the reference, having sought to withdraw the reference as to a motion by Red Mountain for reimbursement of costs as a witness in the Revocation Action.  [Adv. Dkt 225; D.Ct. Case 2:09-cv-22, Dkt 1] [appended hereto as Ex. 11].  In that matter, the Bankruptcy Court recently issued its report and recommendation that the Nancy Davis Trust's request for withdrawal of the reference be denied.  *See* Report and Recommendation on Motion to Withdraw the Reference of Motion for Reimbursement of Expenses [Adv. Dkt No. 238; D.Ct. Case 2:09-cv-22, Dkt 2] [appended hereto as Ex. 12].

observed in *Smith v. Schmidt*, the factors considered by a court under 28 U.S.C. § 157(d) to determine whether to permit withdrawal include "(1) whether the subject claims is core or non-core; (2) the most efficient use of judicial resources; (3) the length of any potential delay and the cost to the parties of that delay; (4) whether withdrawal will promote uniformity of bankruptcy administration; (5) whether the party seeking withdrawal of the reference is engaging in forum shopping; and (6) other related factors." *Smith v. Schmidt*, 2007 WL at *2 (*quoting In re: Harris*, 342 B.R. 591, 595 (N.D. Miss. 2004) (*citing Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 999 (5th Cir. 1985))).

As discussed in more detail below, application of each of these factors confirms that withdrawal is not warranted, and the Leave Motion should be decided by the Bankruptcy Court. The issues raised are core proceedings; the Bankruptcy Court is much more familiar with the issues raised and has timely addressed all disputes; uniformity of bankruptcy administration is clearly promoted by having the Bankruptcy Court interpret its own Confirmation Order and adjudicate issues that directly affect estate property and the relative rights of parties under the Plan approved by that Court; and Movant's filing of the action before this Court is an obvious attempt to obtain a more favorable forum than the Bankruptcy Court which issued a Summary Judgment Decision finding that the allegations the Nancy Davis Trust seeks to reassert here had no merit.

The issue at the center of the Leave Motion is whether the Confirmation Order enjoins her from proceeding with the Proposed Complaint.[6] Leave Motion at 2. The Leave Motion is a core matter under 28 U.S.C. § 157(b)(2)(A), (L), and (O), since its determination directly

---

[6] Plaintiff concedes that "[t]he Order provides an exculpation and release of various parties, including all the Defendants to be named in the Original Complaint…and contains an injunction against [] bringing actions based on a claim that is covered by the exculpation and release…." Leave Motion at 3. Additionally, Plaintiff recognizes that "[t]he Order further provides that '[t]he injunction, release, exculpation and indemnification provisions set forth in the Plan are hereby approved in their entirety and given effect as of the Effective Date of the Plan." *Id.*

- 10 -

implicates the administration of the bankruptcy estate in *In re: Davis*, the Plan and Confirmation

Order, and proceedings affecting the liquidation of the estate and the equity security holder

relationship.  *See* 28 U.S.C. § 157(b)(2)(A), (L), and (O).  The interpretation and enforcement of

the Plan and Confirmation Order's release, exculpation and injunction provisions were matters

that were expressly included within the Bankruptcy Court's retention of jurisdiction, and it is

difficult to conceive of a matter that is more within the Bankruptcy Court's core jurisdiction. *See*

*Ins. Co. of N. Am. v. NGC Settlement Trust & Asbestos Claims Mgmt. Corp. (In re National*

*Gypsum Co.)*, 118 F.3d 1056, 1063-64 (5th Cir. 1997) (observing that declaratory judgment

actions to determine whether litigation was barred by plan and confirmation order's release

provisions and collateral estoppel effect were post-confirmation matters within bankruptcy

court's core jurisdiction under 28 USC § 157).

Moreover, as is discussed more fully below at Sections III.B.1-3, the Nancy Davis

Trust's action is a usurpation of estate claims which the Nancy Davis Trust has no standing to

bring, and which were released by the Trustee (i) as against the Buyers in the mutual release that

is part of the Plan, and (ii) as against Gregg Davis in the D&O/Raynes Settlement.[7]  In addition,

the Leave Motion's filing has caused new claims to be asserted against the Trust for

indemnification, and the Trustee recognizes that any continuing litigation by the Nancy Davis

Trust relating to Davis Petroleum will delay the final resolution of claims and distributions from

the Trust.  As such, the Leave Motion unquestionably directly affects property of the estate and

the ongoing administration and liquidation of the Trust.  The Bankruptcy Court that presided

over the prepackaged chapter 11 Plan, the Confirmation proceedings, the Revocation Action, and

the D&O/Raynes Settlement, and which is currently presiding over an Adversary Proceeding

---

[7] The Buyers have each filed claims for indemnification under the Purchase and Sale Agreement the ("PSA")
against the Liquidating Trust in order to preserve the right to indemnification.

brought to determine the final purchase price adjustments, *Albert Conly, Trustee v. Davis Petroleum Acquisition Corp., et al.,* Adv. Dkt. 08-0242 (the "PPA Action") and the resolution of claims asserted against the Trust in *In re: Davis*, is unquestionably the court best suited to understanding the complexities of the issues raised by the Leave Motion. *Palmer & Palmer, P.C. v. United States Trustee (In re Hargis)*, 146 B.R. 173, 176 (N.D. Tex. 1992) (ruling that "withdrawal of reference at this point would further delay final resolution of this case. [The bankruptcy judge] has reviewed the entire record of this case and is intimately familiar with the underlying facts, the parties, and the remaining issue. The bankruptcy court clearly has the resident expertise to resolve this issue in an efficient and timely manner.").

Movant's argument in support of withdrawal depends on two flawed premises: (i)  that adjudicating the Leave Motion would be more efficient in this Court given the overlap of the issues raised in Movant's Proposed Complaint and the fraud allegations which formed the basis for the Revocation Action currently on appeal; and (ii) that the jury demand in the Proposed Complaint provides a hook for withdrawal of the reference.  Leave Motion at 10.  Movant ignores that the issue presented on the Leave Motion is whether to grant leave to file the Proposed Complaint, and so the issues for determination Leave Motion concern the Plan and Confirmation Order's release, exculpation and injunction provisions, not the "overlapping" facts of her old Revocation Action and her proposed new action.  Moreover, this Court indicated at oral argument that the appeal of the Revocation Action was to be decided on the mootness issue, in which case the Court would not reach the merits of the Nancy Davis Trust's appeal of the Summary Judgment Decision.  In any event, Movant certainly cannot be arguing that this Court has the same familiarity with the record and parties as the Bankruptcy Court, with its three-year history of presiding over many hearings and contested matters among these parties.  As the

- 12 -

Bankruptcy Court recently found in issuing a report and recommendation that the reference not be withdrawn in another contested matter involving the Nancy Davis Trust, "[t]he case at bar invokes this court's core jurisdiction," and the "court is intimately aware of the facts surrounding the Debtor's bankruptcy case, the underlying adversary proceeding, and the discovery dispute between the parties."   [Adv. Dkt No. 238 at 3] [appended hereto as Ex. 12]. As such, the Bankruptcy Court concluded that "the interests of uniformity, economy and efficiency would be best served if the bankruptcy court adjudicates the [motion]." *Id.*  As in that case, the Court here would have to familiarize itself with facts that were not relevant to the Nancy Davis Trust's appeal in the Revocation Action, which would require "additional time [that] is a waste of judicial resources and [would] cause unnecessary delay." *Id.*

Movant's argument that her demand for a jury trial of the purported claims in the Proposed Complaint provides grounds for withdrawal of the reference is equally misguided.  The issue of a jury demand will only be reached *if* the Leave Motion were granted and provides no grounds for requesting withdrawal of the reference to decide the Leave Motion in the first instance.   Moreover, Movant's suggestion that a "jury demand supports withdrawal of the reference because of the constitutional limitations on a bankruptcy court's authority to conduct a jury trial" [Leave Motion at 10] does not provide a basis for withdrawal of the reference as to pre-trial proceedings.  As the court found in *Levine v. M&A Custom Home Builder & Dev., LLC*, Civil Action No. H-08-2946, 2008 WL 5082400 (S.D. Tex. Nov. 25, 2008), "<u>a party can not use the jury right as a tool for forum shopping</u>." *Id.* at *4.  In addition, "[t]he right to a jury trial does not preclude a bankruptcy court from resolving pre-trial dispositive motions" and that "[a] right to a jury trial does not arise until jury issues are presented." *Id.* at *5.  Applying these basic rules, the court recommended "maintaining the reference with respect to pending and future pre-trial

- 13 -

dispositive motions so that this Court may narrow the issues to be resolved at trial.  The Court is familiar with the facts of this case and has already ruled on a Motion to Dismiss." *Id.* at *5.[8]

Under these circumstances, Evercore respectfully submits that this Court should deny Movant's request to withdraw the reference, and refer this matter to the Bankruptcy Court to hear the Leave Motion's request for a determination of whether Movant's request to proceed with further litigation is barred by the provisions of the Plan and Confirmation Order.

**III.    EVERCORE'S OPPOSITION TO THE LEAVE MOTION'S REQUEST FOR LEAVE TO FILE NEW ACTION AND CROSS-MOTION TO ENJOIN PROCEEDINGS IN VIOLATION OF THE CONFIRMATION ORDER [TO BE CONSIDERED ONLY IF THE COURT WITHDRAWS THE REFERENCE IN *IN RE: DAVIS* OVER EVERCORE'S OBJECTION]**

**A.    Procedural Background Relevant To The Merits Of The Leave Motion And Evercore's Cross-Motion**

As discussed above, Evercore respectfully submits that this Court should not entertain Movant's Leave Motion on the merits since it is a proceeding that properly should have been filed and heard in the Bankruptcy Court.  To the extent that the Court decides to entertain the Leave Motion on the merits, over Evercore's objection, Evercore submits that the extensive record of proceedings before the Bankruptcy Court demonstrates that Movant's Leave Motion should be denied on the grounds that (i) Movant lacks standing to bring these claims; (ii) the claims are barred by the release and injunction provisions of the Plan and the D&O/Raynes Settlement; and (iii) the Proposed Complaint is barred by the *res judicata* effect of the Confirmation Order and Revocation Action.

---

[8] *See also Kenai Corp. v. National Union Fire Insurance Company (In re Kenai Corp.)*, 136 B.R. 59, 61 (S.D.N.Y. 1992) (holding that "[a] rule that would require a district court to withdraw a reference simply because a party is entitled to a jury trial, regardless of how far along toward trial a case may be, runs counter to the policy favoring judicial economy that underlies the statutory scheme governing the relationship between the district courts and bankruptcy courts" and "'the appropriateness of removal of the case to a district court for trial by jury…will become a question ripe for determination if and when the case becomes trial ready.'").  The other case cited by Plaintiff stands only for the proposition that when both parties do not consent to a jury trial in the bankruptcy court and the parties are prepared to begin the trial on the merits, then it is necessary for the reference to be withdrawn.  *In re Clay*, 35 F.3d 190 (5th Cir. 1994).

