UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| In re: | § § | |
| **DAVIS PETROLEUM CORPORATION** | § § | Case No. 06-20152 |
| **DAVIS OFFSHORE, L.P.** | § § | Case No. 06-20153 |
| **DAVIS PETROLEUM PIPELINE, LLC,** | § § | Case No. 06-20154 |
| Debtors. | § § | Jointly Administered under Case No. 06-20152 |

## RESPONDENTS' JOINT POST-HEARING BRIEF

Dated: June 26, 2009.

| | |
|---|---|
| Jane Rue Wittstein | Bruce J. Ruzinsky |
| Justin Carroll | Jackson Walker LLP |
| Jones Day | 1401 McKinney, # 1900 |
| 222 East 41st Street | Houston, TX 77010 |
| New York, NY 10017 | Telephone: (713) 752-4204 |
| Telephone: (212) 326-3415 | Telecopier: (713) 308-4155 |
| Telecopier: (212) 755-7306 | |
| | |
| Attorneys for Evercore Capital Partners LLC | Attorneys for Gregg Davis |
| | |
| Lawrence S. Elbaum | William R. Greendyke |
| Proskauer Rose LLP | Johnathan C. Bolton |
| 1585 Broadway | Fulbright & Jaworski L.L.P. |
| New York, NY 10036- | 1301 McKinney, Suite 5100 |
| Telephone: (212) 969-3000 | Houston, Texas 77010-3095 |
| Telecopier: (212) 969-2900 | Telephone: (713) 651-5151 |
| | Telecopier: (713) 651-5246 |
| | |
| Attorneys for Sankaty Advisors, LLC | Attorneys for Willem Mesdag and Red Mountain Capital Partners LLC |

## I. INTRODUCTION

Respondents, Evercore Capital Partners, LLC ("Evercore"), Gregg Davis, Willem Mesdag ("Mesdag"), Red Mountain Capital Partners LLC ("Red Mountain") and Sankaty Advisors, LLC ("Sankaty") (collectively, "Respondents") file this Joint Post-Hearing Brief at the request of the Court to discuss the derivative nature of the claims made by The Nancy Sue Davis Trust (the "ND Trust" or "Movant") in the proposed Original Complaint (the "Proposed Complaint") attached to the ND Trust's Motion for Leave.

Specifically, this Brief will address *Parnes v. Bally Entertainment*, 722 A.2d 1243 (Del. 1999), relied upon by Movant, who asserted for the first time in argument at the May 15, 2009 hearing (the "Hearing") that *Parnes* controls this case. (May 15, 2009 Hearing Transcript, p. 97, line 13 through p. 98, line 13) ("In this situation it's easy because the Delaware Supreme Court has said this type of claim is clearly direct."). As explained below, *Parnes* sets forth a narrow exception to the normal "direct versus derivative" rule—an exception that only applies to certain types of claims involving mergers. Respondents are unaware of any case applying *Parnes* to a bankruptcy sale like the one at issue here. Movant had a right and multiple opportunities to investigate and challenge the terms of the sale approved by the Court in the Plan. Because Movant's claims are clearly based on the alleged diminution in value of the bankruptcy estate, and because the *Parnes* exception does not apply, each of Movant's alleged claims are derivative claims under the analysis set forth in the Delaware Supreme Court's more recent decision in *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031 (Del. 2004) and the Fifth Circuit's decision in *Smith v. Waste Management, Inc.*, 407 F.3d 381, 383-85 (5th Cir. 2005).[1]

---

[1] Respondents, by filing this Brief on the limited issues requested by the Court, do not waive each of their other arguments set forth in their respective pleadings filed in opposition to the Movant's Motion for Leave, including the arguments that the ND Trust's claims are barred by the principles of res judicata, collateral estoppel and the law of

## II.   DISCUSSION

Movant is a former shareholder of Davis Petroleum Corporation ("DPC") and a former interestholder in Davis Offshore, L.P. ("DOLP").[2] DPC and DOLP are both organized under Delaware law. Delaware law therefore controls whether the claims asserted by Movant are derivative or personal in nature as to these entities. *See Smith v. Waste Management, Inc.*, 407 F.3d 381, 384 (5th Cir. 2005) ("This court looks to the Delaware law, including the Delaware Supreme Court's recent opinion in *Tooley*, to decide whether Smith's claims are direct or derivative.").