1.    **The Debtors' Retention Of Professionals To Contemplate A Chapter 11 Filing In The Wake Of The Collapse Of An Out-Of-Court Deal Complicated By The *Raynes* Litigation**

The chronology appended to this Opposition[9] of the key events leading up to the Debtors'

retention of professionals to prepare for a chapter 11 filing (the "Chronology") is drawn from

documents received by the Nancy Davis Trust's counsel in the relevant time period, Michael

Diamond of Milbank Tweed,[10] and in certain cases by her sister, Patricia Davis Raynes, as well

as the testimony of Mr. Diamond and of the Independent Director of Davis Petroleum from May

2005 until February 2006, Daniel Armel (the "Independent Director"). The Court is respectfully

referred to the Chronology for a more detailed and documented history of certain of the key

events in the year leading up to Davis Petroleum's chapter 11 filing.[11]

As pertinent here, the Interest Holders in May 2005 put in place an Independent Director

to address potential conflicts of interest posed by Gregg Davis' expressed desire to remain with

Davis Petroleum in any transaction to monetize the other Davis family members' interests and

obtain needed capital for Davis Petroleum in the wake of the death of the family's patriarch,

Marvin Davis, in September 2004. Chron. ¶¶ 1-2. From the time of his appointment in May

2005, the Independent Director took charge and was exclusively empowered to lead a search for

new capital investors or any other transaction to finance or sell Davis Petroleum. *Id.* ¶¶ 5-6.

---

[9] Except as specifically noted, all citations are to documentary evidence which was either included in the record at Confirmation or was attested to being among the documents or information in the possession of counsel for the Nancy Davis Trust, Michael Diamond of Milbank, prior to the bankruptcy filing.

[10] All information conveyed to the Nancy Davis Trust's counsel is imputed to Movant, and the Nancy Davis Trust is bound by her attorney's conduct. *Link v. Wabash R.R. Co.*, 370 U.S. 626, 634 (1962) (citing the rule that "each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney") (internal quotation and citation omitted); *Woodson v. Surgitek, Inc.*, 57 F.3d 1406, 1418 n.27 (5th Cir. 1995) (a party is bound by the acts of his attorney); *Pryor v. U.S. Postal Serv.*, 769 F.2d 281, 288 (5th Cir. 1985) (mistakes of counsel are chargeable to the client)

[11] While Evercore has no intention of relitigating here the issues decided by the Honorable Judge Schmidt in the summary judgment proceedings conducted in the Revocation Action, the admissions of the Nancy Davis Trust's former counsel in those proceedings remain binding on her in any proceedings (*id.*), and are relevant here to provide the procedural backdrop to the issues raised by the Leave Motion.

After engaging in the process described in great detail before the Bankruptcy Court and in limited detail in the Chronology, the Independent Director with the full support of all of the Davis family counsel, including counsel for the Nancy Davis Trust, entered into an exclusivity agreement in late October 2005 for Evercore and its co-investors (identified as Red Mountain and Sankaty) to acquire up to 100% of the equity of Davis Petroleum (except for Gregg Davis' share) for a purchase price based on a Total Enterprise Value of $147.9 million (the "Original Evercore Deal").  *Id.* ¶ 17.

As a review of the Chronology confirms, the necessity for Davis Petroleum to engage professionals to consider an imminent bankruptcy filing in February 2006 was precipitated by the failure of Davis Petroleum and its Interest Holders to consummate the Original Evercore Deal.  *Id.* ¶¶ 21-23.  The uncontroverted record leaves no question that Original Evercore Deal collapsed in the middle of the night on February 6, 2006 when one Davis family member, Patricia Davis Raynes, refused to sign a release at the scheduled closing of the Original Evercore Deal out of concerns about her pending litigation against various family members in *Raynes et al., v. Davis, et al.*, Civil Action No. 05-06740-CV (C.D. Cal.) (including, *inter alia*, claims against Gregg Davis and the Nancy Davis Trust).  *Id.* ¶ 23; R53, Ex. 12 at D-26 (Raynes Compl.). Among other claims, Raynes had asserted claims for breach of fiduciary duty against the directors of DPC as well as certain of its officers, including Gregg Davis.  *See* R128 (Conf. Tr.) at 21-22; R53, Ex. 12 at D-19 (E-mail from Raynes' counsel to Armel), D-26 (Raynes Compl.).[12] Each of the officers and directors of Davis Petroleum (as well as certain other Davis-related entities) asserted indemnity rights against Davis Petroleum for reimbursement of costs and

---

[12] Raynes alleged, *inter alia*, that Gregg Davis' actions related to the search for an equity investor were meant to "permit him to retain his management position, inflated salary and other perquisites, and equity stake" and that he "placed his personal interests ahead of the interests of the company and the other shareholders." R53, Ex. 12 at D-19 (E-mail from Raynes' counsel to Armel); D-26 (Raynes Compl.)..

- 16 -

expenses associated with defending the *Raynes* litigation and, ultimately, for any liability that Raynes might establish.   Chron. ¶ 16.   Releases which would protect Evercore and its co-investors against any liability from Raynes, the other Davis family trusts, and officer and director reimbursement claims were a condition to the Original Evercore Deal to ensure that once the sale closed, the new company and its investors would be operating on a clean slate.   *Id.* ¶ 20.   When at the 11th hour, Ms. Raynes' counsel threw a wrench into the final preparations for closing the Original Evercore Deal by objecting to the releases, Barbara Davis's counsel wrote Ms. Raynes' counsel, copying all Davis family counsel, to state that "we are startled and disturbed" by her conduct since "every draft of the operative sale documents has required both a release of claims and an indemnity against your client's suit. . . . . The banks have now issued default notices, and your 'deal-killer' may have placed the Company in an untenable position."   *Id.* ¶ 22; R53, Ex. 12 at D-62; *see also id.* at D-65.   This long and protracted process, which failed at closing despite the parties' agreement on all terms except Ms. Raynes willingness to provide releases to the buyers, was what Debtors' counsel was referring to when he explained to the Bankruptcy Court at Confirmation that the prepackaged plan was a "reformulation" of an out-of-court deal that had been extensively negotiated among the parties, all represented by counsel.[13]   R125 (DS) at 12; R128 (Conf. Tr.) at 23-24.

2.      **The Negotiation Of The Prepackaged Plan, Including Express Provisions For A Mutual Release, Assignment Of Officer And Director Claims To The Liquidating Trust, An Injunction Against Future Proceedings, And Retention Of Jurisdiction In The Bankruptcy Court**

The record at Confirmation confirmed that Davis Petroleum's professionals, with the full support of Davis family counsel, requested that Evercore submit a new proposal for a transaction

---

[13] It should be noted that counsel for the Nancy Davis Trust was in attendance at the Confirmation Hearing and did not dispute any of Rhett Campbell's statements at Confirmation concerning the events leading up to the filing, the negotiation of the Plan, or any aspect of the record presented at Confirmation.   R128 (Conf. Tr.) at 35.

- 17 -

in the context of a prepackaged bankruptcy plan while simultaneously exploring other possible alternatives. R128 (Conf. Tr.) at 27. Davis Petroleum's professionals met with an investment banker specializing in oil and gas properties, Petrie Parkman & Co. ("Petrie Parkman"), and continued to analyze the options facing the Davis Petroleum. *Id.* at 27. On February 21, 2006, Petrie Parkman advised that they were not interested in marketing the properties. *Id.* at 28. On February 27, 2006, Evercore, through Davis Petroleum Investment LLC ("DPI") (an investment vehicle formed for Evercore, certain pension plans and other outside investors), along with the same co-investors as in the Original Evercore Transaction, Red Mountain and Sankaty, provided a new proposed term sheet to Davis Petroleum. *Id.* at 28-29.[14]

Between February 27, 2006 and March 2, 2006, Thompson & Knight, FTI and the board of Davis Petroleum considered the various alternatives available to the Davis Petroleum and the Interest Holders. *Id.* at 29-30. With the advice of FTI and Thompson & Knight, the board of directors on or about March 1, 2006 concluded that "the [Evercore deal] was the only prudent thing to do" and negotiated and agreed upon the terms of the new offer proposed by Evercore to acquire Davis Petroleum as part of a prepackaged bankruptcy plan. R128 (Conf. Tr.) at 30-31. The Term Sheet identified Evercore (through its majority-owned investment vehicle, DPI), Red Mountain and Sankaty, as the buyers, and was annexed to the Disclosure Statement as Exhibit B and incorporated by reference into the Plan. R125 (DS) at Ex. B ( "Term Sheet") at 5. The Term Sheet set forth a number of provisions that were to be included in the Plan, including: "h. an affirmative injunction against any person from pursuing in any way a claim or cause of action

---

[14] Notably, from the time Mr. Conly became involved in the engagement in mid-February 2006, he had determined that Davis Petroleum was insolvent both on a balance sheet basis and in terms of its inability to pay its debts as they fell due. R53, Ex. 9 at Conly 6, 7, 20, 23; R53, Ex. 3 (Conly Tr.) at 42:10-20. Mr. Conly also confirmed that Davis Petroleum was past due on obligations to their drilling partners and at risk of being placed in nonconsent status. R53, Ex. 3 (Conly Tr.) at 76:19-77:4, 161:18-162:25.

that arose prior the effective date of the Plan against New Davis, the Buyers, their affiliates and representatives." *Id.*, Term Sheet at 2 ¶ h.

On March 2, 2006, a solicitation package containing, *inter alia*, the Plan, Disclosure Statement with exhibits, including the Term Sheet, and voting ballot was sent to the Interest Holders.[15] R128 (Conf. Tr.) at 31.  From Friday, March 3, 2006 until Monday, March 6, 2006, Thompson & Knight and FTI conducted lengthy conference calls with the members of the Davis family and their counsel to discuss the proposed prepackaged bankruptcy plan and the alternatives facing the Davis Petroleum.  *Id.* at 32-33.  After considering all the options outlined at length by Rhett Campbell in the Confirmation Hearing transcript, each of the Interest Holders, with the exception of the Nancy Davis Trust, voted in favor of the Plan.  *Id.* at 29-31, 33.

On March 7, 2006, the Debtors filed voluntary petitions to commence the chapter 11 cases, along with the Disclosure Statement and the Plan.  Bankr. Dkt 1, 17, 18; R126 (Plan); R127 (Conf. Order).  Although the Nancy Davis Trust attempts to downplay the importance of express provisions included in the Plan and Confirmation Order, all Interest Holders were represented by sophisticated counsel who had been involved in the negotiations leading up to the failed Original Evercore Deal and the Plan contained a specific provision confirming that all Interest Holders, through counsel, had the opportunity to review and comment on the Plan "and any agreement or document generated in connection herewith":

> This Plan is the product of extensive discussions and negotiations between and among,  *inter alia*, the Debtors, the Interest Holders, the Bank, and the Buyer Parties.  Each of the foregoing was represented by counsel who either participated in the formulation and documentation of, or was afforded the opportunity to review and provide comments on, the Plan, the Disclosure Statement, and the documents ancillary thereto.   Accordingly,  the  general  rule  of  contract

---

[15] A copy of the solicitation package was admitted into evidence at the confirmation hearing on March 9, 2006 as <u>Exhibit</u> "1" to the Witness and Exhibit List of Davis Petroleum Corporation, Davis Offshore, L.P., and Davis Petroleum Pipeline, LLC.

construction known as "contra proferentum" shall not apply to the interpretation of any provision of this Plan, the Disclosure Statement, and any agreement or document generated in connection herewith.