### A.   Each Of Plaintiff's Claims Against Respondents Is A Derivative Claim.

The Delaware Supreme Court and the Fifth Circuit have made clear that Movant's claims are derivative. In *Tooley v. Donaldson, Lufkin & Jenrette, Inc.,* 845 A.2d 1031 (Del. 2004), the Delaware Supreme Court stated that, in determining whether a claim is derivative or direct, the analysis must be based "solely on the following questions: (1) who suffered the alleged harm (the corporation or the suing stockholders, individually) and (2) who would receive the benefit of the recovery or other remedy (the corporation or the stockholders, individually)?" The Court further clarified that "[t]he stockholder's claimed direct injury ***must be independent of any alleged injury to the corporation. The stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation***." *Id*. at 1039 (emphasis added).

---

the case. *See Travelers Indemnity Co. v. Bailey*, 577 U.S. ___, at 14 (2009) (explaining that "once the [Confirmation Orders] became final (whether or not proper exercises of bankruptcy court jurisdiction and power), they became res judicata 'to the parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose'."). Respondents also do not discuss the admitted fact that the Liquidating Trustee is the only party with standing to bring derivative claims on behalf of the Davis Petroleum Liquidating Trust. *See* Transcript of June 12, 2009 Hearing on Motion for Leave, p. 27 lines 13-16, **MR. STEPHEN SUSMAN:** "We don't dispute what the plan says, and we don't dispute that it means what it says in connection with the transfer of claims belonging to the debtor, to the trustee."

[2] Movant did not own a direct interest in Davis Pipeline, LLC, a Texas limited liability company.

In another case involving claims similar to those asserted here, the Fifth Circuit applied *Tooley* and found that an existing shareholder's claims alleging fraud and misrepresentation by the company's officers – the very claim relied upon by Movant here - were derivative claims. *See Smith v. Waste Management, Inc.*, 407 F.3d 381, 383-85 (5th Cir. 2005). The Fifth Circuit explained:

> [W]hen a corporation, through its officers, misstates its financial condition, thereby causing a decline in the company's share price when the truth is revealed, the corporation itself has been injured. Here, the harm that befell Smith—the drop in share price caused by the untimely disclosure of unfavorable financial data—was a harm that befell all of Waste Management's stockholders equally. Stated differently, the misconduct alleged by Smith did not injure Smith or any other shareholders directly, but instead only injured them indirectly as a result of their ownership of Waste Management shares. As such, Smith cannot prove his injury without also simultaneously proving an injury to the corporation. Accordingly, in light of *Tooley*, we find that Smith's claims are derivative under Delaware law."

*Id*. at 385.[3]

In *Smith*, the plaintiff alleged his claims were direct claims so as to avoid claim preclusion based on a final judgment that was rendered in two consolidated derivative actions that were brought by Waste Management shareholders in an earlier case on behalf of all of Waste Management's stockholders in Delaware. *See id*. at 383. That situation is similar to the argument being made by the ND Trust in this case by trying to avoid the preclusive effect of the final judgment rendered by this Court in the form of the Confirmation Order. After finding that the alleged fraud and misrepresentation claims by the plaintiff were derivative, the U.S. District Court for the Southern District of Texas dismissed Smith's claims, finding that they were barred by *res judicata* because of the final judgment in the Delaware litigation. *See id*.