R126 (Plan) at 11, Article I.C.(iv) (the "No Adverse Construction Clause").[16] Article X of the Plan provided that upon Confirmation, "The Plan shall be binding upon and inure to the benefit of the Debtors, all present and former holders of Claims and Interests, and their respective successors and assigns, and all other parties-in-interest in these Chapter 11 Cases." R126 (Plan) at 26, Article X.A. In addition, among the "Conditions Precedent to the Plan's Confirmation and Effective Date" was the express condition that the "Bankruptcy Court shall have entered the Confirmation Order, in form and substance reasonably satisfactory to the Debtors and Buyer." R126 (Plan) at 24, Article VII. B.(i) (emphasis).

> (a)     **The Plan's Mutual Release Of Claims Among The Buyer And Seller Parties**

Among the key provisions of the Plan and Confirmation Order were broad release and injunction provisions to protect the Buyers and the Reorganized Debtors from any exposure to litigation with the Debtors or Interest Holders, especially given the history of the *Raynes* litigation and the collapse of the Original Evercore Deal over Ms. Raynes' refusal to provide the buyers with a release at closing. Movant's misplaced focus in her Leave Motion is on an apparent inconsistency in the **exculpation** provisions contained in the Plan and Confirmation Order, which were also important but served a very different purpose. Typical of such provisions in bankruptcy proceedings, the exculpation provisions here protected all parties and professionals involved in the Plan's negotiation and administration from virtually all claims

---

[16] Movant's former counsel testified that during the negotiations that culminated in the Plan, he "rel[ied] on others to be the negotiators to get the best deal they could get, and [he didn't] recall playing any part in negotiating the terms of the deal," choosing to rely on Rhett Campbell and counsel for John and Barbara Davis. R53, Ex. 6 (Diamond Tr.) at 296:10-97:1.

relating to covered parties' roles in the bankruptcy process, before and after the Plan's consummation.[17]

In addition to the standard exculpation language, the Plan contained an explicit release among the buyers and sellers, with "Buyer Party"[18] defined broadly to include all Defendants named herein, except Gregg Davis, and "Debtor Party"[19] expressly defined to include all Interest Holders, including Movant:

S.   Mutual Releases

Upon the Effective Date, except for Causes of Action arising under the Purchase Agreement or the Plan, (i) each of the Buyer Parties shall be deemed to forever waive, release and discharge any and all Causes of Action against a Debtor Party that is based, whether in whole or in part, up on any act, omission, event, condition, or thing in existence or that occurred, whether in whole or in part, prior to the Effective Date of the Plan and (ii) in exchange for the preceding release of the Buyer Parties and for the funding of this Plan by Davis Acquisition, each

---

[17] Such exculpation provisions are typical in any Plan, which cover past and future conduct, are designed to ensure that all the parties who undertake responsibilities to execute the Plan (such as the Trustee and his professionals administering the Liquidating Trust) are not distracted by claims of negligence or other malfeasance in administering the estate. Plaintiff's questioning of whether the carve-out for intentional conduct from the exculpation provision in the Plan was intentionally or inadvertently omitted from the exculpation Confirmation Order – while untimely since the Confirmation Order is final and controls as discussed below – is essentially irrelevant to the issue at hand, since it is the mutual release provision and injunction provision that bar Plaintiff from engaging in any litigation against the Buyers, separate and independent from whether she would also be barred by the Confirmation Order's exculpation provision.

[18] Article I.B. § 1.12 of the Plan provided that: "'Buyer Party' means Buyer, each of its direct and indirect subsidiaries and affiliates, and each of their respective present and former shareholders, members, partners, directors, managers, officers, employees, agents, attorneys, advisors, and accountants." R126 (Plan) at 6. "Buyer" was defined in Article I.B.§ 1.10 to mean "collectively, Davis Petroleum Acquisition Corp. and one or more subsidiaries of Davis Petroleum Acquisition Corp. that will purchase the New Interests of the Reorganized Debtors pursuant to this Plan." Id. The Term Sheet, which was itself incorporated by reference into the Plan and annexed as Exhibit B to the Disclosure Statement (id. at 5) expressly identified the buyer signatories to the Term Sheet as follows: (i) Davis Petroleum Investment LLC ("DPI"), by Evercore Capital Partners II, LP, its managing member (with a signature line for William O. Hiltz, Authorized Signatory); (ii) RMCP PIV DPC, L.P., by RMCP DPC LLC, its general partner, by Red Mountain Capital Partners LLC, its managing member, by Red Mountain Capital Management, Inc., its managing member (with a signature line for Willem Mesdag, President) (hereinafter "Red Mountain"); and (iii) Sankaty Davis, LLC, by Stuart Davies, Vice President (signed by Stuart Davies). See R11, Ex. 3 (Term Sheet) at 5. As such, each named defendant except Gregg Davis is a "Buyer Party" within the meaning of the Mutual Release.

[19] The Plan defined "Debtor Party" to mean "each of the Debtors, each of their direct and indirect subsidiaries and affiliates, the Liquidating Trustee, the Liquidating Trust, and **each of their respective present and former shareholders**, members, partners, directors, managers, officers, employees, agents, attorneys, advisors, and accountants." R126 (Plan) at 7, Article I.B. § 1.25 (emphasis added).

> Debtor Party shall be deemed to forever waive, release, and discharge any and all Causes of Action against a Buyer Party that is based, whether in whole or in part, up on any act, omission, event, condition, or thing in existence or that occurred, whether in whole or in part, prior to the Effective Date of the Plan.

R126 (Plan) at 18, Article III. S (the "Mutual Release") (emphasis added).

As such, as part of the express consideration for the Buyers' funding of the Plan, the Debtors and each Interest Holder, including the Nancy Davis Trust, expressly waived, released and discharged any Buyer Party from any and all Causes of Action based in whole or in part on any conduct occurring prior to the Plan's Effective Date, with "Causes of Action" broadly defined under the Plan as "all rights, claims, causes of action, defenses, debts, demands, damages, obligations and liabilities of any kind or nature under contract, at law or in equity, known or unknown, contingent or matured, liquidated or unliquidated, and all rights and remedies with respect thereto." R126 (Plan) at 7, Article I.B. § 1.14 (emphasis added).

**(b)    The Assignment of Director and Officer Claims to the Liquidating Trust**

The Plan and Disclosure Statement also made express reference to the fact that all claims belonging to the Debtors, except those released or settled under the Plan (including, *inter alia*, claims against the Buyers, as noted above), were retained by the Liquidating Trust. R126 (Plan) at 20, Article III.T. In the section on "Means for Implementation of the Plan", the Disclosure Statement made explicit that, among the causes of action belonging to the estate, the Debtors were expressly assigning any causes of action that could be asserted against officers and directors, including without limitation any claims based on claimed breaches of fiduciary duty by Gregg Davis and any related claims as set forth in the *Raynes* litigation:

**8. Assignment of Litigation Claims**

The Debtors will assign any causes of action or claims whether asserted or unasserted, to the Liquidating Trustee, including but not limited to, claims and causes of action against officers and directors including, but not limited to, the

NYI-4156625

causes of action asserted, or that could be asserted as arising from the same transactions or occurrences, against any Defendant named in the civil action styled and numbered: *Patricia Davis Raynes et al. v. Marvin Davis, et al.*, Civil Action No. 05-06740-ABC-CT, pending in the United States District Court for the Central District of California, as set forth in the Plan to the Liquidating Trustee, and including but not limited to any causes of action arising under Chapter 5 of the Bankruptcy Code.

R125 (DS) at 22, Article IV.C.8.

### (c)   The Plan's Injunction Provision Enjoins Claims Against the Buyers

In the section on the "Effects of Confirmation," the Plan provided for a permanent injunction explicitly barring the holder of any claim or interest, including Movant, from initiating any proceedings against various parties, including the Buyers, on account of their claim or interest, with a carve-out only for exercising rights pursuant to the Plan:

> Except as otherwise provided in the Plan, <u>from and after the Confirmation Date, all Persons who have held, hold, or may hold Claims against or Interests in the Debtors are permanently enjoined from taking any of the following actions against</u> the Debtors, the Reorganized Debtors, <u>Buyers, the Estate(s), the Liquidating Trustee, or any of their property on account of any such Claims or Interests</u>: (i) <u>commencing or continuing, in any manner or in any place, any action or other proceedings</u>; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtors; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; provided, however, that nothing contained herein shall precluded such persons from exercising their rights pursuant to and consistent with the terms of this Plan.

R126 (Plan) at 27, Article X.C. (emphasis added) (the "Plan Injunction"). Under the Plan, the Interest Holders' equity interests were cancelled automatically on the Effective Date (R126 (Plan) at 15, Article III.G.), and the Interest Holders' right under the Plan was to "receive their pro rata distribution of the Purchase Price after all claims in Classes 1-8 are paid in full." R126 (Plan) at 13, Article II.B.   Given the broad Mutual Release provided under the Plan, the injunction

- 23 -

provision of the Plan enjoined any action by the Interest Holders, including Movant, against the Buyers.

### (d)     The Plan Provided for the Bankruptcy Court to Retain Jurisdiction Over Matters Relating to Plan and Confirmation Order, Expressly Including The Release, Exculpation and Injunction Provisions

As discussed above at Section II, the Plan and Confirmation Order provided for the Bankruptcy Court to retain "exclusive jurisdiction over all matters arising out of or related to the Chapter 11 Cases and the Plan to the fullest extent permitted by law."  Plan at 25-26, Article IX. As such, the Plan expressly provided for the Bankruptcy Court to retain exclusive jurisdiction over all core and related matters involving the Plan or Confirmation Order, explicitly including any interpretation or enforcement of the release, exculpation, and injunction provisions.

### 3.     The Confirmation Order

At the Confirmation Hearing on March 9, 2006, the Court conducted a full evidentiary hearing, including examination of proffered witnesses.  Bankr. Dkt No. 38; *see also* R128 (Conf. Tr.) at 62 *et seq*.  Movant and the other Interest Holders were represented by counsel who participated in the Confirmation Hearing.  *See* R128 (Conf. Tr.) at 2-3.  None of the Interest Holders, including Movant, filed any objection to the Plan or Disclosure Statement, or objected to the Plan's confirmation at the Confirmation Hearing.  *Id.* at 81-82.