---

[3] The Fifth Circuit explained the policy behind the derivative claim rule: to ensure that one shareholder "will not incur a benefit at the expense of other shareholders similarly situated." *Smith*, 407 F.3d at 386.

In reaching its conclusion, the Fifth Circuit favorably cited *Manzo v. Rite Aid*, 2002 WL 31926606 at *5 (Del Ch. 2002), *aff'd,* 825 A.2d 239 (Del. 2003). In *Manzo*, the Delaware Chancery Court similarly determined that an existing shareholder's misrepresentation claims against the company' officers were derivative, finding that, "to the extent that plaintiff was deprived of accurate information upon which to base investment decisions and, as a result, received a poor rate of return on her Rite Aid shares, she experienced an injury suffered by all Rite Aid shareholders in proportion to their pro rata share ownership." Importantly, the Fifth Circuit noted that "even though *Manzo* was decided before *Tooley*, it applied the correct test, and there is no reason to think it is no longer good law." *Smith*, 407 F.3d at 385 n. 2.

Further, the Fifth Circuit in *Smith* examined the Texas Court of Appeal's holding in *Shirvanian v. DeFrates*, 161 S.W.3d 102 (Tex. App.—Houston [14th Dist] 2004), which applied *Tooley* and held that shareholders' claims for fraud, intentional misrepresentation, negligent and grossly negligent misrepresentation, and conspiracy, arising from alleged oral inducements by corporate officers allegedly inducing plaintiff not to sell their Waste Management shares constituted derivative claims under Delaware law. The Texas Court of Appeals explained:

> To decide if the harm was to the corporation or to the stockholder individually, the [Delaware Supreme Court in *Tooley*] suggested the most relevant question is whether the stockholder can prevail without showing an injury to the corporation. . . The stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing a corresponding injury to the corporation. Applying those principles here leads to the conclusion that the Shirvanians' complaints are derivative, not direct, and could be asserted only on behalf of the corporation. The misrepresentations the Shirvanians allege caused their injury were based on mismanagement of the corporation's assets. The Shirvanians cannot prove their injury without proving an injury to the corporation. We hold, therefore, that the Shirvanians' suit is derivative under Delaware law."

2004 Tex. App. LEXIS 10426 at *6.

In light of these decisions, it is clear that the alleged claims against Respondents are derivative and not direct.[4]  First and foremost, the Proposed Complaint is premised upon Respondents' purported participation in a fraudulent scheme to reduce the buyout price for DPC, which if true[5], unquestionably would have injured DPC itself since the sale at issue was not a merger, in which individual stockholders sold their shares, but a sale of the Debtors pursuant to a bankruptcy plan in which the shares of the Movant and other interestholders were cancelled and the proceeds of the sale were placed in a trust administered by a trustee for the benefit of the Debtors' estate, including the interest holders, on a pro rata basis by class.  Movant's alleged injury thus is not "independent of any alleged injury to" DPC, and Movant cannot "prevail without showing an injury to the corporation" – the classic hallmarks of a derivative claim.  *Tooley,* 845 A.2d at 1039.

Second, it is well-settled that claims based on "diminution in value" of a company's shares are derivative.  *See, e.g., In re Enron Corp. Secs. Litig.*, MDL-1446, 2007 U.S. Dist. LEXIS 17374, at *52-53 (S.D. Tex. Mar. 12, 2007) (claims by holders of Enron securities were derivative under Delaware law because they sought recovery based on "diminution in value" of Enron securities "allegedly caused by misrepresentations of Enron's financial condition"); *Manzo*, 2002 WL 31926606, at *5 (stockholder claim based on "poor rate of return on her Rite Aid shares" was derivative); *see also Brister v. Schlinger Found.*, 469 F. Supp. 2d 371, 374-75 (E.D. La. 2007) (applying similar Nevada law and holding that "'diminution in the value of shares is quintessentially a derivative claim'") (quoting *Higgins v. NYSE*, 10 Misc. 3d 257, 266, 806 N.Y.S.2d 339 (N.Y. Sup. 2005)).  Movant's claims are indisputably based on the alleged diminution in the value of the ND Trust's pro rata allocation of proceeds to be distributed to the

---

[4] At the hearing on May 8, 2009, Plaintiff withdrew its claims for negligent misrepresentation in Count IV.  Therefore, the nature of those claims is not addressed in this Brief.
[5] It is absolutely untrue.

former holders of DPC's shares under the bankruptcy plan and are thus derivative as a matter of law.