The Court approved the Plan and Disclosure Statement and entered the Confirmation Order on March 10, 2006.  *See* R127 (Conf. Order).  The Confirmation Order contained findings of fact and conclusions of law, none of which were appealed by any Interest Holder, including Movant.  The Confirmation Order contained a number of findings, and expressly confirmed that the discharge, release, exculpatory and injunctive provisions of the Plan were "fair, equitable, reasonable, and in the best interests of the Debtors, the Reorganized Debtors, and their estates, creditors, and equity holders."  *Id.* at 6.

- 24 -

After setting forth its findings, the Confirmation Order ordered, *inter alia*, that the Plan, with explicit reference to its injunction and Mutual Release provisions, was binding and given full effect as of the Effective Date of the Plan:

> 8.    . . .the Plan and its provisions shall be binding upon . . . any holder of a Claim against or Interest in the Debtors, . . . whether or not the Claim or Interest of such holder is impaired under the Plan and whether or not such holder or entity has accepted the plan.   All settlements, compromises, releases, discharges, exculpations and injunctions set forth in the Plan, including but not limited to the Mutual Releases, shall be, and hereby are, effective and binding on all Persons who may have had standing to assert such settled, released, discharged, exculpated, or enjoined Causes of Action and no other Person or entity shall possess such standing to assert such Causes of Action after the Effective Date.

> 9.    The injunction, release, exculpation and indemnification provisions set forth in the Plan are hereby approved in their entirety and given full effect as of the Effective Date of the Plan.   On the Effective Date, except for Causes of Action arising under the Purchase and Sale Agreement or the Plan, and in consideration of the Purchase Price and the transactions set forth in the Purchase and Sale Agreement, (i) each of the Buyer Parties shall be deemed to forever waive, release and discharge any and all Causes of Action against a Debtor Party that is based, whether in whole or in part, prior to the Effective Date of the Plan and (ii) each Debtor Party shall be deemed to forever waive, release, and discharge any and all Causes of Action against all Buyer Parties that is based, whether in whole or in part, upon any act, omission, event, condition, or thing in existence or that occurred, whether in whole or in part, prior to the Effective Date of the Plan.

R127 (Conf. Order) at 14-15, Order ¶¶ 8-9.[20]   The Confirmation Order likewise contained a separate permanent injunction provision which prohibited the commencement of any proceeding against the "Buyer Parties" that was "discharged, released or cancelled pursuant to the terms of the Plan and this Order." *Id.* at 16-17, Order ¶ 13.[21]

---

[20] The Confirmation Order also contained express provisions releasing the Reorganized Debtors and the Buyer Parties from any successor liability.  R127 (Conf. Order) at 15-16, Order ¶ 12.

[21] The Confirmation Order likewise expressly provided that "On the Effective Date, the outstanding equity, membership, and/or partnership interests of each Debtor shall be cancelled . . . in exchange for the Purchase Price." *Id.* at 13, Conf. Order ¶ 7.

- 25 -

Also as anticipated in the Plan, the Confirmation Order ordered that "The Court shall retain exclusive jurisdiction over all matters provided for in Article IX of the Plan or any agreement, order or stipulation entered in connection with these Chapter 11 Cases, and with respect to the enforcement and interpretation of the provisions of the Plan and this Order." *Id.* at 20, Order ¶ 18.

### 4.    The Revocation Action's Procedural History

On September 6, 2006, 179 days after the Plan was confirmed and one day before the action would have become time-barred under 11 U.S.C. § 1144, the Nancy Davis Trust commenced the Revocation Action alleging that the Confirmation Order was procured by fraud. Adv. Dkt. 1.[22]  The Revocation Action, which contained only one count seeking revocation of the Confirmation Order under § 1144, named as defendants the Trustee, the Debtors, and the Davis Acquisition Entities (the single purpose investment vehicles formed by the Buyers to acquire the Debtors) (the "§ 1144 Defendants").  Although the Revocation Action was predicated on the same transactions and occurrences as form the basis for the Proposed Complaint attached to the Leave Motion, the Nancy Davis Trust did not assert the purported new claims as additional counts in the Revocation Action.

---

[22] Although the Nancy Davis Trust has argued that she only became aware of the alleged conflicts of interest involving Gregg Davis and Willem Mesdag after the filing of a proof of claim in April 2006 by Red Mountain which attached the Red Mountain Advisory Agreement, the Bankruptcy Court found that these relationships had been fully disclosed and the uncontroverted record demonstrates that the Independent Director was put in place to address the purported conflicts and was fully aware of the Advisory Agreement.  *See* Chronology at ¶¶ 5, 14.  In fact, the Bankruptcy Court concluded that "As discussed above, Gregg Davis informed his family of Willem Mesdag's desire to invest alongside any proposed equity investor when the search for capital began in January 2005. Mesdag's participation as a proposed co-investor (through Red Mountain) was disclosed in every version of the Evercore Proposal.  Willem Mesdag signed for Red Mountain as one of the three proposed "Buyers" on the Term Sheet that formed the basis for the prepackaged Plan, which was sent to Davis Family Counsel separate from the full solicitation package and was also attached as Exhibit B to the Disclosure Statement and expressly incorporated into the Plan.  Plaintiff was represented by sophisticated legal counsel and the assertion of lack of disclosure of Mesdag's participation as a co-investor under these circumstances is not credible."  R120, Decision at 42.

The § 1144 Defendants moved to dismiss the Revocation Action in October 2006 on the separate and independent grounds that (i) the Plan had been substantially consummated and the relief sought was barred by the doctrine of equitable mootness; and (ii) from a review of the Plan, Disclosure Statement, Confirmation Hearing transcript, and documents on which the complaint rested, it was clear that the facts allegedly "hidden" were disclosed and that the Plan had been accepted by all Interest Holders except the Nancy Davis Trust based on the uncontroverted record that the Plan offered the best prospect for maximizing the value of the estate and successfully reorganizing the Debtors.  The Nancy Davis Trust opposed the § 1144 Defendants' motion.   During the oral argument, counsel for the Nancy Davis Trust was asked by the Bankruptcy Court why the plaintiff had not named Gregg Davis, Evercore, or any of the other parties whose conduct was implicated in the Revocation Action as part of her pleading:

> THE COURT:  So in this case, are you required to plead everything that you wanted to against – I mean, you have not sued Gregg Davis or any, or Evercore or any of those others, have you?
>
> MR. STEINBERG:  We have not.  There's a release.  What I want to do, it's a two-step process in my view.
>
> THE COURT:  You want to eliminate the release and then sue them.
>
> MR. STEINBERG:  Correct.  I need to revoke the plan –
>
> THE COURT:  Okay.
>
> MR. STEINBERG:  – eliminate the release, and then sue those guys.
>
> THE COURT:  Okay.
>
> MR. STEINBERG:  And like I said, my concern was if I sued them now, they would say hold him in contempt of court for violating the plan confirmation order.

R20 (Dec. 2006 Hearing transcript) at 97-98 (emphasis added).  As this exchange demonstrates, counsel for the Nancy Davis Trust as part of the Revocation Action acknowledged on the record that the release provisions contained in the Plan and Confirmation Order prevented him, absent

- 27 -

revocation of the Confirmation Order, from suing the very parties Movant's new counsel is attempting to sue here.

The Bankruptcy Court, without reaching the merits, converted the § 1144 Defendants' motions for judgment on the pleading into summary judgment motions under Rule 56 and directed the parties to submit supplemental papers after conducting discovery focused on the allegations of fraud.[23]   After another hearing to address the scope of discovery, the parties engaged in extensive document discovery, conducted over a dozen depositions, and in late 2007 submitted voluminous briefing, providing the Bankruptcy Court with a full evidentiary record addressing the Nancy Davis Trust's allegations of fraud.  On April 10, 2008, the Bankruptcy Court issued a 57-page decision granting summary judgment on the dual grounds that (i) the Nancy Davis Trust's allegations of fraud were not supported by admissible evidence sufficient to create a triable issue of fact as to any element of her claim; and (ii) the *res judicata*  effect of the Confirmation Order precluded her from raising objections that could and should have been raised at Confirmation.  R120 (Dec.) at 1, 36-53, 54-57.

The Nancy Davis Trust appealed from the Summary Judgment Decision to this Court. On January 22, 2009, the Court heard oral argument, and allowed the parties to provide post-hearing submissions on January 30, 2009.  The appeal is currently under submission.

**5.      The Settlement Of The *Raynes* Litigation And Release Of Officer And Director Claims, Specifically Including Claims Against Gregg Davis**

As discussed above, claims that Gregg Davis had breached his fiduciary duties as an officer of Davis Petroleum that are strikingly similar to those being asserted by the Nancy Davis

---

[23] By order dated March 12, 2007 [R22], the Bankruptcy Court found that materials outside the Complaint had been presented on Defendants' motions, invoked Rule 12(e) to convert the motions into motions for summary judgment, and directed the parties to conduct discovery and file supplemental papers on the converted motions.  At a hearing pertaining to motions for protective orders filed by several parties challenging the extensive scope of discovery sought by Plaintiff, the Court directed the parties to focus discovery and the summary judgment papers on Plaintiff's fraud allegations.  R22 (Order on Motions for Judgment on the Pleadings).

Trust were previously raised in the *Raynes* litigation by Movant's own sister back in September 2005 – six months before the Plan was confirmed.[24]   Under the Plan, all claims against officers and directors, including the derivative claims asserted in the *Raynes* litigation, were assigned by the Debtors to the Liquidating Trust.[25]   R126 (Plan) at 20, Article III.T; R125 (DS) at 21.

In May 2007, the Trustee entered into a settlement of all officer and director indemnity claims arising, *inter alia*, from the defense of the *Raynes* litigation, and as part of the settlement, expressly released any and all claims that the estate might have against various officers and directors, including Gregg Davis and Barbara Davis, and expressly including claims based on the kinds of matters set forth in the *Raynes* litigation.   The release language is as follows:

> (a) **Liquidating Trustee**. Except for the provisions of this Agreement, upon the Effective Date of this Agreement, the Liquidating Trustee fully, finally and forever generally releases the Indemnity Claimant Release Parties[26] from any and all claims of every nature and description, rights or causes of action or liabilities whatsoever, whether based on federal, state, local, statutory or common law or any other law, rule or regulation, whether arising under the laws of the United States, any state thereof or any foreign country, including both known claims and unknown claims, foreseen claims and unforeseen claims, class or individual in nature, all claims that have been or could have been asserted in any forum by the Liquidating Trustee, whether directly, indirectly, representatively or in any other capacity, from the beginning of time through the Effective Date of this

---

[24] Both Nancy Davis and her former counsel were asked about the *Raynes* allegations concerning Gregg Davis and testified that Armel's retention in May 2005 addressed any concerns. Specifically, Ms. Davis testified that "Raynes was alleging everything – everybody constantly, and this was just one of many things….And that was just one of a zillion allegations that kept coming and coming." R109, N. Davis Tr. at 151-52. Additionally, when asked whether "it was your view after reading the Patty Davis Raynes Complaint that it had no merit," Ms. Davis responded "Absolutely." *Id.* at 185:8-12. Plaintiff's then-counsel, Michael Diamond, disclaimed any need to investigate the *Raynes* allegations concerning Gregg Davis because "whether or not [Raynes' allegation] was accurate, it was irrelevant" in light of Armel's retention. R53, Ex. 6 (Diamond Tr.) at 92.