Third, the alleged damages suffered by the ND Trust are the same damages that would have been suffered by the other shareholders. Each alleged cause of action set forth in the Proposed Complaint states that ". . . the ND Trust was deprived of the <u>full economic value of its equity holdings in the Davis Family Companies</u> in an amount of no less than $50 million." *See* Proposed Complaint at ¶¶ 56, 60, 64, 70 and 73 (emphasis added). The ND Trust thereby plainly states a derivative claim, since its alleged damages are the same alleged damages that would have been suffered by all shareholders on a pro rata basis and constitute a direct injury to the estate. The Fifth Circuit explained the policy behind the derivative claim rule: to ensure that one shareholder "will not incur a benefit at the expense of other shareholders similarly situated." *Smith*, 407 F.3d at 386.

As in *Smith*, each of the individual causes of action alleged by the ND Trust is for damages that would flow to all shareholders equally. They are therefore derivative claims that are owned by the estate.[6]

In the first and fifth counts of the Proposed Complaint, the ND Trust alleges that Gregg Davis, as President of Davis Petroleum, committed fraud by misrepresenting the true value of Davis Petroleum to the ND Trust[7], thereby procuring the sale of the Debtors pursuant to the Plan at an allegedly lower price than could otherwise have been achieved.[8] This allegation, because it

---

[6] Each of the claims alleged by the ND Trust are pre-petition claims that were owned by the Debtors' estates. By virtue of entry of the Court's Confirmation Order, all of the assets of the Debtors were sold to the Buyer Parties and the stock in the Debtors was cancelled. All remaining assets, including claims belonging to the estate, were then transferred to the Davis Petroleum Corp. Liquidating Trust. The Liquidating Trustee is vested with the power and duty to make all distributions to creditors and shareholders of the Debtors' estates. All claims of creditors and former equity interest owners are to be made against and paid out of the Liquidating Trust.
[7] Gregg Davis denies that he committed any fraud.
[8] Again, it should be noted that these allegations fly in the face of the findings of this Court at Confirmation based on the testimony of the Debtors' independent financial advisor, FTI's Bert Conly, that this Plan offered the best

alleges a harm that is common to all shareholders as the impaired class under the Plan, is a derivative claim owned by the estate. *See Smith*, 407 F.3d at 383-85; *Manzo*, 2002 WL 31926606 at *5; *In re E.F. Hutton Southwest Properties II, Ltd.*, 103 B.R. 808 813-14 (Bankr. N.D. Tex. 1989) (explaining that common law fraud, securities fraud and civil conspiracy claims are derivative and belong to the estate); *Gabrielsen v. BancTexas Group, Inc.*, 675 F. Supp 367 (N.D. Tex. 1987) ("Plaintiffs bring Delaware common law claims for fraud and misrepresentation, breach of fiduciary duty, and negligence. The thrust of all these claims is corporate mismanagement. . . Delaware law and policy support the conclusion that plaintiff's common law claims for damages must be pursued, if at all, on a derivative basis.").[9]