[25] Raynes asserted, *inter alia*, a derivative claim based on Gregg Davis' purported breach of fiduciary duty for his "excessive" compensation, including override interests, and for his having "placed his personal interests" ahead of the other shareholders in the search for capital since he "stood on both sides of this transaction." R53, Ex. 12 at D-19 (E-mail from Raynes' counsel to Armel), D-26 (*Raynes* Compl.).   As early as July 2005, Raynes claimed that Gregg's actions related to the search for an equity investor were meant to "permit him to retain his management position, inflated salary and other perquisites, and equity stake" and that he "placed his personal interests ahead of the interests of the company and the other shareholders." R53, Ex. 12 at D-19 (E-mail from Raynes' counsel to Armel); D-26 (Raynes Compl.).

[26] "Indemnity Claimant Release Parties" was defined to include Gregg Davis, Barbara Davis, and the other officers and directors specifically named in the agreement.

- 29 -

> Agreement.  Without limiting in any way the breadth of this general release, it specifically includes any and all claims that arise out of or relate in any way to the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, asserted or that could have been asserted in the Federal Court Action, the State Court Actions, the Arbitration, the Silverstein Action, the Bankruptcy Proceedings, and/or the Probate Proceeding.  The Liquidating Trust and the Liquidating Trustee expressly except from the release granted by this paragraph their rights under this Agreement.

Bankr. Dkt 498, Ex. 1 [D&O/Raynes Settlement, p. 6] (emphasis added) [appended hereto as Ex. 2].[27]  The Trustee made a motion on notice to all Interest Holders to approve the D&O/Raynes Settlement.[28]  Bankr. Dkt 498, 500 & Ex.1 [appended hereto as Exs. 2, 4-5].  The matter was set for hearing, and all interested parties were permitted to participate telephonically.  Bankr. Dkt 505 & Exs 1-2 [appended hereto as Exs. 6-8].  The Nancy Davis Trust did not object to the D&O/Raynes Settlement, which became the subject of a final order in May 2007.  Bankr. Dkt 513 [appended hereto as Ex. 9].

Accordingly, the Trustee in the exercise of his duties to maximize the value of the estate concluded, with the support of the Interest Holders, that it was in the best interests of the estate to enter into the D&O/Raynes Settlement, which forever released all claims that could have been brought against Gregg Davis on behalf of the Trust in exchange for the Gregg Davis' withdrawal of his proof of claim and the settlement of related indemnity claims.  Bankr. Dkt 498, Motion at 7-8 [appended hereto as Ex. 2].

---

[27] *See also* Appeal Dkt 10, Motion to Dismiss ¶ 13; Appeal Dkt 13, Conly Aff. ¶¶ 8-13 & Exs. B-C; Appeal Dkt 11, Ex. 1 (Interim Distribution Motion ¶ 16).

[28] In fact, in the Conly Proffer in support of the Motion to Approve Settlement, Mr. Conly attested that the Davis family trusts, which comprise the Advisory Board to the Liquidating Trust, had been provided with prior notice of the proposed D&O/Raynes Settlement and had not objected, and therefore it was deemed approved.  Conly ¶ 18. Mr. Conly further attested that the "interest holders who are the ultimate beneficiaries of the residue of the Liquidating Trust desire that this settlement be approved."  Proffer ¶ 20 [appended hereto as Ex. 10].

- 30 -

**B.     ARGUMENT:   In The Event The Court Withdraws The Reference Over Evercore's Objection, Movant's Leave Motion Should Be Denied And Evercore's Cross-Motion Should Be Granted To Enforce The Provisions Of The Plan And Confirmation Order**

In the event the court grants Movant's request to withdraw the reference, over Evercore's objection, Evercore submits that Movant's request for leave to file the proposed complaint should be denied and Evercore's cross-motion to enjoin Movant from engaging in further litigation should be granted on several separate and independent grounds.  First, a review of the Proposed Complaint makes clear that the Nancy Davis Trust's new litigation is predicated entirely on her claimed injury to the value of her pro rata share of Davis Petroleum's equity allegedly suffered as a result of the fraud and breaches of fiduciary duty of Gregg Davis and Willem Mesdag, aided and abetted by the Buyers.  In fact, each count of the Nancy Davis Trust's Proposed Complaint concludes with the recitation that the purported plaintiff suffered damages, described as follows:  "Specifically, the ND Trust was deprived of the full economic value of its equity holdings in an amount of no less than $50 million."  Proposed Compl. at ¶¶ 52, 56, 60, 64, 70 & 73.[29]  Putting to one side the myriad other flaws in Movant's latest allegations,[30] the Nancy Davis Trust has no standing to bring these claims, which are derivative in nature and which were expressly assigned under the Plan to the Trust.  Second, not only does the Nancy Davis Trust have no right to pursue claims belonging to the Trust, but these claims were released as against

_____

[29] It should also be noted that the Proposed Complaint also alleges a breach of duties owed to all shareholders arising from Gregg Davis' and Will Mesdag's claimed relationships to Davis Petroleum.  [Proposed Compl. at p.15].  Absent a "contract of special relationship [existing] between them in addition to the corporate relationship," a corporate officer does not owe a fiduciary duty to an individual shareholder.  *FDIC v. Howse*, 802 F. Supp. 1554, 1562 (S.D. Tex. 1992) (emphasis added).  Even if such a special relationship were properly pled, Plaintiff's claim fails since the injury claimed is derivative of that to the corporation, as discussed below.

[30] As this Court is aware, Plaintiff's allegations were all found meritless by the Bankruptcy Court in the Summary Judgment Decision, and the Bankruptcy Court expressly found that the Nancy Davis Trust's allegations against Evercore had no support in the evidentiary record.  R120,  Decision at 46-47.  In the event any new action is permitted to proceed, Evercore reserves the right to bring any and all defenses, including those based on the arguments set forth herein and in the oppositions of other defendants, in any new action.  Evercore should not be required to assert these defenses in the context of the Leave Motion, and objects to the Leave Motion as an improper request for an advisory opinion for all the reasons stated in the Trustee's separately filed opposition.

- 31 -

the Buyers by the Debtors and each Interest Holder, including Movant, under the Mutual Release of the Plan and Confirmation Order as part of the consideration for the Buyers' funding of the Plan.   Third, all claims as against Gregg Davis that could be brought for his malfeasance as an officer (which is specifically denied and contradicted by the record) were released by the Trustee pursuant to the D&O/Raynes Settlement with the support of the Interest Holders and on notice to the Nancy Davis Trust.   Last, Movant's attempt to relitigate claims already brought in the Revocation Action are barred by the finality of the Confirmation Order and by the Revocation Action.   Accordingly, the Nancy Davis Trust's Leave Motion should be denied and Evercore's cross-motion to enforce the injunction provisions of the Plan and Confirmation should be granted on the grounds that the Nancy Davis Trust is barred from bringing a new action to assert claims against the Buyers precluded under the Plan.

### 1.   The Nancy Davis Trust Lacks Standing To Bring Derivative Claims That Belong To The Liquidating Trust

Under both Texas and Delaware law,[31] an officer's alleged misconduct which injures shareholders indirectly as a result of their ownership of shares in the company constitutes a derivative claim based on the injury to the corporation, and a shareholder does not have an independent right of action.   *Smith v. Waste Management, Inc.*, 407 F.3d 381, 385 (5th Cir. 2005) (applying Delaware law).   Claims for a reduction in share value, breach of fiduciary duty, and misrepresentation are all derivative claims which squarely belong to the corporation.   *FDIC v. Howse*, 802 F. Supp. at 1562 (rejecting shareholder's effort to bring an individual claim based on

---

[31] The Plan contained a "Governing Law" provision which expressly provided that: "Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of (i) the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan and (ii) the laws of the state of incorporation of each Debtor shall govern corporate governance matters with respect to such Debtor, in either case without giving effect to the principles of conflicts of law thereof." R126 (Plan) at 29, Article XI.G.   Davis Petroleum Corporation and Davis Petroleum Pipeline, LLC are incorporated in Delaware and Davis Offshore L.P. is organized under the laws of Texas.   *See, e.g.,* R125 (DS) at Ex. C; R11, Ex. 8 (Draft Contribution and Sale Agreement) at 3-4.

alleged misrepresentation by corporate director because director owed fiduciary duty to the corporation) (applying Texas law). [32]

As discussed above, in *In re: Davis*, all claims that could be asserted against officers and directors were retained under the Plan and assigned to the Liquidating Trust.  R126 (Plan) at 20, Article III.T, R125 (DS) at 21.  As such, the Trustee has exclusive standing to assert such claims. *In re Educators Group Health Trust*, 25 F.3d at 1284 (holding that plaintiffs lacked standing to bring claims for breach of fiduciary duty and conspiracy to commit fraud where the alleged harm was a direct injury to the estate).[33]  The same is true for the related aiding and abetting and conspiracy claims.[34]  Although in limited circumstances, an individual creditor or shareholder

---

[32] *See also Smith v. Waste Management, Inc.*, 407 F.3d at 385 ("[T]he harm that befell [plaintiff] Smith--the drop in share prices caused by untimely disclosure of unfavorable financial data--was a harm that befell all of Waste Management's stockholders equally. Stated differently, the misconduct alleged by Smith did not injure Smith or any other shareholders directly, but instead only injured them indirectly as a result of their ownership of Waste Management shares.") (applying Delaware law); *7547 Corp. v. Parker & Parsley Devel. Partners, L.P.*, 38 F.3d 211, 221-22 (5th Cir. 1994) (under Texas law, the alleged damage was a collective injury to all shareholders, and "[t]hat the disparities will eventually be passed on to the PDP unitholders upon liquidation of PDP does not commute the causes of action into direct claims on the plaintiffs' behalf; rather, the damages sought by the plaintiffs appear to be exactly like those indirect damages suffered by shareholders when a wrong is perpetrated upon the corporation."); *Schertz-Cibolo-Universal City, Independent School District v. Wright (In re Educators Group Health Trust)*, 25 F.3d 1281, 1283 (5th Cir. 1994) (holding that plaintiffs lacked standing under Texas law to bring claims for breach of fiduciary duty and conspiracy to commit fraud where the alleged harm was a direct injury to the estate); *Gearhart Indus., Inc. v. Smith Intern, Inc.*, 741 F.2d 707, 721 (5th Cir. 1984) (under Texas law, "a cause of action for breach of directors' fiduciary duties belongs to the corporation . . ."); *FDIC v. Howse*, 802 F. Supp. at 1561 (*citing Leach v. FDIC*, 860 F.2d 1266, 1269 (5th Cir. 1988) (determination "turns on whether all shareholders are 'wounded,' or just one person has been hurt by the misconduct.  The law treats the former as harm to the corporate body, and the latter as harm to the individual.")); *Gabrielsen v. BancTexas Group, Inc.*, 675 F. Supp. 367 (N.D. Tex. 1987) (*quoting Bokat v. Getty Oil Co.*, 262 A.2d 246, 249 (Del. 1970) (when an injury to corporate stock falls equally upon all stockholders, then an individual stockholder may not recover for the injury to his stock alone, but must seek recovery derivatively on behalf of the corporation)) (applying Delaware law); *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1039 (Del. 2004) ("The stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation."); *Big Lots Stores, Inc. v. Bain Capital Fund VII, LLC*, 922 A.2d 1169, 1179 (Del. Ch. 2006) ("A direct claim . . . is a claim on which the stockholder can prevail without showing an injury or breach of duty to the corporation.")