The second count of the Proposed Complaint alleges claims against Gregg Davis and Willem Mesdag for alleged breaches of fiduciary duties.[10] As explained by the Fifth Circuit, "A cause of action for breach of directors' fiduciary duties belongs to the corporation and cannot be brought by a stockholder in his own right, nor can the shareholder directly prosecute the suit in the name of the corporation." *Gearhart Industries, Inc. v. Smith International, Inc.*, 741 F.2d 707 (5th Cir. 1984)(citing *United States v. Palmer*, 578 F.2d 144, 145-46 (5th Cir. 1978)). The Northern District of Texas recognized this principle in the case of *Gabrielsen v. BancTexas Group, Inc.*, 675 F. Supp. 367, 372 (N.D. Tex. 1987), in which it held that breach of fiduciary duty claims under Delaware law are derivative actions that belong to the corporation. The policy behind this rule is that duties of loyalty and care run to the corporation, not to individual shareholders or even to a majority of the shareholders. *See generally* 15 Tex. Jur. 3d

---

prospect to maximize value for the shareholders – findings which are no longer subject to collateral challenge. *See, e.g.*, Confirmation Tr. at 81-83.

[9] Movant also completely ignores that after the Original Evercore Deal collapsed in early February 2006, the Debtors' retained financial advisor determined that the Debtors were insolvent, at which point the duty of the Board became to maximize the value to creditors, not shareholders: "One of the painful facts of bankruptcy is that the interests of the shareholders become subordinated to the interests of the creditors." *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 355 (1985).

[10] Willem Mesdag denies that he owed any fiduciary duties to the Debtors or the ND Trust.

85115071.7 - 8 -

Corporations §§ 165-171 (1981). Here, Movant alleges a breach of fiduciary duty by Gregg Davis, an officer and director of DPC, which is a cause of action that clearly belongs to the corporation.

In the bankruptcy context, numerous courts have found that claims for breach of fiduciary duty belong to the bankruptcy estate. *See, e.g. In re Educators Group Health Trust*, 25 F.3d 1821, 1285-86 (5th Cir. 1994), *In re Schepps Food Stores, Inc*., 160 B.R. 792, 799 (Bankr. S.D. Tex. 1993); *Big Lots Stores, Inc. v. Bain Capital Fund VII, LLC*, 922 A.2d 1169 (Del. Ch. 2006).[11] As such, controlling principles of Delaware law and bankruptcy law hold that that claims sought to be brought by the ND Trust are derivative in nature and are property of the bankruptcy estate.

### B. The *Parnes* Case Dealt With A Merger, Which Is Not Present In This Case.

Movant's reliance on the case of *Parnes v. Bally Entertainment Corp*., 722 A.2d 1243, 1244 (Del. 1999) to support its contention that its claims against Respondents are direct and not derivative is misplaced. As shown below, the narrow exception in *Parnes*, which has been further clarified in *Tooley*, as discussed above, does not apply to a case such as this one, that

---

[11] Likewise, the remaining counts in Movant's Proposed Complaint contain derivative claims. The third count in the Proposed Complaint alleges aiding an abetting a breach of fiduciary duty by all defendants. Last year, the U.S. District Court for the Southern District of Texas held that a claim for aiding and abetting a breach of fiduciary duty is a derivative claim. *See ASARCO LLC v. Americas Mining Corp*., 396 B.R. 278, 382 (S.D. Tex. 2008) (citing *Louisiana World Exposition v. Fed. Ins. Co*., 858 F.2d 233, 245 (5th Cir. 1988) ("a claim for aiding and abetting breach of fiduciary duty is a claim belonging to the estate."). The reason for this rule is that if the corporation owns the cause of action for breach against the principals, it also owns the cause of action against the aiders and abettors. *See Moratzka v. Morris* (*In re Senior Cottages of America*), 482 F.3d 997, 1002 (8th Cir. 2007) ("If the corporation owned a cause of action against the principal who breached a duty, it follows that it also owns the cause of action for aiding and abetting the principal's breach."). Similarly, in the sixth count, the ND Trust alleges a civil conspiracy by all defendants to promote breaches of fiduciary duty and fraudulent acts. Civil conspiracy claims such as these are derivative since the underlying claims are derivative. *See Shirvanian*, 161 S.W.3d at 102 (holding that shareholders' claims for fraud, intentional misrepresentation, negligent and grossly negligent misrepresentation, and conspiracy, arising from alleged oral inducements not to sell their Waste Management shares were derivative claims under Delaware law.). The ND Trust simply cannot demonstrate that it was damaged without simultaneously demonstrating that DPC was similarly injured by being forced to accept an inadequate purchase price, meaning that the claims (to the extent not already released) belong to the Davis Petroleum Liquidating Trust and must be asserted derivatively.