[33] *See also Matter of S.I. Acquisition, Inc.*, 817 F.2d 1142, 1153-54 (5th Cir. 1987) (observing that the general bankruptcy policy of ensuring that all similarly situated parties are treated fairly requires that the trustee have the first opportunity to pursue estate actions without interference from individual parties); *In re E.F. Hutton Southwest Properties II, Ltd.*, 103 B.R. 808, 812 (Bankr. N.D. Tex. 1989) ("If an action belongs to the estate, the trustee has the power and duty to prosecute the action for the benefit of all creditors and shareholders in the estate.")

[34] *See ASARCO LLC v. Americas Mining Corp.*, 396 B.R. 278, 424 (S.D. Tex. 2008) (citing *Louisiana World Exposition v. Fed. Ins. Co.*, 858 F.2d 233, 245 (5th Cir. 1988) ("a claim for aiding and abetting breach of fiduciary

may obtain court approval to pursue derivative claims when a trustee unreasonably refuses to do so,[35] the Nancy Davis Trust has made no attempt to obtain such approval from the Bankruptcy Court and would be barred in any event by the releases already provided by the Debtors and the Trustee to the named Defendants, as discussed below.   Accordingly, as a matter of law, the Nancy Davis Trust lacks standing to bring any claims premised on the alleged breaches of fiduciary duty and officer misconduct which she claims caused Davis Petroleum to be sold for less than its full value.

## 2. The Nancy Davis Trust's Purported Claims Were Released By The Debtor Parties, Including The Nancy Davis Trust, Under The Plan

The Nancy Davis Trust's Leave Motion ignores that the claims asserted in the Proposed Complaint were released by the Debtors and all Debtor Parties, including the Nancy Davis Trust, as against all Buyer Parties (with "Buyer Party" defined to include all named Defendants except Gregg Davis) under express provisions of the Plan and Confirmation Order.   The unequivocal release and discharge of all claims among the Debtor Parties and the Buyer Parties was an express condition of the Plan, as set forth in the Plan's Mutual Release provision found at Article III.S., which was approved and restated in full in the Confirmation Order:

---

(continued…)

duty is a claim belonging to the estate."). In any event, it is axiomatic that the dismissal of the derivative claims against the officer and employee requires dismissal of Plaintiff's aiding and abetting and conspiracy claims. *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 640 (5th Cir. 2007) ("Under Texas law, civil conspiracy is a derivative tort. If a plaintiff fails to state a separate underlying claim on which the court may grant relief, then a claim for civil conspiracy necessarily fails.") (citing *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996)); *Smith v. Arthur Andersen LLP*, 421 F.3d 989, 1004 (9th Cir. 2005); *Lexxus Int'l, Inc. v. Loghry*, 512 F. Supp. 2d 647, 670-71 (N.D. Tex. 2007) (a plaintiff must have standing to bring the underlying claim in order to also bring a claim for civil conspiracy); *Tex. Carpenters Health Benefit Fund v. Phillip Morris, Inc.*, 21 F. Supp. 2d 664, 676 (E.D. Tex. 1998); *In re OODC, LLC*, 321 B.R. 128, 143 (Bankr. D. Del. 2005).

[35] Creditors and shareholders only have a qualified right to pursue a derivative matter that belongs to the bankruptcy estate.  *In re AppliedTheory Corp.*, 493 F.3d 82, 86 (2d Cir. 2007) (holding that the Bankruptcy Code implies a "qualified right . . . to initiate suit with the approval of the bankruptcy court").   In order for a party to bring a derivative claim, bankruptcy courts have generally required that the creditor or shareholder must show (i) the claim is colorable, (ii) the debtor-in-possession or trustee unjustifiably refused to pursue the claim, and (iii) the party first received leave to sue from the bankruptcy court.  *Id.* at 85-86.

- 34 -

> Upon the Effective Date . . . (ii) in exchange for the preceding release of the Buyer Parties and for the funding of this Plan by Davis Acquisition, each Debtor Party shall be deemed to forever waive, release, and discharge any and all Causes of Action against a Buyer Party that is based, whether in whole or in part, up on any act, omission, event, condition, or thing in existence or that occurred, whether in whole or in part, prior to the Effective Date of the Plan.

R126 (Plan) at 19, Article III.S.; R127 (Conf. Order) at Order ¶ 9.[36]  This provision was essential to the Plan's formulation and consummation.  As the Debtors' counsel, Rhett Campbell, explained at the Confirmation hearing, the earlier out-of-court deal had collapsed over the unwillingness of one shareholder, Patricia Davis Raynes, to execute the releases required as part of the Original Evercore Deal.  R128 (Conf. Tr.) at 21-23.[37]  Evercore was entreated to come back and do the deal in a prepackaged bankruptcy proceeding where one shareholder could not hijack the process:  "And one of the pitches that the company and the equity owners made to Evercore was, can we do a prepack and eliminate the need for the equity owners to sign, because in a prepack bankruptcy, if you satisfy the legal test, then it's not necessary for the equity owners to sign off on a deal and approve it."  *Id.* at 27 (emphasis added).  The Plan was conditioned on the entry of a Confirmation Order satisfactory to the Buyers (R126 (Plan) at 24, Article VII.B.(i)&(ii)).  As set forth in the Confirmation Order's findings, the "releases, discharges, exculpations, and injunctions set forth in the Plan shall be, and hereby are, approved as fair, equitable, reasonable, and in the best interests of the Debtors, the Reorganized Debtors, and their Estates, creditors, and equity holders.  The failure to effect the discharge, release, exculpatory

---

[36]  The only exception to this broad Mutual Release was the standard preservation of possible claims for breach of the provisions of the Plan or the Purchase and Sale Agreement, enabling the Trustee and Buyers to enforce the Plan and PSA provisions if either party failed to perform.  *See id.*

[37]  The Original Evercore Deal was explicitly conditioned on satisfactory releases of any claims by Raynes and all shareholders to ensure that the Davis Operating Entities would be free and clear of any shareholder claims ore related indemnity claims after the closing of the Original Evercore Deal.  *See* R125 (DS) Ex. C, Draft CSA at 15; R127 (Conf. Tr.) at 22.

and injunctive provisions of the Plan would seriously impair the Debtors' ability to confirm the Plan." R127 (Conf. Order) at 6, Finding ¶ 11.

Movant has attempted to argue around this unconditional release and settlement of any and all claims among the Buyer and Debtor parties by arguing that the Plan's "releases, indemnifications and exculpations relate to acts occurring prior to the effective date of the plan" and "[t]he actions giving rise to the claims asserted by the Plaintiff in the Original Complaint occurred on the effective date of the plan when sale [sic] to the tort feasors was consummated and title transferred," and therefore, "[t]he limitations of the Order to pre-effective date conduct on its face is inapplicable here." Leave Motion at 2. Movant's argument misstates the express language of the Mutual Release, which applies to "any and all Causes of Action" – defined to include, *inter alia*, "all rights, claims, causes of action, defenses, debts, demands, damages, obligations and liabilities of any kind or nature under contract, at law or in equity, known or unknown, contingent or matured" -- which are "based, whether in whole or in part, up on any act, omission, event, condition, or thing in existence or that occurred, whether in whole or in part, prior to the Effective Date of the Plan." R126 (Plan) at 19, Article III.S.; R127 (Conf. Order) at Order ¶ 9 (emphasis added). In other words, any claim that is based in whole or part on pre-Effective Date conduct was explicitly and forever waived, released and discharged in exchange for the funding of the Plan.

Movant also tries to argue that the carve-out in certain of the Plan's exculpation provisions for "willful misconduct" should be read into all the release, injunction and exculpation provisions, without any authority and any record citations supporting such a sweeping change to the carefully negotiated provisions of the Plan and Confirmation Order.[38]

---

[38] Plaintiff misspeaks when saying "[w]hile the plan excluded from release willful misconduct and gross negligence of the Defendants, the language in the Order is silent as to such exclusion except for its adoption of the releases,

The Plan's No Adverse Construction Provision made crystal-clear that the "the Debtors, the Interest Holders, the Bank, and the Buyer Parties" each were "represented by counsel who either participated in the formulation and documentation of, or was afforded the opportunity to review and provide comments on, the Plan, the Disclosure Statement, and the documents ancillary thereto" [R126 (Plan) at 11, Article I.C.(iv)], and the Confirmation Order expressly approved the Mutual Release and bound The Nancy Davis Trust to all provisions of the Plan and Confirmation Order.  R127 (Conf. Order), Order ¶8 (all provisions of Plan, "including but not limited to the Mutual Releases, shall be, and hereby are, effective and binding on all Persons" including the Interest Holders "whether or not the Claim or Interest of such holder is impaired under the Plan and whether or not such holder or entity has accepted the Plan.").  Movant's new counsel also ignores the history of this deal, in which release provisions that guaranteed the Buyers closure through broad release and indemnity provisions from any litigation involving the Davis shareholders or related director and officer indemnity claims were the essential deal point over which one shareholder had imploded the Original Evercore Deal (much to the chagrin of the other Interest Holders who had provided the releases).  *See, e.g.,* R128 (Conf. Tr.) at 21-22.[39] The "pitch" to Evercore made by "the company and the equity owners" was to do the deal

---

(continued…)

indemnifications and exculpations contained in the plan."  None of the release provisions contained any such carve-out; rather, the carve-out for "willful misconduct" Plaintiff refers to was in the Plan's general exculpation provisions, as is typical for this provision, which broadly covers all the parties and their professionals who have participated in any way in the bankruptcy proceedings.  While the "willful misconduct" carve-out was included in the standard exculpation applicable to all parties who participated in the negotiation of the Plan and its administration, as is typical in every Plan, the exculpation provision was completely independent of the Mutual Release provision, the release of successor liability provision, and the injunction provisions that were separate terms of the Plan and Confirmation Order and which contained no such exclusion.