does not involve a merger and in which the plaintiff had an adequate opportunity, but failed to challenge the proposed sale.

In *Parnes*, the Delaware Supreme Court reversed a Delaware Chancery Court decision finding that a stockholder's claim against a corporation's directors, based on the fairness and validity of a merger, was a derivative claim. 722 A.2d 1243, 1244 (Del. 1999). As demonstrated below, the rule of *Parnes* is not applicable in this case because (1) it stands for a narrow merger exception in unusual circumstances to the rule that a plaintiff's claim alleging corporate mismanagement resulting in a drop in the value of a company's stock is a derivative claim, (2) the instant case did not involve any merger, (3) the ND Trust had an opportunity to challenge the terms of the sale after voting against the Plan, during the confirmation process and during the time for appeal of the Confirmation Order, but in each case failed to do so, and (4) *Parnes* had nothing to do with a challenge by a former shareholder to a sale conducted through a bankruptcy court over three years after the chapter 11 plan authorizing the sale was consummated.

In *Parnes*, the plaintiff claimed the directors of the Bally Entertainment Corporation ("Bally"), which had entered into a stock-for-stock merger agreement with Hilton Hotels Corporation, breached their fiduciary duties by entering into a merger agreement that was the product of unfair dealing and provided the corporate stockholders with an unfair price for their shares. *See id.* at 1244. Specifically, the plaintiff alleged that the Chairman and CEO of Bally controlled the merger negotiations and allegedly informed all potential acquirors of Bally that his consent would be required for any business combination with Bally and that, to obtain his consent, the acquiror would be required to pay him substantial sums of money and transfer to him valuable Bally assets. *See id.* The plaintiff in *Parnes* claimed that these acts were a breach by the Chairman and CEO of his fiduciary duty of loyalty and, unlike the Movant here, claimed

that the other Bally directors breached their fiduciary duties of loyalty by acquiescing in the Chairman and CEO's self-interested negotiations.  *See id.* at 1246.  The Delaware Chancery Court dismissed the plaintiff's complaint, holding that the plaintiff, as a former stockholder, lost standing to assert her claims (which amounted to a claim for waste of corporate assets) once the merger was accomplished.  *See id.*

On appeal, the Delaware Supreme Court explained that a shareholder does not lose standing to attack the validity or fairness of a merger just because the merger has been completed and the corporation no longer exists.  The Court stated that, "[i]f, as the trial court found, the allegations in the complaint support only a derivative claim for waste of corporate asserts, then under settled law Parnes lost standing to pursue her claim when the merger was accomplished." *Id*. at 1244-45.  However, the Court looked further to see if the plaintiff's complaint also asserted a claim that the merger process itself was unlawful.  In this case, the ND Trust had the opportunity to challenge the validity of the bankruptcy and sale process, either through an objection to confirmation, an appeal of the order confirming the Plan or through a section 1144 action.  The ND Trust did not avail itself of the former two opportunities and lost on the later claim, so it no longer has any right to challenge the validity of the Plan or the sale it approved.