[39] Both the Independent Director and Barbara Davis' counsel had warned Ms. Raynes' counsel that her failure to agree to the releases, which had been an essential term of the deal from the outset to protect the Buyers from fallout from the intra-family claims, would place the companies in an "untenable" position and was "unconscionable" and would be a "deal-killer." Chronology ¶¶ 21-22.

- 37 -

through a prepackaged plan to avoid the need for every shareholder's sign-off so long as "you satisfy the legal test" and obtain the requisite approvals.  *Id.* at 27.

Moreover, while Movant claims that the exculpation provision in the Plan which contains the "willful misconduct" carve-out is inconsistent with the exculpation provision in the Confirmation Order, Movant misreads the documents.  The only provision from the Plan's exculpation provision which was separately written into the Confirmation Order was the provision effectuating the Plan's exculpation "[a]s of the Confirmation Date" of conduct entitled to the protection of 11 U.S.C § 1125(e):

> None of the Debtors, the Debtors' directors, officers, employees, equity holders, members, agents, advisors, accountants, financial advisors, consultants, attorneys, and other representatives shall have or incur any liability to any holder of a claim or equity interest that arose before the Effective Date of the Plan for any act, event, or omission in connection with, or arising out of, these Chapter 11 Cases, or in connection with the confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, and shall be entitled to the rights, benefits and protections of Section 1125(e) of the Bankruptcy Code.

R127 (Conf. Order) at 15, Order ¶ 10.  This provision was based on the findings in the Confirmation Order that the disclosures were adequate and the Plan had been solicited in good faith, entitling the Debtors and related parties to the full protection of 11 U.S.C. § 1125(e).  *Id.* at 2, 7, 10, Findings ¶¶ 3-4,16, 27.[40]

As such, Movant's arguments to try to evade the express language of the Mutual Release provision are unavailing.  The plain language of the Mutual Release precludes any and all claims by all Debtor Parties, including The Nancy Davis Trust, against the Buyers for any claims based in whole or part on any conduct occurring prior to the Effective Date, including the claims

---

[40] This provision provides an independent basis for dismissal of all claims to the extent the allegations are based on alleged misconduct of any defendants as officers or employees of Davis Petroleum "in connection with, or arising out of, these Chapter 11 Cases, or in connection with the confirmation of the Plan, the consummation of the Plan."

- 38 -

asserted against Willem Mesdag, Evercore, Red Mountain, and Sankaty in the Proposed Complaint.

### 3.     The D&O/Raynes Settlement Released All Estate Claims Against Gregg Davis

As discussed above, all claims against officers and directors, including those asserted in the *Raynes* litigation, were retained under the Plan and assigned to the Liquidating Trust.  R126 (Plan) at 20, Article III.T; R125 (DS) at 21.  As such, the Trustee had the right and obligation to pursue any claims that he believed in the exercise of his reasonable business judgment would benefit the estate.[41]   In May 2007, the Trustee filed a motion seeking approval of the D&O/Raynes Settlement, annexing the settlement agreement.   Bankr. Dkt 498 and Ex. 1 [appended hereto as Ex. 3].  As set forth in detail above, the settlement agreement contained a release of various "indemnified parties," including Gregg Davis.  In this release, the Trustee

> fully, finally and forever generally releases [Gregg Davis] from any and all claims of every nature and description, rights or causes of action or liabilities whatsoever . . ., including both known claims and unknown claims, foreseen claims and unforeseen claims, class or individual in nature, all claims that have been or could have been asserted in any forum by the Liquidating Trustee, whether directly, indirectly, representatively or in any other capacity, from the beginning of time through the Effective Date of this Agreement.

Bankr. Dkt 498, Ex. 1(D&O Settlement) at 6 [appended hereto as Ex. 3]. The release went on to specifically include "[w]ithout limiting in any way the breadth of this general release, . . . any and all claims that arise out of or relate in any way to the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, asserted or that could have been

---

[41] *See, e.g.*, *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 352 (U.S. 1985) (a trustee "has the duty to maximize the value of the estate . . . and is empowered to sue officers, directors, and other insiders to recover, on behalf of the estate, fraudulent or preferential transfers of the debtor's property.") (internal citations omitted).  Among the factors considered by the Trustee was the fact that the officers and director each had pending indemnity claims against the estate for reimbursement of the defense costs in the *Raynes* litigation, which placed a tremendous burden on the estate.

NYI-4156625

asserted in the [*Raynes* litigation] . . . the Bankruptcy Proceedings, and/or the Probate Proceeding." *Id.*

The Trustee's motion for an order approving D&O/Raynes Settlement was on notice to the Nancy Davis Trust and four separate law firms that had represented her at various points in the proceedings, including Michael Diamond at Milbank Tweed; counsel at White & Case; Howard Steinberg of Irell & Manella (lead counsel in the Revocation Action proceedings before the Bankruptcy Court); and Trey Monsour and Robin Phelan of Haynes & Boone (lead counsel on the Revocation Action appeal and listed as "of counsel" in this proceeding).  A telephonic hearing was conducted on this matter, and no party objected to any term of the D&O/Raynes Settlement, including the Trust's release of all claims against Gregg Davis.

The Trust had full authority to enter into settlement of claims on behalf of the estate. *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. at 352.   The D&O/Raynes Settlement is binding on the Nancy Davis Trust, and precludes her attempt to assert claims for an injury based on the reduced value of her equity, which is an estate claim and as such is barred by the release of all claims by the Trust in May 2007.  The D&O/Raynes Settlement was approved by order of the Court on June 1, 2007.  Bankr. Dkt 513 [appended hereto as Ex. 9].  The time for any challenge to this order has long since expired, and therefore Movant is barred from bringing any claims against Gregg Davis by the D&O/Raynes Settlement.  As such, any purported claims against the Buyer parties for allegedly aiding and abetting Gregg Davis' claimed malfeasance are barred not only by the Mutual Release, but because aiding and abetting and conspiracy claims must be dismissed upon dismissal of the claim against the principal alleged tortfeasor.  *See supra* at 34, n. 34.

- 40 -

**4.     The Movant's Claims Are Barred By The Collateral Estoppel And *Res Judicata* Effect Of The Confirmation Order And Revocation Action**

At the outset, it should be noted that Movant apparently concedes, as she must, that the release and injunction provisions set forth in the Plan and Confirmation Order are fully binding and cannot be overturned except through a successful Revocation Action.  *In re Innovative Clinical Solutions, Ltd.*, 302 B.R. 136 (Bankr. D. Del. 2003) (seeking to strike a release is "a request for modification of the Plan" that cannot be made following substantial confirmation of the plan).[42]  As such, the Leave Motion is premised not on Movant's effort to collaterally attack the release, exculpation and injunction provisions of the final Confirmation Order, but rather on Movant's assertion that the Proposed Complaint seeks to bring claims that are outside the scope of those provisions.  Leave Motion at 4.  While Evercore emphatically denies that Movant has any claim that is not barred by the Confirmation Order's broad release and injunction provisions (as Movant's own former counsel previously acknowledged on the record),[43] and submits that all claims against Gregg Davis and related ancillary claims against Evercore are barred by the final

---

[42] As discussed in the briefing on the appeal of the Revocation Action, a Plan cannot be modified after substantial consummation and the only way to unwind a Plan approved by a Confirmation Order is through revocation of the Confirmation Order under 11 U.S.C. § 1144.  *See also Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1050 (5th Cir. 1987) (holding that once a release provision is included in a plan of reorganization and confirmed by the bankruptcy court without objection, the only avenue through which a court can review the release is by an appeal of the confirmation order); *Manges v. Seattle-First Nat'l Bank (In re Manges)*, 29 F.3d 1034, 1043 n. 13 (5th Cir. 1994) (declining to "simply strike the offensive portion of the Plan" because confirmed plans cannot be modified without complying with section 1127(b)); *In re California Litfunding*, 360 B.R. 310 (C.D. Cal. 2007) ("[B]y virtue of the mutual releases given by each party, a finding of fraud to procure the releases under the Plan would vitiate the releases . . . The impact of significant monetary damages against the Defendants would upset the confirmed Plan.").

[43] Movant's former counsel told the Bankruptcy Court that the immunity provided by the releases required a "two-step" process, to first revoke the Confirmation Order and then "sue those guys:"

> MR. STEINBERG: . . . There's a release.  What I want to do, it's a two-step process in my view.
>
> THE COURT:  You want to eliminate the release and then sue them.
>
> MR. STEINBERG:  Correct.  I need to revoke the plan –
>
> THE COURT:  Okay.
>
> MR. STEINBERG:  – eliminate the release, and then sue those guys.

R20 (Dec. 2006 Hearing transcript) at 97-98.

Order approving D&O/Raynes Settlement and that Movant lacks standing to bring any of the purported claims which are derivative in nature and belong to the Liquidating Trust, all as discussed above, Evercore also submits that the Proposed Complaint is barred as a matter of law by the preclusive effect of the Revocation Action and the Confirmation Order.

As this Court is aware, Movant filed the Leave Motion on January 21, 2009, on the eve of oral argument in the appeal of the Revocation Action. The Leave Motion seeks to assert claims based on exactly the same conduct which served as the predicate for the Revocation Action, as Movant essentially concedes. Leave Motion at 1-2. In the Leave Motion, Movant ignores completely the *res judicata* and collateral estoppel implications of the Revocation Action. At the behest of the Nancy Davis Trust, which opposed dismissal of the Revocation Action on mootness grounds and pressed the Bankruptcy Court to permit wide-scale discovery and briefing on the underlying fraud claims, the litigants and Bankruptcy Court invested tremendous resources in fully litigating the merits of the Nancy Davis Trust's claim of fraud in the procurement of the Confirmation Order based on the same facts as alleged here. After extensive evidentiary submissions, the Bankruptcy Court, in a 57-page decision, found that the Nancy Davis Trust's claims were without merit and were barred by the collateral estoppel effect of the Confirmation Order.[44] The Summary Judgment Decision clearly provides another independent grounds to bar the claims in the Proposed Complaint. This argument is set forth in detail in the

---

[44] The Bankruptcy Court has ruled that the Nancy Davis Trust's Revocation Action was barred as a matter of law by the *res judicata* effect of the Confirmation Order, rejecting the § 1144 claim as both lacking any evidentiary basis and as constituting a belated attempt to circumvent the finality of the Confirmation Order by raising objections of the type that could and should have been raised at confirmation: "The record makes clear that this case does not involve any actual fraud, much less fraud in the procurement of the Confirmation Order. . . . Absent any evidence of fraud, Plaintiff's allegations constitute an attempt by a dissatisfied Interest Holder to reopen a final judgment in hopes of some possible additional recovery or unwarranted settlement. Such a claim finds no basis in the bankruptcy code or policy." R120 (Dec.) at 37, 56-57 (emphasis added).

separate opposition to the Leave Motion filed on behalf of Red Mountain, to which the Court is respectfully referred.