In examining this issue, the Delaware Supreme Court looked to its earlier decision in the case of *Kramer v. Western Pacific Industries*, 546 A.2d 348 (Del. 1988).  In *Kramer*, the Delaware Supreme Court recognized a limited exception, only in the case of merger, to the rule that a plaintiff's claim alleging corporate mismanagement resulting in a drop in the value of a company's stock is a derivative claim.  The Delaware Supreme Court in *Parnes* explained:

> The *Kramer* Court explained that a claim alleging corporate mismanagement, and a resulting drop in the value of the company's stock, is a classic derivative claim; the alleged wrong harms the corporation directly and all of its stockholders indirectly.  The fact that such a claim is asserted in the context of a merger does

> not change its fundamental nature.  In order to state a direct claim with respect to a merger, a stockholder must challenge the validity of the merger itself, usually by charging the directors with breaches of fiduciary duty resulting in unfair dealing and/or unfair price.

*Id*. at 1245.

Since *Parnes* was also a merger case, the Delaware Supreme Court saw fit to apply the rule of *Kramer*, and found that Parnes had standing to challenge to the fairness of the merger process and the price of the merger.  *See id*.  The Court explained that, "a stockholder who directly attacks the fairness or validity of a merger alleges an injury to the stockholders, not the corporation, and may pursue such a claim even after the merger at issue has been consummated." *Id*. at 1245.

Because there is no merger in the present case, *Kramer* and *Parnes* do not apply here. The ND Trust was not deprived of the opportunity to challenge the fairness of the bankruptcy process and the terms of the sale.  The ND Trust's claims, thus, do not fall within the narrow exception in *Parnes* for merger cases.[12]  Instead, this is a classic situation where a plaintiff is attempting to assert claims based on alleged diminution in value of the bankruptcy estate itself—claims that clearly belong to the estate under the generally applicable standard of *Tooley*.  There is no reason to deviate from the long-established rule that claims involving alleged harm to the debtor in a bankruptcy context are derivative claims.  *See, e.g*. *In re Educators Group*, 25 F.3d. 1285-86; *In re Schepps Food Stores*, 160 B.R. at 799.  Importantly, even had this been a merger and the *Parnes* exception had applied, the ND Trust did not lose any rights it had to challenge the validity of the sale or the purchase price.  The ND Trust, although it had counsel present at

---

[12] In the recent case of *Torch Liquidating Trust ex rel. Bridge Associates L.L.C. v. Stockstill*, 561 F.3d 377, 386 (5th Cir. 2009), the Fifth Circuit explained that, "[a]fter the commencement of a chapter 11 case and before the confirmation of a chapter 11 plan, it is clear beyond peradventure that a debtor in possession or trustee 'has the authority to bring an action for damages on behalf of a debtor corporation against corporate principals for ... breach of fiduciary duty where such an action could have been asserted by the debtor corporation, or by its stockholders in a derivative action, prior to bankruptcy.'" (quoting *La. World Exposition v. Fed. Ins. Co*., 858 F.2d 233, 246 (5th Cir. 1988)).

the Confirmation Hearing: (1) voted against the Plan, and yet, while stating the belief that the sale price was too low, (2) did not object to the Plan, (3) did not object to the introduction of evidence at the confirmation hearing, (4) did not present any of its own evidence at the confirmation hearing, (5) did not object to the speed of the Chapter 11 Plan process or ask the Court for more time, and (6) did not appeal the Court's Confirmation Order. The ND Trust's only other applicable right to challenge the Confirmation Order was resolved in the section 1144 proceedings. However, the issues at hand did not occur in the context of a merger, and the limited *Parnes* merger exception does not therefore apply. Indeed, all claims against officers and directors, if any, were expressly preserved under the Plan and assigned to the Liquidating Trust.[13]

Therefore, in stark contrast to *Parnes*, in which claims challenging the officers' and directors' claimed misconduct would have been lost with the merger of the corporation,[14] under

---

[13] The Plan and Disclosure Statement made express reference to the fact that all claims belonging to the Debtors, except those released or settled under the Plan were retained by the Liquidating Trust. Plan at 20, Article III.T. In the section on "Means for Implementation of the Plan", the Disclosure Statement made explicit that, among the causes of action belonging to the estate, the Debtors were expressly assigning any causes of action that could be asserted against officers and directors, including without limitation any claims based on claimed breaches of fiduciary duty by Gregg Davis and any related claims as set forth in the *Raynes* litigation:

> **8. Assignment of Litigation Claims**
>
> The Debtors will assign any causes of action or claims whether asserted or unasserted, to the Liquidating Trustee, including but not limited to, claims and causes of action against officers and directors including, but not limited to, the causes of action asserted, or that could be asserted as arising from the same transactions or occurrences, against any Defendant named in the civil action styled and numbered: *Patricia Davis Raynes et al. v. Marvin Davis, et al.*, Civil Action No. 05-06740-ABC-CT, pending in the United States District Court for the Central District of California, as set forth in the Plan to the Liquidating Trustee, and including but not limited to any causes of action arising under Chapter 5 of the Bankruptcy Code.

Disclosure St. at 22, Article IV.C.8.

[14] *See Big Lots Stores, Inc. v. Bain Capital Fund VII, LLC*, 922 A.2d 1169 (Del. Ch. 2006) ("Big Lots's argument is based on a gross misreading of *Parnes*. That decision did not establish that every allegation of unfairness, in any transaction whatsoever, raises a direct claim. Rather, the holding in *Parnes* is necessarily premised on the fact that the challenged transaction was a merger, in which the plaintiffs would lose standing to bring derivative claims and the misconduct at issue was intimately bound up with the merger itself. Moreover, the Supreme Court held the claims at issue in Parnes to be direct because the purportedly unfair price paid to the shareholders in the merger did not injure the corporation in the way that mismanagement or improper self-dealing does.").

the express terms of the Plan and Confirmation Order, the claims, if any, attempted to be asserted by the ND Trust predicated on alleged breaches of fiduciary duty and misrepresentations of the Debtors' value vested entirely and completely in the Liquidating Trust upon confirmation. *See supra* at n. 13. The ND Trust is now bound by the Confirmation Order, the terms of the Plan and the law of the case.[15]

The facts at hand are not anywhere similar to those in *Parnes* and the analysis of the merger line of cases – raised by Movant for the first time at the hearing – which demonstrates that *Parnes* is inapposite. Respondents are unaware of any case where a court applied the *Parnes* exception to the type of bankruptcy sale at issue here. As a result, this case should be examined in light of the general *Tooley* standard set forth above. Among the other reasons cited by Respondents in opposition to the Motion for Leave, because Movant's claims constitute derivative claims under *Tooley* which could only have been brought, if at all, by the Liquidating Trust, the Motion for Leave should be denied.

---

[15] *See Travelers Indemnity Co.*, 577 U.S. ___, at 14.

Dated: June 26, 2009.

Respectfully submitted,

/s/ Jane Rue Wittstein
Jane Rue Wittstein
Justin Carroll
Jones Day
222 East 41st Street
New York, NY 10017
Telephone: (212) 326-3415
Telecopier: (212) 755-7306

**Attorneys for Evercore Capital Partners LLC**

/s/ Bruce J. Ruzinsky
Bruce J. Ruzinsky
Jackson Walker LLP
1401 McKinney, # 1900
Houston, TX 77010
Telephone: (713) 752-4204
Telecopier: (713) 308-4155

**Attorneys for Gregg Davis**

/s/ Lawrence S. Elbaum
Lawrence S. Elbaum
Proskauer Rose LLP
1585 Broadway
New York, NY 10036-
Telephone: (212) 969-3000
Telecopier: (212) 969-2900

**Attorneys for Sankaty Advisors, LLC**

/s/ William R. Greendyke
William R. Greendyke
Johnathan C. Bolton
Fulbright & Jaworski L.L.P.
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Telephone: (713) 651-5151
Telecopier: (713) 651-5246

**Attorneys for Willem Mesdag and Red Mountain Capital Partners LLC**