In addition, the Nancy Davis Trust should not be permitted to relitigate in a new action claims which for strategic reasons were not included in the Revocation Action, since this was the only permissible attack on the finality of the Confirmation Order.[45]   The importance of the finality to confirmation orders as a matter of bankruptcy policy cannot be overstated.[46]   Investors and lenders are encouraged to enter into transactions with troubled companies in chapter 11 proceedings with the promise that a confirmation order, once entered and final, is not subject to any collateral attack, with the sole exception of an action under § 1144 for fraud in its procurement.   *See, e.g.*, *Richards v. Public Serv. Co. (In re Public Serv. Co.)*, 848 F. Supp. 318, 324 (D.R.I. 1994) (holding that exposure to civil suits alleging misrepresentation "would have a palpably chilling effect on the reorganization process").   Any new claim that the Nancy Davis Trust seeks to bring is therefore barred by the preclusive effect of the Confirmation Order, which contained express finding that the Plan was proposed in good faith and was in the best interests is estate, and which was subject only to attack through the Revocation Action.[47]   As the Fifth Circuit has stated, "[r]estraining litigious plaintiffs from taking more than 'one bite of the apple'

---

[45] In fact, it should be noted that the court in *In re Circle K* reserved ruling on whether the preclusive effect of the confirmation order would bar plaintiff's damages claims even as a timely amendment to the revocation action being dismissed on mootness grounds.   *S.N. Phelps & Co. v. Circle K Corp. (In re Circle K)*, 181 B.R. 457, 462-63 (Bankr. D. Ariz. 1995).

[46] *See Educ. Credit Mgmt. Corp. v. Mersmann (In re Mersmann)*, 505 F.3d 1033, 1047 (10th Cir. 2007) ("There must be finality to a confirmation order so that all parties may rely upon it without concern that actions which they may thereafter take could be upset because of a later change or revocation of the order.") (internal citations omitted); *In re Centr. R. Co. of New Jersey*, 38 B.R. 686, 689 (D.N.J. 1983) (citing *Duryee v. Erie R. Co.*, 175 F.2d 58, 63 (6th Cir.), *cert. denied*, 338 U.S. 861 (1949) ("If third parties could not rely on the finality of the plan of reorganization, they would be reluctant to invest in or deal with the reorganized company.")).

[47] *See* 8 Collier on Bankruptcy ¶ 1141.02, at 11 ("in the absence of an allegation of fraud in obtaining the judgment, the Supreme Court held that the doctrine of res judicata applie[s] with respect to matters that are covered by a plan of reorganization confirmed by final order of a bankruptcy court") (citing *Stoll v. Gottlieb*, 305 U.S. 165, 171-72 (1938)).

has been our avowed purpose since the common law doctrine of *res judicata* first evolved." *Matter of Baudoin*, 981 F.2d 736, 739-40 (5th Cir. 1993) (citing *Sure-Snap Corp. v. State Street Bank and Trust Co.*, 948 F.2d 869, 870 (2d Cir. 1991)).[48]

While the Nancy Davis Trust cites to a handful of cases in which courts indicate that an action for damages based on fraud in the procurement of a confirmation order can proceed notwithstanding the dismissal of a § 1144 revocation action on mootness grounds, <u>none</u> of the cases cited by Movant involve a situation where the party challenging a confirmation order litigated a § 1144 revocation action to a final judgment holding that no fraud had occurred.[49] Moreover, the only case cited by Movant in which a party was permitted to bring a "damages" claim after the revocation claim under § 1144 was dismissed on mootness grounds allowed the claim *as an amendment to the complaint in the same proceeding* – not a new action.[50] Here, the time to bring an § 1144 action has long passed.[51]   Accordingly, the strategic decision of the

---

[48] *See also Allen v. McCurry*, 449 U.S. 90, 94 (1980) (the policy rationale behind res judicata is to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication."); *Apparel Art Intern., Inc. v. Amertex Enterprises Ltd.*, 48 F.3d 576 (1st Cir. 1995) (res judicata "prevents plaintiffs from splitting their claims by providing a strong incentive for them to plead all factually related allegations and attendant legal theories for recovery the first time they bring suit.").

[49] *See In re Newport Harbor Assocs.*, 589 F.2d 20, 23-24 (1st Cir. 1978); *Siegemund v. Shapland*, 2002 U.S. Dist. LEXIS 18160, at *44 (D. Me. 2002) (fraud was unknown at time of first action; here, fraud was clearly known and litigated during Revocation Action); *Genesis Health Ventures, Inc. v. Goldman Sachs & Co.*, 355 B.R. 438, 454 (D. Del. 2006) (no fully litigated Section 1144 action on the merits); *Browning v. Prostok*, 165 S.W.3d 336, 344-45 (Tex. 2005) (fraud allegations were litigated in bankruptcy proceeding and court found that lawsuit was improper collateral attack); *In re Coffee Cupboard, Inc.*, 119 B.R. 14, 19 (E.D.N.Y. 1990) (no fully litigated Section 1144 action on merits of fraud; case involved additional asset not included in bankruptcy plan); *In re Circle K*, 181 B.R. at 462 (again, issue was whether fraud was litigated in confirmation proceedings, not whether there was prior fully litigated Section 1144 proceeding on same issue); *Medallion Knitwear v. Parkdale Mills, Inc. (In re Crown-Globe, Inc.)*, 107 B.R. 60, 61 (Bankr. E.D. Pa. 1989) (no prior Section 1144 action); *In re Emmer Bros. Co.*, 522 B.R. 385, 392 (D. Minn. 1985) (same)

[50] *See In re Circle K*, 181 B.R. at 462-63 (allowing plaintiffs to amend their complaint seeking revocation for fraud to proceed on a damages claim theory, while not deciding whether the confirmation order would bar the litigation).

[51] Courts have found that any action, whether or not framed as such, which constitutes a collateral attack on a confirmation order is subject to the 180-day bar of § 1144.  *In re Baron's Stores, Inc.*, 390 B.R. 734, 744 (Bankr. S.D. Fla. 2008) (denying movants' "attempt to circumvent the time limit of § 1144 by characterizing their request to void the plan as an independent action."); *see also In re California Litfunding*, 360 B.R. 310, 317-18 (Bankr. C.D. Cal. 2007) ("creditors may not attack confirmation orders by simply characterizing their attempt as an independent

Nancy Davis Trust not to bring her purported damage claims as part of the Revocation Action precludes her from engaging in any new action for damages or otherwise which constitutes a collateral attack on the Confirmation Order.

### C.   Evercore's Cross-Motion To Enforce Injunction Should Be Granted

As discussed above, the Plan provided for a permanent injunction explicitly barring the holder of any claim or interest, including Movant, from taking any action against Evercore or any of the other parties released and discharged under the Plan.  Specifically, the Plan Injunction provided that:

> . . . from and after the Confirmation Date, all Persons who have held, hold, or may hold … Interests in the Debtors are permanently enjoined from taking any of the following actions against . . . Buyers . . ., or any of their property on account of any such  . . . Interests:  (i) commencing or continuing, in any manner or in any place, any action or other proceedings; . . . and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; provided, however, that nothing contained herein shall precluded such persons from exercising their rights pursuant to and consistent with the terms of this Plan.

R126 (Plan) at 27, Article X.C. (emphasis added) (the "Plan Injunction").  This provision was expressly approved and incorporated in the Confirmation Order.  R127 (Conf. Order) at 14, Order ¶ 9 ("The injunction, release, exculpation and indemnification provisions set forth in the Plan are hereby approved in their entirety and given full effect as of the Effective Date of the Plan.")  Movant's only argument for why the Leave Motion does not violate this injunction is the flawed premise that the Mutual Release provision does not mean what it expressly says.  Movant's own prior counsel acknowledged that a direct action against Evercore would result in

_____

(continued…)

cause of action rather than a motion to revoke the order"); *In re Vencor, Inc.*, 284 B.R. 79, 83 (Bankr. D. Del. 2002) ("Rule 9024 expressly requires that any action to revoke a confirmation order under chapter 11 must be filed within the time specified in section 1144 . . . This deadline is strictly enforced.").  As such, all findings in the Confirmation Order are entitled to preclusive effect.

- 45 -

proceeding to hold him in contempt of the Confirmation Order, and Movant's hiring of new counsel does not alter the fact that this proceeding is a direct violation of the Plan and Confirmation Order's release and injunction provisions.

Accordingly, the time has come for the Nancy Davis Trust, the lone Interest Holder to vote against the Plan, to be required to abide by the provisions of the Plan and Confirmation Order.  The other Interest Holders have not joined the Movant.  The Trust, as the party charged with maximizing the estate for the benefit of all creditors and Interest Holders, would have been obligated to have pursued the allegations asserted by the Nancy Davis Trust if he believed they had any merit, and instead opposed the Revocation Action, entered a settlement with all the officers and directors, and has filed an opposition to the Leave Motion identifying the continuing costs and liabilities which the Nancy Davis Trust's errant crusade has brought upon the Trust, diminishing the residue of the estate that will be available for all Interest Holders, including Movant.  The distributions from the Trust to Interest Holders will only be further delayed by the Nancy Davis Trust's latest legal maneuverings, which create significant claims against the Trust for the Trust's over legal costs and various indemnity obligations.  *See* Trustee Opp. at 2..

Under these circumstances, and for all the reasons discussed in opposing the Leave Motion on the merits (Section III.B., *supra*), it is respectfully submitted that the Nancy Davis Trust's Leave Motion should be both denied and enjoined as in direct contravention of the clear and unambiguous injunction set forth in the Confirmation Order.

## IV.   CONCLUSION

For the foregoing reasons, Evercore respectfully requests that the Court deny Movant's request to withdraw the reference and instead refer the Leave Motion to the Bankruptcy Court for disposition on the merits.  In the event that the Court withdraws the reference to this matter, over Evercore's objection, Evercore respectfully requests that this Court should deny the Leave Motion and grant Evercore's cross-motion for all the reasons stated herein and grant Evercore any further relief to which it may be entitled, including without limitation its costs in defense of this proceeding.  To the extent the Court is prepared to withdraw the reference and hear the Leave Motion on the merits, oral argument is requested.

Dated:  February 13, 2009

Respectfully submitted,

_/s/  Jane Rue Wittstein_
JANE RUE WITTSTEIN
(Admitted _Pro Hac Vice_)
**JONES DAY**
222 East 41st Street
New York, New York  10017
Phone:  212-326-3415
Facsimile:  212-755-7306
E-mail: jruewittstein@jonesday.com

Attorney in Charge For Defendant Evercore
Capital Partners II

Of Counsel:

RICHARD ENGMAN
**JONES DAY**
222 East 41st Street
New York, New York  10017
Phone:  212-326-3939
Facsimile:  212-755-7306
E-mail: rengman@jonesday.com

MICHAEL GRAHAM
Texas Bar No. 08267600
Southern District Bar No. 1037
**JONES DAY**
717 Texas, Suite 3300
Houston, Texas  77002
Telephone:  (832) 239-3713
Facsimile:  (832) 239-3600
E-mail: mpgraham@jonesday.com

NYI-4156625